SEYFARTH SHAW LLP
Katherine E. Perrelli (*pro hac vice*)
kperrelli@seyfarth.com
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07788-RGK-MAR<br><br>**PLAINTIFF LOGIX FEDERAL CREDIT UNION'S OPPOSITION TO DEFENDANTS OSAIC WEALTH, INC., JOHN JANIOS, AND ANTHONY MARTINEZ'S MOTION TO DISMISS**<br><br>Date:　　November 17, 2025<br>Time:　　9:00 a.m.<br>Judge:　　Hon. Gary Klausner<br>Courtroom:  850<br><br>Date Action Filed:  August 19, 2025 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  RELEVANT BACKGROUND...............................................................................2

    A.  The Parties ...................................................................................................2

    B.  Logix's Confidential Information And Trade Secrets...............................2

    C.  The Individual Defendants' Abrupt Departures To Osaic ......................3

    D.  Osaic Ignores Efforts To Remediate The Materials, Requiring Logix To File Suit............................................................................................................4

III.  LEGAL STANDARD ..........................................................................................4

IV.  ARGUMENT........................................................................................................5

    A.  Defendants Are Not Entitled To A Judgment On The Merits.................5

    B.  Defendants' Count-By-Count Attacks Are Unfounded...........................6

        1.  Counts III And VI-XI Are Sufficiently Alleged. ...............................6

        2.  Counts IV And V Are Sufficiently Alleged.......................................8

        3.  Counts I, II, And VII Are Sufficiently Alleged. .............................11

        4.  Counts XII And XIII Are Sufficiently Alleged. .............................13

    C.  Any Deficiencies May Be Cured On Amendment.................................14

V.  CONCLUSION ...................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018)....................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015)..........................................................................12

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ..................................................................................5

*Conley v. Gibson*,
355 U.S. 41 (1957)............................................................................................5, 8

*CTI III, LLC v. Devine*,
No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26,
2022) ....................................................................................................................7

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..............................................................................6

*Dunn v. Castro*,
621 F.3d 1196 (9th Cir. 2010) ..........................................................................5, 6

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072 (N.D. Cal. 2016)................................................................9

*Howard v. Am. Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) ..............................................................................13

*Ikuno v. Yip*,
912 F.2d 306 (9th Cir. 1990) ..............................................................................14

*Javo Beverage Co. v. Calif. Extraction Ventures, Inc.*,
No. 19-CV-1859-CAB-WVG, 2019 WL 6467802 (S.D. Cal. Dec. 2,
2019) ....................................................................................................................8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ...................................................................................5

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ....................................................................................14

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ....................................................................................9

*Marsh & McLennan Agency, LLC v. Teros Advisors, LLC*,
    No. 20-CV-02679-HSG, 2021 WL 4133858, at *7 (N.D. Cal. Sept. 10,
    2021) ........................................................................................................................12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..................................................................................5

*Morgan Stanley Dean Witter, Inc. v. Frisby*,
    163 F. Supp. 2d 1371 (N.D. Ga. 2001)......................................................................11

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
    149 F.4th 1081 (9th Cir. 2025) .................................................................................10

*Rivell v. Private Health Care Sys., Inc.*,
    520 F.3d 1308 (11th Cir. 2008) ................................................................................5

*Sun Distrib. Co., LLC v. Corbett*,
    No. 18-CV-2231-BAS-BGS, 2018 WL 4951966 (S.D. Cal. Oct. 12,
    2018) ........................................................................................................................10

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ..................................................................................13

**State Cases**

*Diodes, Inc. v. Franzen*,
    67 Cal. Rptr. 19 (Ct. App. 1968) ..............................................................................8

*Morlife, Inc. v. Perry*,
    66 Cal. Rptr. 2d 731 (Ct. App. 1997) .......................................................................10

**Federal Statutes**

18 U.S.C. § 1831, *et seq.*...........................................................................................8, 9, 10

18 U.S.C. § 1839(3) ....................................................................................................9

iii

18 U.S.C. § 1961(5) ..................................................................................13

18 U.S.C. § 1962(c) ..................................................................................13

15 U.S.C. § 78a, *et seq.*...........................................................................12

**State Statutes**

Cal. Civ. Code § 3426, *et seq.*...........................................................7, 8, 9

Cal. Civ. Code § 3426.7(b) .........................................................................7

Cal. Bus. & Prof. Code § 16600 ...............................................................12

Cal. Penal Code § 502.............................................................................6, 7

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................1, 4, 6

L.R. 7-3 ......................................................................................................14

**Regulations**

FINRA Rule 2040(a)(1) .............................................................................11

FINRA Rule 3160 ......................................................................................12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The motion to dismiss filed by Defendants John Janios and Anthony Martinez (the "Individual Defendants") and their new employer Osaic Wealth, Inc. ("Osaic") [Dkt. 34] is a premature request to adjudicate Plaintiff Logix Federal Credit Union's ("Logix") claims, and is legally and factually unsupported, and should be denied.

