DANIEL H. HANDMAN (SBN 236345)
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, California 90401
Telephone: (310) 255-0705
Facsimile: (310) 255-0986

Steven L. Manchel (*pro hac vice*)
Patrick M. Capodilupo (*pro hac vice*)
smanchel@bowditch.com
pcapodilupo@bowditch.com
Bowditch & Dewey
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: (617) 757-6528
Facsimile: (508) 929-3099

Attorneys for Defendants
OSAIC WEALTH, INC., JOHN JANIOS,
and ANTHONY MARTINEZ

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION, <br><br> Plaintiff, <br><br> v. <br><br> OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:25-cv-07788-RGK-MAR <br><br> **DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date: July 6, 2026 <br> Time: 11:00 a.m. <br> Judge: Hon. R. Gary Klausner <br> Courtroom: 850 <br><br> Date Action Filed: August 19, 2025 |

**TO LOGIX FEDERAL CREDIT UNION AND ITS COUNSEL OF RECORD**:

PLEASE TAKE NOTICE THAT on July 6, 2026 at 11:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. R. Gary Klausner,

located in the United States Courthouse, 255 East Temple Street, Los Angeles, California 90012, Courtroom 850, 13th floor, Defendants JOHN JANIOS ("Janios") and ANTHONY MARTINEZ ("Martinez") (collectively, the "Individual Defendants") and OSAIC WEALTH, INC. ("Osaic") (together with the Individual Defendants, "Defendants") hereby do and will move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules for the Central District of California for an order granting summary judgment or, in the alternative, partial summary judgment against Plaintiff LOGIX FEDERAL CREDIT UNION on all claims in Plaintiff's Complaint for Damages on the grounds set forth below.

This Motion is based upon Defendants' accompanying Memorandum of Points and Authorities on their Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; Defendants' Statement of Uncontroverted Facts; the Declarations of Patrick M. Capodilupo, Daniel H. Handman, John Janios, and Anthony Martinez, all of which are served and filed concurrently herewith; all papers filed in support and reply to this Motion, Plaintiff's Complaint, the Court's complete file and records in this action, and such other evidence and argument that may be presented at the hearing on this Motion or in Reply.

Pursuant to the certification submitted herein, Defendants have complied with their meet-and-confer obligations under Local Rule 7-3.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................1

**I.   INTRODUCTION** ................................................................................1

**II.   FACTUAL AND PROCEDURAL BACKGROUND** .............................2

**III. LEGAL STANDARD** ...........................................................................4

**IV. ARGUMENTS** .......................................................................................5

1.   Plaintiff has not identified any evidence from which a reasonable jury could find that Defendants misappropriated Plaintiff's trade secrets or confidential information (Counts I, II, IV and V). .......................................................5

  a.   The customer names, addresses, phone numbers, and email addresses retained by the Individual Defendants are not trade secrets or confidential. ......5

  b.   Logix has failed to identify any trade secrets. ...........................................7

  c.   Logix also cannot show that Defendants used, disclosed, or otherwise misappropriated any information. .....................................................................10

2.   The RR Agreements and Offer Letters are void and unenforceable pursuant to 15 U.S.C. §78cc(b) (Counts I and II). ..............................................13

3.   For the same reasons set forth above, Plaintiff's claims for breach of contract (Counts I and II), computer fraud (Count VI), and unfair competition (Count IX) also fail. .........................................................................................15

  a.   Counts I-II (Breach of the RR Agreements and Offer Letters) .................15

  b.   Count VI (Violation of California Penal Code § 502)...............................15

  c.   Count IX (Unfair Competition) ................................................................16

**V.   CONCLUSION** ....................................................................................17

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Abba Rubber Co. v. Seaquist,* 235 Cal. App. 3d 1, 18, (1991)..................................8

*Brumberg, Mackey & Wall, P.L.C.*, 2010 WL 1976174, at *1-2 (S.E.C. No - Action Letter May 17, 2010)..................................................................................13, 14

*ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 971 (C.D. Cal. 2017)............................................................................................................6

*Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *8-11 (N.D. Cal. Mar. 22, 2023) 11

*Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577–78, (2009)............15

*Green v. Monrovia Nursery Co.*, 2019 WL 7173141, at *3 (C.D. Cal. Nov. 5, 2019), *aff'd,* 833 F. App'x 337 (Fed. Cir. 2021).................................................4, 5

*IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 584-84 (7th Cir. 2002)....7

*Imax Corp. v. Cinema Technologies, Inc.*, 152 F. 3d 1161, 1164 (9th Cir. 1998) 7, 8, 10

*Loop AI Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016)...............8

*Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047 (N.D. Cal. 2024)..........................13

*Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 523–24 (9th Cir. 1989)...................17

*Mitigation Techs., Inc. v. Pennartz*, 2015 WL 12656936, at *6 (C.D. Cal. Mar. 13, 2015).....................................................................................................8, 10

*Morgan Stanley Dean Witter, Inc. v. Frisby*, 163 F. Supp. 2d. 1371, 1377 (N.D. Ga. 2001)..............................................................................................................7