The Complaint [Dkt. 1] alleges, clearly and specifically, the acts giving rise to Logix's claims, namely, the Individual Defendants' brazen recording and printing of company material, and thereafter using it to solicit and abscond with Logix customers, through and for the benefit of Osaic.  The Complaint further explains that these materials include, without limitation, the identities of Logix's customers and information about them that conveys their suitability for wealth management services and products offered by Logix through partner organizations.  These materials have been carefully compiled over the years by Logix, are kept confidential by Logix, and would not be accessible to Defendants outside the scope of Janios' or Martinez' performance of their job duties for Logix.  The Individual Defendants (and Osaic) were reminded of their obligations to Logix and advised of the evidence indicating breaches of same, and nonetheless continued to use and profit from the ill-gotten and improperly retained materials.

Despite these allegations, and the care with which certain facts were incorporated into particular claims, Defendants demand blanket dismissal of the Complaint – not because of any genuine procedural deficiency, but because they believe their conduct was not wrongful.  Indeed, Defendants expose their true aims at the outset of the motion, asserting on the first page that "[t]he accusations in the Complaint are simply false." (Dkt. 34 at 1).  This is not the type of grievance resolved on a Rule 12(b)(6) motion.

Defendants then resort to mischaracterizing the contents of the Complaint and supplanting it with extraneous information.  The motion contains not only misstatements

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of fact, but also attempts by Defendants to assert their own allegations and take unnecessary jabs at Logix.[1]  This is likewise unavailing on a motion to dismiss.

Defendants have effectively converted their motion into a cross-complaint, which is not proper, and in any event, fails to raise a true pleading challenge.  Logix therefore respectfully requests that the Court deny Defendants' motion in its entirety.  Alternatively, and only to the extent the Court is inclined to consider any of Defendants' unsupported requests for relief, Logix respectfully requests leave to amend in a manner consistent with any ruling hereon.

## II.    RELEVANT BACKGROUND

### A.    The Parties

Logix is a financial institution that provides banking services, as well as wealth management and investment advising offerings, to its customers and members.  (Dkt. 1 ¶¶ 10-11).  Osaic is a wealth management company comprised of subsidiary firms.  (*Id.* ¶¶ 4, 11, 17).  As a wealth management company, Osaic's business is centered on the same types of services Logix provides through its partners, and relies on an appropriately suited customer base.  (*Id.*)  Defendants Janios and Martinez are former employees of Logix, both holding the title of "Financial Consultant."  (*Id.* ¶¶ 5-6).  As Financial Consultants for Logix, Janios and Martinez enjoyed access to Logix's customer information including not just customer identities, but their internal profiles, histories with Logix, and notes regarding their interests and preferences.  (*Id.*)

### B.    Logix's Confidential Information And Trade Secrets

To provide wealth management and investment advising offerings to its banking customers and members, Logix partners with appropriately qualified and registered broker/dealers.  (*Id.* ¶¶ 10-11).  The terms of these arrangements can vary, but each

---

[1] Though it has no bearing on the motion, Defendants go out of their way to suggest "ill intent" on part of Logix for attempting to serve Janios while, as the result of disjointed communications from different attorneys purportedly acting on Defendants' behalf, it remained unclear whether he was represented.  *See* Declaration of Sierra J. Chinn-Liu ("Chinn-Liu Decl.") (Dkt. 39-1) ¶¶ 2-6, Exs. 1-2 (Dkt. 39-2, 39-3).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

entails an exchange whereby Logix is afforded the ability to offer more services and products to its customers, and the *partner* receives limited access to Logix information (subject to nondisclosure obligations and an acknowledgment of Logix's interest in the information). (*Id.* ¶¶ 10-16). This information specifically includes Logix's customer identities and histories with the institution, account status(es), area(s) of interest, and preferences, all of which has been carefully curated, compiled, and maintained by Logix over many years through substantial effort and expense. (*Id.*) The information helps determine the suitability of customers to be offered or sold certain products or services, allowing Logix and its partners to effectively match their respective services to Logix customers who would be most interested in them or most benefit from them. (*Id.*)