*Payward, Inc. v. Runyon*, 2020 WL 5642612, at *3 (N.D. Cal. Sept. 22, 2020).....11

*Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989–90 (S.D. Cal. 2012) ..11, 15

*Perrin Bernard Supowitz, LLC v. Morales*, 2023 WL 1415572, at *6 (C.D. Cal. Jan. 31, 2023), *aff'd,* 2024 WL 411714 (9th Cir. Feb. 5, 2024)...........................5, 7, 12

*Regional Properties, Inc. v. Financial and Real Estate Consulting Company*, 678 F. 2d 552, 560-61 (5th Cir. 1982)..................................................................14

*Schatzki v. Weiser Capital Mgmt., LLC*, 2016 WL 6662264, at *5 (S.D.N.Y. Nov. 9, 2016)......................................................................................................13

*U.S. ex rel. Hopper v. Anton*, 91 F. 3d 1261, 1268 (9th Cir. 1996) .....................17

*United Auto Credit Corp. v. Stewart*, 2025 WL 2428466, at *2 (C.D. Cal. June 23, 2025)................................................................................................5, 8, 11

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1178 (C.D. Cal. 1989), *aff'd,* 914 F. 2d 1256 (9th Cir. 1990)..................................12

*Wolff Juall Invs., LLC,* 2005 WL 5394659, at *1 (S.E.C. No - Action Letter May 17, 2005)....................................................................................................14

**Statutes**

15 U.S.C. §78cc(b) ......................................................................................14

15 U.S.C.A. § 78c(a)(4), (6) ..........................................................................14

18 U.S.C. §1839...........................................................................................8

Cal. Civil Code §3426.1(d)..............................................................................8

**Regulations**

SEC Regulation R, 72 FR 56514-01, 2007 WL 2850893, October 3, 2007............14

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In short, Logix has failed to present sufficient evidence to create a genuine issue of material fact that Defendants misappropriated any Logix information or are otherwise liable for Logix's surviving claims.  Notably, in its initial response to Defendants' interrogatory requesting that Logix identify their allegedly misappropriated information and state when and how the information was misappropriated, Logix merely made a Rule 33(d) reference to two print logs listing more than 5,000 pages of documents allegedly printed by the Individual Defendants from November 1, 2024 through April 9, 2025, a time period that extends several months before Logix even alleges improper conduct, and a list that indisputably includes non-confidential information.  Then, on the Friday before the summary judgment deadline, Logix supplemented their interrogatory response by further referring under Rule 33(d) to even less specific information, namely: (1) *the entire "contents"* of the Individual Defendants' electronic devices; and (2) over 3,500 pages of newly produced documents that contain virtually every single customer account statement *in Logix's possession*, dated in early 2026, a year after the Individual Defendants' departure.  Logix's responses fail to provide sufficient evidence for a reasonable jury to even assess whether the alleged information meets the definition of a trade secret or is confidential, let alone find that Defendants misappropriated any of it.  To the contrary, the only information that the Individual Defendants retained upon their departure are the publicly available names, addresses, phone numbers, and email addresses of the customers to whom they have provided financial advisory services for years.  Thus, Logix cannot establish any of the elements of its surviving claims.

Moreover, no amount of further discovery or depositions can remedy these fatal and dispositive flaws.  As set forth in more detail herein, the Court should

1

grant summary judgment against all of Plaintiff's remaining claims.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an industry standard and FINRA- and SEC-compliant transition of two financial advisors from one brokerage firm, LPL Financial, LLC ("LPL") to another, Osaic, a regular occurrence in the wealth management industry. LPL and Osaic are Financial Industry Regulatory Authority ("FINRA") registered firms that provide securities brokerage, wealth management and investment advisory services to customers through affiliated FINRA-registered financial advisors.  Defendants' Statement of Uncontroverted Facts ("SUF"), ¶ 1.  The Individual Defendants are two such financial advisors who were formerly affiliated with LPL and are now affiliated with Osaic.  *Id.*  The Individual Defendants have each been financial advisors for more than 10 years, in which capacity they have developed personal relationships with customers.  *Id.* at ¶¶ 1, 30.

Logix, on the other hand, is a California-based credit union that provides deposit and lending services to customers.  *Id.* at ¶ 25.  Logix is not licensed to provide securities services to clients, and is, therefore, prohibited as a matter of law from doing so.  *Id.* at ¶ 27.  Instead, Logix contracts with LPL and its affiliated financial advisors, such as (formerly) the Individual Defendants, to provide securities services out of Logix branch locations.  *Id.* at ¶ 28.  Pursuant to the FIS Registered Representative Agreements ("RR Agreements"), LPL appointed each of the Individual Defendants "as a limited agent to service customers of [Logix] by soliciting purchases of (i) securities and investments offered through LPL in its capacity as a broker/dealer; (ii) products and services offered through LPL in its capacity as an investment adviser; and (iii) insurance products offered through LPL and/or its affiliates in its capacity as an insurance agency; to depositors and customers of [Logix] and to the general public."  *Id.*  LPL bore complete and total responsibility to "supervise [the Individual Defendants] with respect to all aspects of securities transactions and related securities business."  *Id.*  Logix has no