Given the value this information would have to anyone trying to sell wealth management, investment advising, and other financial services, Logix implements measures to protect it from disclosure, including confidentiality agreements, instructions and reminders regarding confidentiality, access restrictions, password protections, dual-factor authentication, and mandatory employee trainings. (*Id.* ¶¶ 10-13). Logix also requires employees and contractors to return all company property upon termination, and enforces those obligations. (*Id.* ¶¶ 1-2, 16, 20).

### C.    The Individual Defendants' Abrupt Departures To Osaic

Janios and Martinez were no exception; both were required to execute confidentiality agreements, and were reminded upon termination of their confidentiality obligations and Logix's policies regarding the return of company property. (*Id.* ¶¶ 14-17). Notwithstanding the foregoing, Janios and Martinez abruptly left Logix in April 2025 together and with no advance notice. (*Id.* ¶¶ 17-19). They also took several customers with them and were caught trying to retain what appears to be as much company property as possible. (*Id.*)

In particular, Logix discovered that just prior to departure, Janios and Martinez took photographs of information on their onsite Logix computers, mass-printed company documents, and were observed stuffing documents into computer cases. (*Id.*) The

3

Individual Defendants not only exfiltrated these materials, but then took them to Osaic and began using them to siphon away Logix customers. (*Id.*)

#### D. Osaic Ignores Efforts To Remediate The Materials, Requiring Logix To File Suit

Following its investigation into the Individual Defendants' pre- and post-departure conduct, Logix made several attempts to remind Janios and Martinez of their agreements and the obligations undertaken therein. (*Id.* ¶¶ 20-23). Logix also sought to apprise Osaic of its discoveries. (*Id.*) Rather than accounting for the materials taken and retained, arranging their return, providing assurances to Logix that the materials would not be used or disclosed, and/or compensating Logix, Defendants rejected all efforts to deescalate, insisting they had done nothing wrong, and concluding any inquiry into Janios' or Martinez' activities. (*Id.*)[2]

Thus, Logix proceeded with the instant action, asserting claims for Janios' and Martinez' breaches of their respective confidentiality agreements and duty of loyalty to Logix (Counts I, II, III), Defendants' misappropriation of information and material claimed and treated by Logix as confidential (Count XI) or trade secret (Counts IV, V), Janios' and Martinez' unauthorized access to Logix's systems (Count VI), Defendants' efforts to interfere with Logix's business relationships (Counts VII, VIII), Defendants' efforts to compete unfairly against Logix and others in the industry by using improperly retained and stolen materials to shortcut business development costs (Count IX), and Defendants' conspiracy to engage in the foregoing conduct and undercut Logix as a competitor and transfer over its business (Counts X, XII, XIII).

### III. LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the challenged complaint need not contain "detailed factual allegations," but merely

---

[2] Notably, Defendants have not disputed, in their pre-litigation letters or the motion, the fact that Janios and Martinez did these things, only the characterization of the acts as unlawful. *See generally* Dkt. 34.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausible on its face" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The reasonable inference is not made upon review of any paragraph or allegation in isolation, but upon consideration of the complaint "in its entirety," and construed in the light most favorable to the plaintiff.  *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Importantly, plausibility is not "probability," nor a requirement to prove the facts alleged.  *Id.*; *see Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) ("[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element") (quoting *Twombly*, 550 U.S. at 545).  Thus, dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see Conley v. Gibson*, 355 U.S. 41, 46 (1957) (motions to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (motions to dismiss are "viewed with disfavor" and "rarely granted").