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

2

personal relationship with customers with respect to their securities accounts. *Id.* at ¶ 36. All financial advisory services were performed by the Individual Defendants exclusively in their capacity as independent contractors of LPL, and securities accounts opened by customers were not held by, and did not belong to, Logix. *Id.* at ¶¶ 28-9, 37. In exchange for permitting the Individual Defendants to operate their securities business out of Logix branches, Logix received a referral fee in the form of a share of the securities commissions paid by LPL to the Individual Defendants. *Id.*

On April 9, 2025, the Individual Defendants terminated their affiliations with LPL and Logix, and became affiliated with Osaic, operating their securities business through a newly formed d/b/a named Aristo Wealth Management. *Id.* at ¶ 1. Upon their termination, the Individual Defendants retained their clients' publicly available names, addresses, phone numbers, and email addresses, which they obtained from LPL's ClientWorks database and/or which remained on their personal cell phones (the "Customer Lists"). *Id.* at ¶¶ 3-4. The Individual Defendants also retained a third-party professional development course (the "Pareto Systems Course"), which they paid for. *Id.* The Individual Defendants did not retain, use, disclose or misappropriate any other information. *Id.*

In the months following their transition to Osaic, many of the Individual Defendants' customers chose to continue receiving financial advisory services from them. *Id.* at ¶¶ 21-2. In turn, those customers provided Defendants with all necessary documents and information to process the transfer of their securities accounts from LPL to Osaic. *Id.* Not a single account held by Logix transferred to Osaic. *Id.* at ¶¶ 29, 31.

On August 19, 2025, Logix filed a thirteen-count Complaint ("Complaint") alleging that Defendants misappropriated Logix's confidential information and trade secrets to solicit customers. Dkt. 1. On December 8, 2025, the Court dismissed seven counts. Dkt. 52. Logix moved for reconsideration on December

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

3

22, 2025, which the Court denied on February 6, 2026. Dkt. 61. Thus, the following six counts remain: Count I – Breach of Contract (against Janios); Count II – Breach of Contract (against Martinez); Count IV – Misappropriation of Trade Secrets under DTSA; Count V – Misappropriation of Trade Secrets under CUTSA; Count VI – Violation of California Penal Code § 502; and Count IX – Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 *et seq*.

Discovery is now complete, and the Court's second-extended June 3 discovery deadline has passed. Dkt. 80. Defendants have produced approximately 18,000 pages of documents. SUF, ¶ 32. Defendants made their production over the course of multiple stages, as permitted by Rule 34: 10,000 pages of documents in March, an additional 4,000 pages in April, and their final production of 4,000 pages on May 18, 2026 as instructed by the Court (Dkt. 81). *Id.* Despite Defendants' extensive productions, Logix filed a Motion to Compel on April 7, 2026, seeking even more documents. On May 14, 2026, the Court denied every request in Plaintiff's Motion as either moot and/or beyond the scope of permissible discovery. Dkt. 81. Notably, the Court's Order described some of Plaintiff's requests as "wildly overbroad and disproportionate." Dkt. 81, Page ID# 1115.

Thus, Plaintiff has had more than sufficient time to establish evidence of Defendants' alleged liability, if any. While the parties have not completed depositions at this time, as shown below, no depositions or further discovery can remedy the fatal flaws in Plaintiff's claims.

## III.    LEGAL STANDARD

To prevail on a motion for summary judgment, the party without the burden of proof at trial "is required only to show that there is an absence of evidence to support the non-moving party's case." *Green v. Monrovia Nursery Co.*, 2019 WL 7173141, at *3 (C.D. Cal. Nov. 5, 2019), *aff'd,* 833 F. App'x 337 (Fed. Cir. 2021) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). To defeat the motion, "the non-moving party must affirmatively present specific evidence sufficient to

4

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

create a genuine issue of material fact for trial." *Id.* (*citing Celotex Corp.*, 477 U.S. at 324). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment may be granted "on all or part of the claim." *Id.* (*citing* Fed. R. Civ. P. 56(a)–(b)).

## IV.  ARGUMENTS

1. **Plaintiff has not identified any evidence from which a reasonable jury could find that Defendants misappropriated Plaintiff's trade secrets or confidential information (Counts I, II, IV and V).**

" 'To state a claim for trade secret misappropriation under the DTSA and CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.' ' " *United Auto Credit Corp. v. Stewart*, 2025 WL 2428466, at *2 (C.D. Cal. June 23, 2025) ("courts often analyze claims under the DTSA and CUTSA together because the elements are substantially similar" (internal citations and quotations omitted)) (*quoting Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (*quoting Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)). A trade secret is defined as: "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* at *2. "[T]he mere fact that someone learned information in confidence at a company does not mean that that information matches up to the statutory definition[.]" *Perrin Bernard Supowitz, LLC v. Morales*, 2023 WL 1415572, at *6 (C.D. Cal. Jan. 31, 2023), *aff'd,* 2024 WL 411714 (9th Cir. Feb. 5, 2024).