## IV.   ARGUMENT

### A.   Defendants Are Not Entitled To A Judgment On The Merits.

Preliminarily, Defendants' motion should be denied because it calls upon the Court to evaluate the relative "truth" of allegations in the Complaint against Defendants' version of events, and relies on information beyond the four corners of the Complaint. *See, e.g.*, Dkt. 34 at 1 ("The accusations in the Complaint are simply false"), 3-4 ("Logix is not licensed to provide securities services to clients . . . Logix entered into contracts

with LPL and the Individual Defendants to provide securities services out of Logix branch locations . . . LPL is a signatory . . . Despite the customer accounts in question being maintained at LPL, LPL has opted not to join in this suit"), 10 (discussing an agreement to "pay to [the Individual Defendants] and [Logix] . . . ***commissions*** in accordance with the agreement between LPL and [Logix]") (emphasis in original), 12 ("the Offer Letters and FIS Agreements . . . were necessarily dependent upon each other to facilitate the third party brokerage arrangement"), 15-16 ("securities customer information: (a) does not belong to Logix and is not confidential because it was stored at, and maintained by, an unaffiliated third-party, LPL; and (b) cannot be treated as confidential pursuant to the standards, practices, and regulations of the financial services industry"), 16-17 (discussing an "industry standard collective bargaining agreement"), 17 (referencing "the standards, practices, and regulations of the financial services industry").

### B.    Defendants' Count-By-Count Attacks Are Unfounded.

The remainder of Defendants' motion is predicated on mischaracterizations of the Complaint and the facts and law relevant to the claims asserted.  In many instances, Defendants misstate what is alleged in the Complaint to attack claims that have not been asserted, or to draw from authorities that have no bearing on the claims that were asserted.  *See Dunn v. Castro*, 621 F.3d at 1205; *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (a court reviewing a Rule 12(b)(6) motion must "construe the pleadings in the light most favorable to the nonmoving party").

### 1.    Counts III And VI-XI Are Sufficiently Alleged.

Defendants' omnibus challenge to Logix's claims for breach of the Individual Defendants' duty of loyalty (Count III), violation of California Penal Code Section 502 (Count VI), tortious interference (Counts VII and VIII), unfair competition (Count IX), conspiracy (Count X), and conversion (Count XI) is illustrative.  Defendants' motion disregards both the actual allegations at issue, and the broader set of conduct addressed by the foregoing Counts.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

First, Defendants incorrectly assert that "all of Logix's Counts are based on the same allegations" and that "each Count . . . incorporate[s] its misappropriation allegations." (Dkt. 34 at 7). As evidenced by the Complaint, while each Count does incorporate factual allegations in other paragraphs, there is no blind statement incorporating all allegations prior. *See, e.g.*, Dkt. 1 ¶ 30, 36, 41).

Second, Defendants' conduct exceeds the alleged misappropriation of material claimed as trade secret. Misappropriation is one aspect of a larger scheme between the Individual Defendants and Osaic. The scheme was effectuated in several stages, each of which required conduct Logix contends is unlawful for reasons not addressed by the California Uniform Trade Secrets Act ("CUTSA"). Defendants (a) planned to usurp Logix's business opportunities and undermine or transfer its customer relationships while working for Logix; (b) accessed, took, and retained company materials including both trade secret and non-trade secret files, documents, and information; (c) used these materials to approach Logix customers and market or sell them products and services offered by Osaic and its subsidiaries; and (d) made representations to Logix customers to induce them to migrate their business to Defendants, all outside the scope of their employment with Logix, without authorization,[3] and in violation of both express contractual obligations and common law duties to Logix. (*Id.* ¶¶ 38-39, 59-60, 68-69, 73-75, 82, 84-87, 89-93).

Accordingly, these claims are not preempted, nor are they collapsible into a single claim for misappropriation. *See* Cal. Civ. Code § 3426.7(b) ("[t]his title does not affect

---

[3] The Individual Defendants' alleged accessing company computers and systems without authorization, in an unauthorized manner, or for an unauthorized purpose, is sufficient to state a claim under Penal Code section 502 (Count VI). *See CTI III, LLC v. Devine*, No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (denying motion to dismiss where the former employer plaintiff alleged that "while [the individual defendant] was still employed . . . he accessed their system and improperly copied, then used their data," recognizing that "while [the individual defendant] may have been authorized to access the system as an employee, he was not, according to [the plaintiff], authorized to copy and use the data to solicit [the plaintiff's] clients").

7

(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret"); *Javo Beverage Co. v. Calif. Extraction Ventures, Inc.*, No. 19-CV-1859-CAB-WVG, 2019 WL 6467802, at *4 (S.D. Cal. Dec. 2, 2019) ("Claims are not preempted . . . when based upon a broader spectrum of misconduct than misappropriation") (citing *Qiang Wang v. Palo Alto Networks, Inc.*, No. C 12–05579 WHA, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013)).