### a.  The customer names, addresses, phone numbers, and email addresses retained by the Individual Defendants are not trade secrets or confidential.

The only information retained by the Individual Defendants upon their departure are the Customer Lists. As an initial matter, Plaintiff's failure to identify the Customer Lists as allegedly misappropriated information in response to

5

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Interrogatory No. 2, is, by itself, sufficient to dismiss any claims concerning the Customer Lists. [1]  Nonetheless, the Customer Lists are not confidential or trade secret, as they contain only the publicly available names, addresses, telephone numbers, and email addresses of only the customers who the Individual Defendants personally serviced.

" '[C]ourts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories.' " *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 971 (C.D. Cal. 2017) (quoting *Morlife, Inc. v. Perry*, 56 Cal. App.4th 1514, 1521, (1997)).  The "mere identities and locations of customers where anyone could easily identify the entities as potential customers" are not protectable.  *Id.*  In its Order on Defendants' Motion to Dismiss, this Court held that Defendants had sufficiently alleged that its customer lists were trade secrets because they were alleged to "contain *more than just publicly ascertainable information*" including "the customers' history with the institution, account status, and preferences[.]"  Dkt. 52, Page ID# 627 (emphasis added).

However, the Customer Lists are now shown to indisputably contain only the publicly available identities and contact information of customers which the Individual Defendants personally serviced, and none of the customers' "history … account status, and preferences."  SUF, ¶¶ 5-8.  Indeed, 297 out of the 310 customers whose contact information is on the Customer Lists have been found on public directories, such as nationalpublicdata.com.  *Id.*  This alone is sufficient to grant summary judgment as regards the Customer Lists.

Indeed, a bar on the use of the publicly available contact information would effectively, and unlawfully, nullify Cal. Bus. & Prof. Code, § 16600.  *See, e.g.*, *Perrin*, 2023 WL 1415572 at *7-8.  Treating contact information as trade secret "is

---

[1] The Individual Defendants disclosed that they retained the Customers Lists several weeks before Plaintiff responded to Interrogatory No. 2.  SUF, ¶ 4.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

6

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

logically inconsistent with [] right to solicit business" and would render the right "illusory." *Id.* Moreover, "the standard and customary practice of the securities industry … demonstrates that [] clients and client information … are not proprietary … nor are they sufficiently 'secret' for trade secret protection." *Morgan Stanley Dean Witter, Inc. v. Frisby*, 163 F. Supp. 2d. 1371, 1377 (N.D. Ga. 2001). Lastly, the Protocol for Broker Recruiting expressly permits contact information to be retained by financial advisors who move to a new broker-dealer. SUF, ¶ 33; *see Smith Barney v. Burrow*, 2008 WL 2095739, *6 (E.D. Cal., May 16, 2008).

For all of the foregoing reasons, Logix cannot, as a matter of law, claim confidentiality or trade secret protection over the Customer Lists.

### b. Logix has failed to identify any trade secrets.

In the Ninth Circuit, it is black letter law that "[a] plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.' " *Imax Corp. v. Cinema Technologies, Inc.,* 152 F. 3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F. 2d 511, 522 (9th Cir. 1993)). To meet this burden and survive summary judgment, a plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Id.* at 1164-65 (internal citations omitted) (emphasis in original); *see also IDX Systems Corp. v. Epic Systems Corp.,* 285 F.3d 581, 584-84 (7th Cir. 2002) (plaintiffs must "differentiate the elements of the technology or system that are trade secrets from those that are generally known"); *Mitigation Techs., Inc. v. Pennartz*, 2015 WL 12656936, at *6 (C.D. Cal. Mar. 13, 2015). Moreover, a plaintiff must show that the alleged information derives value from being unknown to others and was kept secret. *See Abba Rubber Co. v. Seaquist,* 235 Cal. App. 3d 1, 18, (1991); 18 U.S.C. §1839; Cal. Civil Code §3426.1(d); *see also United Auto*, 2025 WL 2428466 at *3.

The *Imax* decision is instructive. There, Imax claimed that former employees

7

had misappropriated certain trade secrets related to its large format film projection systems. *Id.* at 1162-64. The defendant served an interrogatory which requested that Imax "identify the entire content of each and every trade secret." *Id.* at 1165. In response, Imax initially directed the defendant to 469 documents pursuant to Fed. R. Civ. P. 33(d), a number it later reduced to 80. *Id.* The trial court granted summary judgment and the Ninth Circuit affirmed, finding that Imax's reference to documents failed to satisfy the requirement that trade secrets be identified with particularity. *Id.* In particular, it found that the reference to such a vast range of documents failed to "refer to tangible trade secret information" such that "the district court or any trier of fact would have expertise in discerning exactly which of the projector system's many 'dimensions and tolerances' were trade secrets." *Id.* at 1167. The court further held that the defendant "could not be expected to [] rebut[] … without some concrete identification[.]" *Id.* (emphasis in original). The court held that failure alone warranted summary judgment on Imax's CUTSA claim. *Id.*; *see also Loop AI Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016) (ordering plaintiff to describe all trade secrets "in narrative form, rather than by cross-reference to other trade secrets or documents").