### 2. Counts IV And V Are Sufficiently Alleged.

Defendants then turn to Logix's misappropriation claims. Critically, Defendants' argument attaches only to the degree of "specificity" to which Logix identifies its claimed trade secrets, and raises no dispute as to the sufficiency of the allegations establishing misappropriation (*e.g.*, Defendants' acquisition by improper means, and subsequent use and disclosure, of the subject information). (Dkt. 34 at 9-10). As discussed above, a complaint need only be "a short and plain statement of the claim"; so long as the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," notice pleading has been satisfied. *See Conley*, 355 U.S. at 47. This is true for claims under both the Defend Trade Secrets Act ("DTSA") and CUTSA. Indeed, Defendants concede that a plaintiff "need not spell out the details of the trade secret," but merely provide a description that "permit[s] the defendant to ascertain at least the boundaries within which the secret lies." (Dkt. 34 at 8).[4] The allegations in the Complaint meet this standard.

---

[4] *See Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880-81 (N.D. Cal. 2018) (a plaintiff "need not spell out the details of the trade secret"); *Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19 (Ct. App. 1968) ("[o]ne who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself") (citation omitted).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

As alleged, the primary focus of Logix's misappropriation claims is "customer information" it has "carefully curat[ed], compil[ed], and maintain[ed]," "including, but not limited to, their identity and history with the institution, account status, and areas of interest and preferences," which allows Logix to "help match its partners and their respective services to the customers who would be most interested in them or most benefit from them." (Dkt. 1 ¶ 10). Logix further alleges that "[t]his information, and the customer relationships and accounts from which it derives, have been developed, compiled, and honed over the years" "through meticulous efforts and at substantial expense," and would be highly valuable to competitors and other industry players who could shortcut the time and expense of developing their own "roadmap to matching customers with appropriate services tailored to their preferences and account history." (*Id.* ¶ 11). Logix also outlines the measures it has implemented to protect the confidentiality of this information, which include confidentiality agreements, instructions and reminders regarding confidentiality, access restrictions, password protections, dual-factor authentication, and mandatory employee trainings, as well as requiring employees and contractors to return all company property upon termination. (*Id.* ¶¶ 1-2, 13, 16, 20).

These allegations satisfy the definitions of a "trade secret" under both the DTSA and CUTSA. Both statutes define "trade secret" as essentially any information that is the subject of efforts to prevent its disclosure, and derives independent economic value from not being generally known to the public or other persons who can obtain economic value from the disclosure or use of the information. *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). Courts have reached the same conclusion in similar cases. *See, e.g.*, *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (finding the plaintiff's "customer database" qualified as a trade secret and had "potential economic value" because it "allow[ed] a competitor . . . to direct its sales efforts to those potential customers," and the plaintiff "took reasonable steps to insure the secrecy to this information," including "require[ing] its employees to sign confidentiality agreements respecting its trade secrets"); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077

9

(N.D. Cal. 2016) ("[c]ustomer information such as sales history and customer needs and preferences constitute trade secrets"); *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at \*4 (S.D. Cal. Oct. 12, 2018) ("although publication names and contact information might be public knowledge, it is clear Plaintiff has put in time and effort to develop other specific information, inter alia, its customer list, preferences, pricing structures, and 'do not deliver' list. Thus, this information is protectable").[5, 6]

These allegations are likewise sufficient to dispose of Defendants' generalized claims that Logix "has not identified a single piece of confidential or trade secret information that Defendants supposedly took," and that "as a matter of law, information concerning securities customers . . . is not confidential or trade secret." (Dkt. 34 at 14-19). Notwithstanding the propriety of Defendants' appeal to extraneous information (including regarding unspecified "standards, practices, and regulations of the financial services industry"), it has been established that Logix may claim a protectible interest in the information at issue. *See, e.g.*, *Sun Distrib. Co.*, 2018 WL 4951966, at \*4 (explicitly rejecting the defendant's argument that some of the alleged trade secret information "belongs to the publisher-customers themselves" and therefore could not be secret, observing that "it is a given that in any case, the customers themselves will have access to their own information. The value to the customer list is in the completeness and details of

---

[5] This analysis is applied by state courts as well. *See Morlife, Inc. v. Perry*, 66 Cal. Rptr. 2d 731 (Ct. App. 1997) ("a customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested. . . . Its use enables the former employee "to solicit both more selectively and more effectively") (citations omitted).