Significantly more particularity was provided in *Imax* than here. Defendants' Interrogatory No. 2 requested that Logix "IDENTIFY each DOCUMENT which YOU allege constitutes a trade secret and/or confidential information that the DEFENDANTS improperly accessed, removed, used, and/or misappropriated[.]" SUF, ¶ 11. For reach alleged piece of information, Interrogatory No. 2 further requested, *inter alia*: (a) "a brief description of the type of information contained in the DOCUMENT"; (b) when and how the INDIVIDUAL DEFENDANTS improperly accessed or removed the DOCUMENT"; and (c) "all evidence of the INDIVIDUAL DEFENDANTS' improper use of the DOCUMENT, including but not limited to whether the DOCUMENT is on the print logs or in the video footage alleged in the Complaint." *Id.*

8

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

In its initial response, Plaintiff simply referred Defendants, under Rule 33(d), to bates numbers comprising 67 pages of print logs, which allegedly list each of the more than 1,200 documents printed by the Individual Defendants from November 1, 2024 through April 9, 2025, more than 5,000 pages of information. *Id.* at ¶¶ 11-5. Then, on the Friday before the summary judgment deadline, Logix supplemented their interrogatory response by further referring, pursuant to Rule 33(d), to: (1) "the contents of the Individual Defendants' hard drives, electronic devices, and other non-public materials containing Logix's valuable confidential information that the Individual Defendants improperly took, retained, and/or failed to return to Logix"; and (2) 3,500 pages of newly produced documents that contain virtually every single one of Individual Defendants' customers' statements *in Logix's possession*, dated as of early 2026, a year after the Individual Defendants' departure. *Id.* Logix's responses are the exact opposite of the specificity required by CUTSA and DTSA.

First, it is impossible for a reasonable fact finder to even assess whether any of the documents listed on the print logs actually satisfy the definition of a trade secret or are confidential, because the print logs do not reveal what information those documents allegedly contain. Moreover, the names of the documents on the print logs are either not fully visible or provide no evidence whatsoever of their possible identity. SUF, ¶¶ 11-5. For instance, many of the documents have unidentifiable names such as: "Document.pdf"; "Policy Detail"; "Document"; "None"; "Statement"; and "...ta/Jack%20Henry%20and%20Associ." *Id.* The print logs also date back to November 1, 2024, several months before Logix's allegations in the Complaint,[2] and, therefore, necessarily contain information that even Logix does not allege was misappropriated. *Id*; *see, e.g., Mitigation Techs*, 2015 WL 12656936 at *6 (plaintiffs must differentiate trade secrets from non-trade secrets).

---

[2] Logix's allegations concern only the time-period immediately before the Individual Defendants' departure. *See, e.g.,* Compl., ¶¶ 19; Dkt. 52, Page ID# 631.

9

Notably, the only information that *can* be identified on the logs is indisputably not confidential, as there are two hundred document names which Defendants have identified as section headings of the Pareto Systems Course.[3]  SUF, ¶ 13.

Second, Logix's eleventh hour supplemental production only broadens their reference to documents, and reaffirms that Logix cannot sufficiently identify any misappropriated information.  Logix's reference to the unidentified "contents" of the Individual Defendants' devices is nothing more than baseless speculation that does not actually identify anything.  Likewise, Logix's reference to 3,500 pages of customer account statements, *in Logix's own possession*, and generated *by Logix* a year after the allegations in the Complaint, tells a fact finder nothing.  Logix, again, does not articulate what specific information in those thousands of pages is allegedly a trade secret.  SUF, ¶ 11.  Moreover, Logix does not, as specifically requested by Defendants' Interrogatory No. 2, state whether any of those specific documents are listed on the print logs or shown in the video footage.  *Id.*  Nor could it, as it appears that Logix simply went into its own database and generated every single customer statement and report it could find.

Thus, Logix has failed to sufficiently identify any trade secrets or confidential information.  *See, e.g., Imax,* 152 F. 3d at 1165-7 (a plaintiff must provide sufficient information for a fact finder to assess and to give a defendant a fair opportunity to rebut).  For this reason alone, summary judgment is warranted on Counts I, II, IV and V.

### c. Logix also cannot show that Defendants used, disclosed, or otherwise misappropriated any information.

In addition to identifying its trade secrets with sufficient particularity, Logix must also point to specific evidence of misappropriation.  *United Auto*, 2025 WL 2428466 at *2.  To do so, Logix must show evidence that Defendants "actually put

---

[3] Due to the way the course was stored, it could only be printed one section at a time, resulting in roughly 200 separate print jobs on April 9, 2025.  SUF, ¶ 13.