[6] Furthermore, Defendants' "specificity" arguments have no bearing on Count V, as the DTSA "does not require a plaintiff to identify with particularity its alleged trade secrets from the start. . . . whether a plaintiff has sufficiently particularized a trade secret under DTSA is usually a matter for summary judgment or trial." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025).

10

the list; the fact that each individual customer has access to its own information does not make Plaintiff's list of customers worthless. . . . While it is true that Defendant could surely find a list of all publishers who may be interested in a publication distribution service, this is a far cry from knowing Plaintiff's specific customer list and details about each customer's preferences").[7]

### 3. Counts I, II, And VII Are Sufficiently Alleged.

Defendants next assert, also mistakenly, that although the Individual Defendants voluntarily undertook confidentiality obligations to Logix, understood the sensitive nature of the information they handled on a day-to-day basis, and accepted the compensation they received from Logix, their agreements were never enforceable to begin with and they should be released from any performance thereunder. (Dkt. 34 at 10-11). Defendants' attempt to retroactively invalidate their agreements and escape any consequence for their actions—let alone at the pleading stage—is untenable.

As discussed above, Logix has a legitimate interest in the data, material, and client relationships Defendants misappropriated. This extends to the revenues attributable to the subject data, material, and client relationships. Defendants contend that this is not the case because some portion of the revenue generated by the business they improperly transferred derives from commissions, which Logix cannot receive under SEC and FINRA rules. However, as explained in pre-litigation correspondence between counsel, the referenced rules are not relevant.

FINRA Rule 2040(a)(1) prohibits a "member or associated person" paying

---

[7] Defendants' reliance on *Morgan Stanley Dean Witter, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1377 (N.D. Ga. 2001) is inapposite for several reasons. First, the posture of the court's analysis is not evaluating a pleading challenge, but a request for temporary restraining order. Second, the court's conclusion was ultimately grounded in principles of estoppel, not a specific determination that the information at issue was not protectible. Third, unlike Morgan Stanley Dean Witter, Logix is not seeking to "prevent former employees from dealing with customers," but from using information Logix has compiled to shortcut the process of developing relationships and history with customers that then yields insight into their preferences and interests, and services and products that they would be more willing to purchase.

11

commission to "any person that is not registered as a broker-dealer under Section 15(a) of the Exchange Act *but . . . is required to be so registered under applicable federal securities laws and SEA rules or regulations*."  Section 15(a) of the Exchange Act sets forth two circumstances in which a broker or dealer must be registered: (1) when "mak[ing] use of the mails or any means or instrumentality of interstate commerce to effect any transactions in . . . any security," and (2) when "induc[ing] or attempt[ing] to induce the purchase or sale of, any security."  Neither applies here.

Additionally, Defendants' motion makes no mention of other rules specifically *permitting* arrangements between a financial institution and a third party registered broker or dealer, wherein the financial institution licenses its confidential information (*e.g.*, client profiles, history, and other data) to the registered broker or dealer in exchange for payment equivalent to some portion of revenues generated thereby. *See, e.g.*, FINRA Rule 3160.[8]

Moreover, it cannot be the case, as Defendants suggest, that unlike other employees bound to comply with laws of fair competition and contractual obligations entered into with their employers, employees in the "financial services industry" remain at any time free to do the opposite.  Logix's pursuit of its claims for breach are consistent with rules and regulations affecting securities commissions, and Defendants cannot, certainly on a motion to dismiss, "prove" otherwise. *See Marsh & McLennan Agency, LLC v. Teros Advisors, LLC*, No. 20-CV-02679-HSG, 2021 WL 4133858, at *7 (N.D. Cal. Sept. 10, 2021) (rejecting the defendant's contention that "under FINRA Rule 2040, Plaintiff 'has no legal right to receive any compensation derived from [the former employee's] provision of investment advisory and securities services as a licensed representative'" and finding "at least one genuine issue of material fact" as to the plaintiff's injuries); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("A complaint survives a motion to dismiss '[i]f there are two alternative