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

the trade secret to some commercial use" or disclosed the trade secret to a third-party. *See, e.g., Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *8-11 (N.D. Cal. Mar. 22, 2023); *Payward, Inc. v. Runyon*, 2020 WL 5642612, at *3 (N.D. Cal. Sept. 22, 2020); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989–90 (S.D. Cal. 2012). "Alleging mere possession of trade secrets is not enough." *Pellerin*, 877 F. Supp. 2d at 989–90 (internal citations and quotations omitted) ("California does not recognize the 'inevitable disclosure doctrine[.]' ")). Logix has not set forth any evidence of use or disclosure.

For each alleged trade secret or piece of confidential information, Interrogatory No. 2 requested that Logix state: (a) when and how the INDIVIDUAL DEFENDANTS improperly accessed or removed the DOCUMENT"; and (b) "all evidence of the INDIVIDUAL DEFENDANTS' improper use of the DOCUMENT[.]" SUF, ¶ 11. As noted, Logix responded only by making Rule 33(d) references to over 8,000 pages of documents and the unidentified "contents" of the Individual Defendants' electronic devices. *Id.* at ¶¶ 11-15.

To start, Logix cannot establish misappropriation of information that it has not identified. Nonetheless, even if Logix had sufficiently identified information, at best, Logix has only shown that the Individual Defendants routinely printed documents over the course of their affiliation with Logix, and that Logix has customer information in its possession, two seemingly obvious and inconsequential points. Logix has not articulated anything about the 3,500-plus pages of customer accounts, or pointed to a single piece of evidence suggesting that they were printed, photographed, removed, used, or even accessed by Defendants. SUF, ¶ 11. Moreover, despite Defendants having produced thousands of emails and text messages with customers, Logix has not pointed to a single communication that suggests Defendants were using any Logix information to solicit them. *Id.*, at ¶¶ 11, 32.

To the contrary, Defendants have submitted sworn declarations stating that

11

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

they did not misappropriate any trade secret or confidential information, including any of the information referred to in Logix's interrogatory responses.  SUF, ¶ 3; *see, e.g., Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1178 (C.D. Cal. 1989), *aff'd,* 914 F. 2d 1256 (9th Cir. 1990) (insufficient evidence to rebut the declarations denying misappropriation).  Indeed, the Individual Defendants did not need to use any documents or information for their longtime customers to follow them to Osaic.  The customers in this case are not prospective customers with unknown financial goals, rather, they have long term personal relationships with the Individual Defendants.  *Id.* at ¶ 5, 30.  When the customers learned that the Individual Defendants had moved, they chose to follow based on their years of experience working together and effectiveness in achieving financial goals.  *Id.* at ¶¶ 21-2.  In fact, many customers contacted the Individual Defendants after *Logix informed them* that their accounts were being reassigned to a new LPL financial advisor.  *Id.*  Once the customers decided to continue working with the Individual Defendants, they provided all necessary documents and information to process the transfer of their accounts from LPL to Osaic.  *Id*; *see, Perrin*, 2023 WL 1415572 at *7-8 (emphasizing personal relationships with customers).  The Individual Defendants' financial advisor relationships with customers were established exclusively in their capacity as independent contractors of LPL, not on behalf of Logix, which served as only a referral source for securities business.  SUF, ¶¶ 25-30; 37.

In sum, Logix has not shown any evidence that Defendants misappropriated any of its trade secrets or confidential information.  SUF, ¶ 11-5.  Thus, for this additional reason, summary judgment should be granted in Defendants' favor on Counts I, II, IV and V.[4]

---

[4] At various points in this litigation (but not in response to Interrogatory No. 2), Logix has also claimed that the Individual Defendants photographed Logix information, but it has not identified any of that information either.  To the contrary, Defendants have matched the footage allegedly showing Janios "photographing"

12

## 2. The RR Agreements and Offer Letters are void and unenforceable pursuant to 15 U.S.C. §78cc(b) (Counts I and II).

In its December 8, 2025 Order on Defendants' Motion to Dismiss, the Court found that the RR Agreements and Offer Letters provided for the payment of securities commissions to Logix.  Dkt. 52, Page ID# 630-1; *see also*, SUF, ¶ 26.[5] The Court further held that both FINRA, through FINRA Rule 2040(a)(1), and the SEC, through 15 U.S.C. §78o, prohibit the payment of securities commissions to entities that are required to register as a broker-dealer but fail to do so.  Dkt. 52, Page ID# 630-1; *see also*, SUF, ¶¶ 25-9.  In turn, the Court held: "If Logix was required to be a registered broker-dealer to accept commissions from the Individual Defendants under the [RR] Agreements, the agreements would be in violation of the SEA and therefore void."  Dkt. 52, Page ID# 630-1 (*citing* 15 U.S.C. § 78cc(b)).  There is no question of fact.  The law is clear that, as a credit union that received securities-related commissions, Logix was required to register.