_____

[8] Defendants' motion also makes no mention of any similar arrangement Osaic may have, either as a registered broker and/or dealer, or with a registered broker and/or dealer.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible") (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Defendants' appeal to California Business and Professions Code section 16600 is equally unavailing. (Dkt. 34 at 19-20). Despite Defendants' efforts to reframe Logix's Complaint as a means of restricting their ability to work elsewhere in the industry, a review of the Complaint and the claims asserted confirms that Janios and Martinez are free to go wherever they wish, and do whatever they wish, in financial services or any other industry. Logix seeks only to ensure that Janios and Martinez, wherever they go, and whatever they do, act lawfully, and leave Logix's hard-earned customer information alone in the process.[9]

### 4.    Counts XII And XIII Are Sufficiently Alleged.

Logix's allegations also give rise to reasonable inferences supporting not just the existence of a scheme and the acts taken to effectuate it, but each of the defendants' involvement in doing so. *Compare* Dkt. 1 ¶¶ 38-39, 59-60, 68-69, 73-75, 82, 84-87, 89-93 *with* Dkt. 34 at 12-13; *see* 18 U.S.C. § 1961(5) (a "pattern" includes "at least two acts of racketeering activity" that are related and continuous and occur within a ten-year period). For example, it is reasonable to infer, based on the alleged execution of several steps in the scheme at and shortly before the Individual Defendants' coordinated and abrupt departures, that the scheme was developed during their employment with Logix. It is similarly reasonable to infer, based on the Individual Defendants' alleged onboarding at an Osaic entity (and the general rule that motives to steal anything, including information, are often dependent on the ability to sell it to a buyer), that the scheme was developed with or sponsored by Osaic. *See* 18 U.S.C. § 1962(c); *Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008).

---

[9] To the extent Defendants seek to invalidate Janios' and Martinez' Offer Letters on the same grounds, these efforts likewise warrant no consideration at this juncture.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The common purpose of the scheme and acts taken in furtherance thereof is also alleged, but apparent from its result – the loss and undermining of Logix's customer relationships, the swift transition of these customers and their business to another entity, and unearned savings for Defendants on the costs they would have had to expend to independently establish and maintain these customer relationships, build the database of information needed to assess each customer's suitability to be marketed or sold certain services or products, conduct the assessments, and market and sell the appropriate services and products. *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) ("related" means the acts claimed as racketeering "share similar purposes, participants, victims, methods, or other distinguishing characteristics"). That Defendants will continue to engage in these acts is established by their refusal to respond to Logix's pre-litigation attempts at resolution, for example by accounting for materials taken and retained, arranging their return, and/or providing assurances to Logix that the materials would not be used or disclosed – each of which was explicitly proposed. *See Ikuno v. Yip*, 912 F.2d 306, 309 (9th Cir. 1990) (a pattern may meet the "continuous" requirement where there is no indication or evidence that the defendants will cease taking the actions complained of).

### C.    Any Deficiencies May Be Cured On Amendment.

Assuming *arguendo* that Defendants' motion in fact identifies a deficiency in Logix's pleading, Logix respectfully requests leave to amend. There are no circumstances in the present case that would preclude amendment, and a possibility exists that additional details may be alleged consistent with any instruction to that effect from the Court.[10] *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008)

---

[10] Indeed, Logix has received no prior opportunity to correct purported defects in its pleading because Defendants did not engage in sufficient efforts to meet and confer before filing the motion. Only after receiving notice from Logix's counsel and the Court regarding the failure to confer in accordance with Local Rule 7-3, did Defendants' counsel set a call. *See* Chinn-Liu Decl. ¶ 7, Ex. 3 (Dkt. 39-4); *see also* Dkt. 30. During that call, no specific defect (or potential cure therefor) was discussed. (*Id.*) Defendants' counsel merely insisted on dismissal. (*Id.*)

14

(leave to amend should be freely given unless there has been undue delay, bad faith, repeated failure to cure deficiencies, it would cause undue prejudice to the opposing party or would be futile).

## V.    CONCLUSION

Defendants may dispute the merits of the claims against them, or pursue a counter-claim at a later juncture; however, to do so now is premature and unwarranted.  For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: October 27, 2025                    Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ *Sierra J. Chinn-Liu*
        Katherine E. Perrelli (*pro hac vice*)
        Michael D. Wexler (*pro hac vice*)
        Sierra J. Chinn-Liu

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1</u>

The undersigned, counsel of record for Plaintiff LOGIX FEDERAL CREDIT UNION, certifies that this brief contains 4,257 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 27, 2025

By: /s/ *Sierra J. Chinn-Liu*
Katherine E. Perrelli (*pro hac vice*)
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

16

320594137v.2