"Both the [SEC] and [FINRA] have asserted that it is unlawful … to share securities-related commissions with non-registered companies[.]" *Schatzki v. Weiser Capital Mgmt., LLC*, 2016 WL 6662264, at *5 (S.D.N.Y. Nov. 9, 2016); *see* 15 U.S.C. § 78o(a)(1); *see also Brumberg, Mackey & Wall, P.L.C.*, 2010 WL 1976174, at *1-2 (S.E.C. No - Action Letter May 17, 2010).  As such, the SEC has repeatedly declined to assert that no enforcement action would be taken against parties who share securities compensation with non-broker-dealers.  *See, e.g.*, *Brumberg*, 2010 WL 1976174 at *2 ("receipt of compensation directly tied to successful investments … would require broker-dealer registration."); *Wolff Juall*

documents at his desk, with emails that prove he was using his mobile phone scanner to email his signed annuity salesperson forms to Osaic.  SUF, ¶ 23.

[5] The Offer Letters and RR Agreements make up one single contract. *See Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047 (N.D. Cal. 2024) (offer letter and Non-Disclosure and Inventions Assignment Agreement considered one contract (citing Cal. Civ. Code § 1642)).

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

*Invs., LLC,* 2005 WL 5394659, at *1 (S.E.C. No - Action Letter May 17, 2005). These statements of law contain no qualifier that might somehow have allowed Logix to escape its registration obligation.

In fact, there is only one exception that permits an unregistered entity to receive securities-related commissions, and it conclusively establishes that Logix was required to register. In 2007, the SEC and the Federal Reserve created an exception to the broker registration requirement specifically for *banks* engaged in "third party brokerage arrangements" (like the one between Logix, LPL, and Individual Defendants) by removing such *banks* from the SEC's definition of "broker." *See* SEC Regulation R, 72 FR 56514-01, 2007 WL 2850893, October 3, 2007; 15 U.S.C.A. § 78c(a)(4). However, the SEC has unequivocally stated that such **'*bank' exceptions do not by their terms apply to credit unions.*** SEC Regulation R, 72 FR 56514-01, 2007 WL 2850893, October 3, 2007, fn. 26 (emphasis added); *see also* 15 U.S.C.A. § 78c(a)(4), (6). Indeed, several credit unions wrote letters urging the SEC to extend the exemption to credit unions (which previous drafts of the law did, but the final draft did not), but the SEC declined. *Id.* As it is undisputed that Logix is a credit union, not a bank, it is, therefore, undisputed that they were not exempt from registration. SUF, ¶ 25.

Thus, there is no dispute that the RR Agreements and Offer Letters are void for providing for the payment of securities commissions to an entity, Logix, that failed to register as a broker-dealer with the SEC. *See* Dkt. 52, Page ID# 630-1; 15 U.S.C. §78cc(b); *see also*, *Regional Properties, Inc. v. Financial and Real Estate Consulting Company*, 678 F. 2d 552, 560-61 (5th Cir. 1982) (Though voiding a contract may be a "harsh" result, it is "what Congress intended."). Counts I and I should, therefore, be dismissed.

14

**3. For the same reasons set forth above, Plaintiff's claims for breach of contract (Counts I and II), computer fraud (Count VI), and unfair competition (Count IX) also fail.**

### a. Counts I-II (Breach of the RR Agreements and Offer Letters)

Logix's breach of contract claims are premised on the Individual Defendants' use of Logix's information "*to solicit Logix's customers and members*[.]" *See* Compl., ¶¶ 28, 34 (emphasis added). Logix's failure to sufficiently identify its alleged confidential information or point to any evidence that Defendants misappropriated it, means that that no reasonable jury could find that the RR Agreements or Offer Letters were breached. SUF, ¶¶ 11-5. Moreover, Logix's attempt to use confidentiality provisions to prohibit the Individual Defendants from soliciting their own customers is unenforceable. *See, e.g.*, *Perrin*, 2023 WL 1415572 at *7-8; *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577–78, (2009) ("we doubt the continued viability of the common law trade secret exception to covenants not to compete" (citing Cal. Bus. & Prof. Code § 16600)). Thus, Counts I and II should be dismissed.

### b. Count VI (Violation of California Penal Code § 502)

Logix has also not identified any evidence in support of its claim for violation of California Penal Code § 502. SUF, ¶ 34. In its Order on Defendants' Motion to Dismiss, the Court held that Count VI survived because "[r]emoving the facts supporting misappropriation, the Individual Defendants still allegedly deleted files from Logix's computers without authorization[.]" Dkt. 52, Page ID# 629.

However, in Interrogatory No. 14, Defendants requested that Logix: "STATE THE BASIS for [its] allegation 'that the Individual Defendants knowingly and without permission…destr[oyed] data and supporting documentation from Logix's Computer System,' as alleged in Paragraph 60 of the COMPLAINT, and IDENTIFY such alleged 'data and supporting document.' " SUF, ¶ 35. In response, Logix stated only "that it possesses video footage, forensic data, and other

15

evidence indicating that Defendants captured and/or removed Logix materials and documents that Defendants have not produced in this litigation" and on that basis "reasonable believes that such materials have either been destroyed or are being improperly withheld." *Id.* In other words, Logix has not pointed to any evidence, only their "belief." Defendants, on the other hand, have submitted declarations that they did not destroy any of Logix's data. SUF, ¶ 25. Thus, Count VI should also be dismissed.

### c. Count IX (Unfair Competition)

Lastly, Logix has not identified any evidence in support of its claim for unfair competition. SUF, ¶ 34. In holding that Count IX was not preempted by CUTSA, the Court held that "Defendants' alleged misappropriation of trade secrets give rise to Logix's unfair competition claim," but "the claim is also supported by a variety of other unlawful conduct, including Defendants' alleged misuse of a computer system [Count VI]." Dkt. 52, Page ID# 630. According to Logix's Complaint, the totality of such other unlawful conduct was, Defendants' alleged: disclosure and use of Logix's confidential non-trade secret information; undermining of Logix's business relationships; and undescribed "further deceptive or misleading conduct to persuade customers and members to leave Logix and/or its partners." Compl., ¶ 82.

Again, Logix has failed to sufficiently identify its alleged confidential information or point to any specific evidence that Defendants misappropriated it. Moreover, Logix cannot point to any evidence that its business relationships were "undermined," or that the Defendants engaged in "further deceptive or misleading conduct," or articulate what those vague allegations mean. To the extent Logix simply means that the Individual Defendants' longstanding customers transferred their accounts from LPL to Osaic, there is no evidence of impropriety, and furthermore, the Court has already dismissed Logix's claims for tortious interference. Dkt. 52, Page ID# 629. To the extent Logix is referring to some other

16

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

form of undermining, it has not articulated so or pointed to any evidence. On these bases, no reasonable jury could find Defendants liable for unfair competition. Thus, the Court should dismiss Count IX.

## V.   CONCLUSION

Logix has had ample opportunity to identify evidence establishing a genuine issue of fact on its surviving claims, but has failed. *See, e.g.*, *U.S. ex rel. Hopper v. Anton*, 91 F. 3d 1261, 1268 (9th Cir. 1996); *Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 523–24 (9th Cir. 1989). No amount of further discovery or depositions can save Logix's claims from the fatal flaws set forth above. Thus, Defendants respectfully request that the Court GRANT Defendants' Motion for Summary Judgment.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

17

Dated:  June 3, 2026                            BOWDITCH & DEWEY LLP


By:  */s/Patrick M. Capodilupo*
     Patrick M. Capodilupo (*Pro Hac Vice*)

     Attorneys for Defendants
     OSAIC WEALTH, INC., JOHN JANIOS,
     and ANTHONY MARTINEZ

     DANIEL H. HANDMAN (SBN 236345)
     dhandman@hkemploymentlaw.com
     HIRSCHFELD KRAEMER LLP
     1299 Ocean Avenue, Suite 750
     Santa Monica, California 90401
     Telephone:  (310) 255-0705
     Facsimile:   (310) 255-0986

     Steven L. Manchel (*Pro Hac Vice*)
     Patrick M. Capodilupo (*Pro Hac Vice*)
     BOWDITCH & DEWEY LLP
     75 Federal Street, Suite 1000
     Boston, MA 02110
     (617) 757-6500
     (508) 929-3099 (fax)
     smanchel@bowditch.com
     pcapodilupo@bowditch.com
     HIRSCHFELD KRAEMER LLP

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

18

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2026, I caused a copy of the foregoing to be served by email on all counsel of record, including the following:


Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION


/s/Patrick M. Capodilupo
Patrick M. Capodilupo

19

**CERTIFICATION PURSUANT TO LOCAL RULE 11-6.1 AND PARAGRAPH 6 OF THE COURT'S STANDING ORDER**

In accordance with Local Rule 11-6.1 and paragraph 6 of the Court's Standing Order, I hereby certify that the foregoing Memorandum of Points and Authorities is under 20 pages in length and under 5,600 words inclusive of headings, footnotes and quotations.

/s/Patrick M. Capodilupo
Patrick M. Capodilupo

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

20

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**CERTIFICATION PURSUANT TO LOCAL RULE 7-3**

In accordance with Local Rule 7-3, and as set forth in my declaration submitted with the instant motion, I hereby certify that on May 12, 2026, at approximately 4:00 pm, I spoke by telephone with counsel for Plaintiff, Sierra Chinn-Liu, about the filing of the instant motion.  Ms. Chinn-Liu and I spoke for approximately 10-15 minutes, during which I informed her that Defendants intended to file a Motion for Summary Judgment as to all causes of action in Plaintiff's Complaint.  I provided a short description of the nature of the grounds on which Defendants intended to move, which grounds were substantially similar to the grounds set forth in Dkt. 79, Page ID# 1100 in which Defendants further notified the Court and Plaintiff of their intent to seek summary judgment, and which grounds are substantially similar to those set forth in this motion.  During the call, I also offered Ms. Chinn-Liu the opportunity to ask further questions at any time.  Ms. Chinn-Liu did not consent to the entry of summary judgment or partial summary judgment and we have not discussed the matter since that call.

/s/Daniel H. Handman
Daniel H. Handman

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

21

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT