SEYFARTH SHAW LLP
Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:   (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07788-RGK-MAR<br><br>**DISCOVERY MATTER**<br><br>[LOCAL RULE 37-2]<br><br>**[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS**<br><br>Date: July 8, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. Margo A. Rocconi<br>Courtroom: 790<br><br>Fact Disc. Cut-off: June 3, 2026<br>Pre-trial Conf.: July 20, 2026<br>Trial Date: August 4, 2026 |

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

## I.      PLAINTIFF'S INTRODUCTORY STATEMENT

### A.      Introduction

Logix seeks to compel LPL Financial LLC ("LPL") to comply with a subpoena for documents. The subpoena contains five narrowly tailored requests, each subject to clear temporal limitations and seeking specific categories of documents. Rather than comply, LPL has asserted a series of objections that are largely conclusory, non-specific, and inapplicable.

Logix's need for the requested documents is substantial—many are unavailable from any other source. Specifically, requested audit trails—showing access to certain Logix confidential information—is crucial to Logix's claims. By contrast, the burden on LPL is minimal given the limited scope of the requests, and production is plainly proportional to the needs of the case. LPL's objections should, therefore, be overruled and it should be compelled to comply with the subpoena.

Additionally, notwithstanding Logix's diligence in pursuing discovery in this case, insufficient time remained between the date of Logix's responses and the current fact discovery and motion cutoff (June 3, 2026) to submit a fully joint stipulation with LPL's portion included. In the dual interests of meeting the cutoffs *and* minimizing burden on LPL, Logix has advised LPL's counsel of the potential for motion practice during the meet and confer on May 26, 2026, and provided 28 days' notice rather than 21.

### B.      Relevant Background

Logix is a financial institution that provides banking, wealth management, and investment advisory services, including through partnerships with broker-dealers such as LPL Financial LLC ("LPL"). (Dkt. 1 ¶¶ 10–11, 15–16.) Under these arrangements, Defendants John Janios and Anthony Martinez (the "Individual Defendants"), while employed by Logix as Financial Consultants, executed Registered Representative Agreements with LPL governing their provision of investment services to Logix customers. (*Id.* ¶¶ 5–6, 15–16.)

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

In that role, the Individual Defendants were granted access, subject to strict confidentiality obligations, to Logix's proprietary and confidential customer information, including customer identities, account statuses, financial histories, and detailed notes regarding customer preferences and investment objectives – data developed and maintained by Logix over many years through substantial effort and expense. (*Id.* ¶¶ 10–16.) To safeguard this information, Logix implemented robust protections, including confidentiality agreements, access restrictions, password protections, and training requirements, all reinforcing that the information resides on Logix's systems and belongs exclusively to Logix. (*Id.* ¶¶ 10–13, 14–17.) These obligations applied to the Individual Defendants through both their employment with Logix and their agreements with LPL. (*Id.* ¶¶ 14–17.)

Notwithstanding these obligations, the Individual Defendants abruptly resigned in April 2025 without notice and, on information and belief, misappropriated Logix's confidential information prior to their coordinated departure. (*Id.* ¶¶ 17–19.) They were observed photographing information on Logix systems, mass-printing documents, and removing materials containing customer data. (*Id.*) They then used this Logix-owned information to siphon Logix customers to Osaic Wealth, Inc. ("Osaic"), with whom the Individual Defendants are now affiliated. (*Id.*)

Critically, the Individual Defendants have admitted taking Logix's confidential information. They have produced Excel spreadsheets containing the names and contact information of ***hundreds*** of Logix members they previously serviced. (Declaration of Sierra Chinn-Liu ("Chinn-Liu Decl.") ¶¶ 2-3, Ex. 1.) They further admitted that they "us[ed] contact information obtained from [LPL's] ClientWorks database," apparently to *create* these spreadsheets. (*Id.*) Despite these admissions—and despite video evidence showing them printing and photographing documents before their departure, as well as Logix's demands for return of all confidential materials—the Individual Defendants have not produced the underlying documents or data from which these spreadsheets were

3

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

derived, including LPL documents. (*Id.*) [1] This absence leaves a significant gap regarding the scope, timing, and manner of their access to Logix's confidential information.

To address that gap, Logix sought discovery from LPL. On May 19, 2026, Logix issued a subpoena for documents to LPL (the "Subpoena"). (Chinn-Liu Decl. ¶ 4 & Ex. 2.) The Subpoena contains five (5) narrowly tailored requests seeking discrete categories of documents, including documents identifying Logix customers transitioned by the Individual Defendants to Osaic and records reflecting the Individual Defendants' access to certain, finite customer information owned by Logix but accessible through LPL systems, during the period immediately preceding their departure. (*Id.* ¶ 6 & Ex. 2.)

Logix's transmittal letter enclosed the Stipulated Protective Order (Dkt. 68) and expressly advised LPL that it permits non-parties to designate materials as confidential, addressing any confidentiality or privacy concerns. (*Id.*) The Subpoena set a return date of May 29, 2026. (*Id.*) LPL acknowledges it was served with the Subpoena on May 19, 2026. (*Id.* ¶¶ 8, 12 & Exs. 3–4.) On May 26, 2026, counsel for Logix and LPL met and conferred, during which Logix further explained the relevance and targeted nature of its requests, including the importance of customer-specific documents and LPL audit or reporting data reflecting the Individual Defendants' access to Logix information shortly before resigning. (*Id.* ¶¶ 9-10.)

LPL has produced no documents responsive to the Subpoena, instead serving only written objections. (*Id.* ¶ 11 & Ex. 2.) The requested materials are directly relevant to core issues in this action, including the scope and timing of the Individual Defendants'

---

[1] The Individual Defendants' contention that they were entitled to retain this information is unfounded. The Registered Representative Agreements—executed by the Individual Defendants, Logix, and LPL—expressly provide that "all Confidential information, such as phone lists, business cards, files, reports and custom computer programs to manipulate data are . . . considered the property of [*Logix*]" and further confirm that, "notwithstanding any agreement to the contrary including the Protocol for Broker Recruiting . . . [Logix] has a separate and protectable interest in the Confidential Information." (Dkt. 29-1, Page ID #190, 200) (emphasis added).

4

access to Logix's confidential information and their *admitted* use of that information post-departure. The requests are limited and proportional to the needs of the case, and the Stipulated Protective Order provides adequate safeguards for sensitive information. Compliance with the Subpoena is therefore both warranted and necessary to ensure that the parties and the Court have access to critical evidence.

As anticipated during the May 26 meet and confer, insufficient time remained between Logix's receipt of LPL's responses to the Subpoena and the June 3, 2026 facto discovery and motion cutoff. (Chinn-Liu Decl. ¶¶ 14-15.) Logix expended all reasonable efforts, including stipulations with Defendants and an ex parte application, to obtain a modification of the scheduling order in this case *beyond* June 3, 2026, but to no avail. (*Id.*) Accordingly, to preserve Logix's interests, and in light of LPL's responses (making no representation of an intent to produce documents), Logix was required to proceed with a notice of motion and motion to compel with its portion of the joint stipulation under Local Rule 37-2, and has requested LPL submit its portion within the next seven days.

## II. LPL FINANCIAL LLC'S PRELIMINARY STATEMENT

[To be completed by LPL.]

## III. DISPUTED ISSUES

### A. Plaintiff's Position Regarding the Requested Discovery

Federal Rule of Civil Procedure Rule 45 allows a party to serve a subpoena commanding a nonparty to produce and permit inspection or copying of documents and electronically stored information. Fed. R. Civ. P. 45(a)(1)(D). "The scope of discovery through a Rule 45 subpoena is the same that applies to the other discovery rules." *Smythe v. Does 1-10*, 2015 WL 12819174, at *1 (C.D. Cal. Nov. 17, 2015) (citing Fed. R. Civ. P. 45 Advisory Committee's Notes (1970)); *see also Citizens Bus. Bank v. Mission Bank*, 2024 WL 1120151, at *2 (C.D. Cal. Feb. 8, 2024) ("Rule 45 subpoenas must meet the same requirements applicable to any discovery sought.").

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

The Federal Rules permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Federal Rule of Civil Procedure 26 is broad." *Smythe*, 2015 WL 12819174, at *1. Rule 26(b) is to be "liberally interpreted to permit wide-ranging discovery of information." *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007); *see also Lateral Link Grp., LLC v. Springut*, 2015 WL 12810333, at *1 (C.D. Cal. July 10, 2015) ("The federal policy of discovery is a liberal one.").

When a respondent to a subpoena serves objections, the subpoenaing party may move the court "for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i); *accord Net-Com Servs, Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12888106, at *3 (C.D. Cal. Dec. 10, 2012). Upon a motion to compel, once the "minimal showing of relevance is made," the entity resisting discovery—here, LPL—then assumes "the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Blue Horizon Innovations, LLC v. Neher*, 2024 WL 3293873, at *5 (S.D. Cal. May 6, 2024); *accord Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (responding parties carry the "heavy burden of showing why discovery was denied"). Once relevance and necessity of information has been shown, "the discovery is virtually always ordered." *Symantec Corp. v. Sidman*, 2014 WL 1652921, at *3 (N.D. Cal. Apr. 24, 2014) (internal quotation marks omitted) (granting motion to compel compliance with subpoena).

The Subpoena seeks highly relevant, necessary documents. LPL has failed to meet—indeed, cannot meet—its burden to justify noncompliance. The Court should compel LPL to produce the requested documents.

### 1.    LPL's "General Objections" Should Be Overruled.

LPL asserts the following "General Objections" to the Subpoena:

1.     Non-Party LPL objects generally to the extent that any of the document requests in the Subpoena seek documents or information protected by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privilege or doctrine under federal or

6

state law, which Non-Party LPL is entitled to assert. This includes any internal documents or information and any investigation documents or information. No such documents or information will be produced. Any inadvertent or compelled disclosure thereof shall not be deemed waiver of any privilege with respect to such documents or information or any attorney work product protection which may attach thereto.

2.     Non-Party LPL objects generally to the extent that any of the document requests in the Subpoena seek documents or information containing Non-Party LPL's trade secrets, proprietary, technical and business information, extremely confidential or commercially sensitive information, or other information, the disclosure of which would result in substantial injury to Non-Party LPL, and all of which is privileged by virtue of the Trade Secrets Privilege afforded by the Uniform Trade Secrets Act. This includes any internal documents or information and any investigation documents or information. No such documents or information will be produced.

3.     Non-Party LPL objects generally to the extent that any of the document requests in the Subpoena seek to require Non-Party LPL to identify persons, entities or events not known on the basis that such instructions, definitions, or requests are overbroad and seek to require more of Non-Party LPL than any obligation imposed by law, subject Non-Party LPL to unreasonable and undue annoyance, oppression, burden and expense, and seek to impose upon Non-Party LPL an obligation to investigate and discover documents and information from other third parties or sources which are equally accessible to the parties.

4.     Non-Party LPL objects generally on the grounds that the document requests in the Subpoena are not accessible, or not easily accessible, and purport to require Non-Party LPL to provide information beyond what is available at present from a reasonable inquiry of its present employees and/or is beyond Non- Party LPL's possession, custody, or control.

5.     Non-Party LPL objects generally on the grounds that the Subpoena is nothing more than a fishing expedition and a thinly veiled attempt to obtain documents and information from persons or entities who are not parties to this litigation and/or who are not subject to the jurisdiction of this Court. Non-Party LPL and/or its "members, officers, directors, employees, representatives, agents, predecessors, assignees, subsidiaries, affiliates, successors... and attorneys", are not parties to this litigation, and Plaintiff cannot utilize this third-party Subpoena to conduct party-like discovery of Non-Party LPL and/or its "members, officers, directors, employees, representatives, agents, predecessors, assignees, subsidiaries, affiliates, successors... and attorneys" as defined by this definition. This is a form of weaponized discovery that is impermissible Fed. R. Civ. P. 45.

6.     Non-Party LPL objects generally on the grounds that the Subpoena seeks documents that call for private personal and financial information of the parties and/or documents that contain client identifying data (CID) for non-parties. Notably, these persons or entities have not been provided with notice of the Subpoena and the

7

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

right to object to the disclosure of documents and information called for therein.

7.　　Non-Party LPL objects generally to the extent that any of the documents sought in the Subpoena do not relate to the subject matter of this pending action and the document requests are not reasonably calculated to lead to the discovery of admissible evidence and hence are not "relevant" under Fed. R. Civ. P. 45.

8.　　Non-Party LPL objects to the Subpoena on the grounds that it seeks to impose an unreasonable time for compliance, particularly in light of the fact that Plaintiff's Subpoena seeks broad categories of documents from Non-Party LPL relating to 139 identified customers (none of which appear to have been given notice of the Subpoena and the opportunity to object to the same). Notably, despite the present litigation having been initiated on August 19, 2025, the Subpoena was served on Non-Party LPL on May 19, 2026 with an objection date of May 28, 2026 (a mere 9 days to object) and a return date of May 29, 2026 (a mere 10 days to investigate, gather, review, redact and produce responsive documents). Moreover, Plaintiff has refused any extension for Non-Party LPL to investigate this matter and to attempt to meaningfully meet and confer with Plaintiff regarding the Subpoena.

9.　　Non-Party LPL objects generally to the extent that any of the document requests in the Subpoena purport to impose on Non-Party LPL the burden of searching for email or other electronically stored data, as set forth in the Objections to "Instructions." above.

10.　　Non-Party LPL objects generally to the extent that any of the document requests in the Subpoena purport to impose on Non-Party LPL the burden of producing documents that either are not business records of Non-Party LPL, or to produce documents in a form other than the form in which the documents are kept in the normal course of business. *See* Fed. R. Civ. P. 45(e)(1)(A).

(Chinn-Liu Decl., Ex. 4.)

LPL states that its General Objections "apply to *all*" of its responses and then purports to incorporate those objections wholesale into each response to the five requests in the Subpoena. (*Id.*) Such an approach is improper, and the general objections may be stricken outright. *See, e.g.*, *MD Helicopters, Inc. v. Aerometals, Inc.*, 2019 WL 2103408, at *4 (E.D. Cal. May 14, 2019) (striking general objections included in the introduction to discovery responses); *Springer v. Gen. Atomics Aeronautical Sys. Inc.*, 2018 WL 490745, at *1–2 (S.D. Cal. Jan. 18, 2018) (overruling all "General Objections" asserted in a

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

preliminary section); *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007) (finding "no merit" in general objections).

LPL's general objections reflect many of the deficiencies identified in these decisions. They are boilerplate, non-specific, and all qualified by the phrase "to the extent," leaving Logix—and this Court—unable to discern what, if anything, LPL is actually withholding, or the basis for doing so. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("[O]bjections should be plain enough and specific enough so that the court can understand in what way the [discovery requests] are alleged to be objectionable."). LPL does not even attempt to explain or clarify how or why these objections may be applicable to each of the five narrow requests in the Subpoena. LPL's blanket incorporation by reference of its general objections into each specific response is thus "entirely improper in federal court." *Fashion Nova LLC v. Citizens Ins. Co. of Am.*, 2023 WL 8872092, at *3–4 (C.D. Cal. Nov. 8, 2023). LPL's sweeping, non-particularized objections should be overruled.

### 2. LPL Should Be Compelled to Produce the Requested Account Profiles (Request No. 1).

Request No. 1 in the Subpoena seeks profiles for specified accounts during a one-year period, namely:

> Complete LPL profiles for each of the accounts associated with the persons and/or entities listed on the attached <u>Exhibit 1</u>, from January 1, 2025, to December 31, 2025.

(Chinn-Liu Decl., Ex. 2.)

Exhibit 1 to the Subpoena identifies, by account holder name, the specific accounts that the Individual Defendants previously serviced at Logix and subsequently transitioned to Osaic. (*Id.*)

In response, LPL makes no representation of any intent to produce documents, instead asserting a litany of objections, as set forth below:

> In addition to the General Objections set forth above, all of which are incorporated by reference as if fully set forth in this individual response,

9

Non-Party LPL objects to this request on the following additional grounds:

Non-Party LPL objects to this request on the grounds that it is extremely vague and ambiguous. Non-Party LPL is unaware of what Plaintiff is referring to as an "LPL profile." As drafted, this could mean just about anything. Additionally, it is unclear whether Plaintiff seeks "LPL profiles" for accounts that were opened in 2025, existed as of 2025, or something else.

To the extent Plaintiff seeks documents related to the customers listed on Exhibit 1 to the Subpoena, Non-Party LPL further objects to this request on the grounds that it is overly broad, unduly burdensome, harassing, designed merely to annoy and oppress, not reasonably limited in scope or time, and seeks documents and information that are unrelated to the present litigation and are not reasonably calculated to lead to the discovery of admissible evidence and hence are not "relevant" under Fed. R. Civ. P. 45.

Notably, the customers listed on Exhibit 1 to the Subpoena have been represented to be customers of Logix Federal Credit Union ("Logix") who invested through Defendants John Janios and Anthony Martinez ("Defendants") while they were Logix employees and then later moved with Defendants to Oasis [sic]. As such, the personal, private information of the customers listed on Exhibit 1 to the Subpoena is already in Plaintiff's possession, custody or control.

Non-Party LPL further objects to this request on the grounds that it calls for personal, private financial and other information, including [client identifying data], of customers who are not parties to this litigation and who have not been provided with notice of the Subpoena and the opportunity to object to the production of their information.

Non-Party LPL further objects to this request on the grounds that it seeks documents and information related to 139 identified customers, each of whom could potentially hold several accounts with LPL. The number of accounts potentially implicated by this request, and the time it would take Non-Party LPL to identify all potentially responsive customers and accounts, gather responsive documents, review and redact private or [client identifying data] information from those documents, and produce them to Plaintiff, is disproportionate to the parties' needs and would undoubtedly cause undue hardship on Non-Party LPL in violation of Fed. R. Civ. P. 45.

(*Id.*, Ex. 4.)

Request No. 1 seeks relevant information central to Logix's claims. As explained, while employed by Logix, the Individual Defendants serviced the accounts identified in Exhibit 1 to the Subpoena—accounts they subsequently diverted to Osaic, including by leveraging Logix's confidential information concerning customer preferences, account

10

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

histories, and related data. Logix has already sought, and litigated to obtain, production of the information the Individual Defendants admit they took. (*See, e.g.,* Chinn-Liu Decl., Ex. 1, Interrogatory No. 1.) The requested LPL account profiles—which reflect certain Logix-provided and Logix-owned information such as contact details, risk tolerances, familial information, and client preferences—bear directly on when and how the Individual Defendants accessed that information and used it to transition client relationships. Given the Individual Defendants' admissions that they accessed and retained account information through *LPL's* systems, LPL's production of those records is necessary to complete the evidentiary record.

LPL has not satisfied the heavy burden of showing that it should not be compelled to produce clearly relevant documents in its possession. *See Blankenship*, 519 F.2d at 429. Preliminarily, LPL's conclusory objections—that the request is "overly broad, unduly burdensome," "harassing," or "not reasonably limited"—are mere boilerplate. Like its general objections, these objections do not clarify or explain the reason for LPL not responding to the request and are bereft of "explanation or specificity." *See Perrin Bernard Supowitz, LLC v. Morales*, 2022 WL 17224659, at *1 (C.D. Cal. Nov. 1, 2022) (rejecting boilerplate objections in response to subpoena). They are not tailored to the specific request, are "copied verbatim" in other places in LPL's objections and, thus, are "tantamount to no objections at all." *HI.Q, Inc. v. ZeetoGroup, LLC*, 2022 WL 17345784, at *14 (S.D. Cal. Nov. 29, 2022).

LPL's contention that it cannot produce responsive documents absent "notice" to clients is likewise misplaced. LPL cites to no authority conditioning compliance on advance "notice" to clients. Rule 45 has no such requirement. To the extent LPL is relying on California Civil Procedure Code (CCP) section 1985.3—governing notice to "consumers" in certain instances—the documents requested are *LPL's* records, not "consumer" records, and courts have made clear that the section does not apply to Rule 45 subpoenas. Indeed, CCP section 1985.3 "is, by its terms inapplicable to subpoenas issued

11

in federal court cases." *Kaur v. City of Lodi*, 2016 WL 10679575, at *1 (E.D. Cal. Jan. 28, 2016) (citing CCP § 1983.5(a)(3) (governing subpoenas issued "pursuant to this [California] code"); *RBS Sec. Inc v. Plaza Home Mortgage, Inc.*, 2012 WL 3957894, at *1 (S.D. Cal. Sept. 10, 2012) ("A subpoena duces tecum issued under the Federal Rules of Civil Procedure is not subject to CCP 1985.3.") (granting motion to compel compliance with subpoena).

Nor do LPL's objections of vagueness or ambiguity provide a basis to withhold production. The term "account profiles" is commonly understood in the financial services industry, and the parties met and conferred regarding the scope of the request, eliminating any reasonable confusion. Likewise, the narrow date range—one year (2025)—is straightforward and is included to ***eliminate*** ambiguity and clarify the request.

Finally, LPL's assertion of "undue hardship" is wholly unsupported. LPL, as the responding party, "cannot simply invoke generalized objections" as to undue burden, hardship, or oppressiveness. *Deckers Outdoor Corp. v. Romeo*, 2012 WL 13006018, at *4 (C.D. Cal. Feb. 13, 2012) (granting motion to compel subpoena for documents). Rather, LPL must specifically show how this request is burdensome and the nature of the burden. *Id.*; *see also Enciso v. Jackson Nat'l Life Ins. Co.*, 2023 WL 9687512, at *5 (C.D. Cal. Nov. 30, 2023) (a responding entity "cannot simply invoke generalized objections without describing, in specific detail, how each request is overbroad and unduly burdensome"). LPL has made no such showing.

Contrary to LPL's objections, Request No. 1 is narrowly limited to fewer than 150 specifically identified accounts, confined to a single year, and seeks standard records maintained in the ordinary course of LPL's business "that are uniquely within [its] control." *HI.Q, Inc.*, 2022 WL 17345784, at *14. Extracting this narrowly defined data should not impose any meaningful burden, particularly given LPL's access to and routine use of its own systems and reporting tools. And, even if some minimal burden is required, that burden would be outweighed by the importance of the information in the case.

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

LPL's objections to Request No. 1 should be overruled, and LPL should be ordered to produce all responsive account profile documents without further delay.

### 3. LPL Should Be Compelled to Produce the Requested Reports and Audit Trails (Request Nos. 2-5).

Request Nos. 2, 3, 4, and 5 of the Subpoena seek audit logs and reports reflecting the Individual Defendants' access to certain customer information in the period preceding their departure to Osaic. Logix's requests, along with LPL's corresponding objections, are set forth below:

Request No. 2: All LPL account and/or customer reports generated or requested by John Janios from October 1, 2024 to April 10, 2025.

LPL's Objections to Request No. 2: In addition to the General Objections set forth above, all of which are incorporated by reference as if fully set forth in this individual response, Non-Party LPL objects to this request on the following additional grounds:

Non-Party LPL objects to this request on the grounds that it is vague and ambiguous. Non-Party LPL is unsure of what Plaintiff is referring to as an "LPL account and/or customer report." As drafted, this could mean just about anything. This request could also, potentially, call for documents and information that are (a) protected by the attorney-client privilege, the work product doctrine, and/or other applicable privilege or doctrine, (b) Non-Party LPL's trade secrets, proprietary, technical and business information, extremely confidential or commercially sensitive information, or other information, the disclosure of which would result in substantial injury to Non-Party LPL, or (c) private financial, employment or other information of customers, non-customers, employees and affiliated persons or entities, among other things.

Non-Party LPL further objects to this request on the grounds that it is overly broad, unduly burdensome, harassing, designed merely to annoy and oppress, not reasonably limited in scope or time, and seeks documents and information that are unrelated to the present litigation and are not reasonably calculated to lead to the discovery of admissible evidence and hence are not "relevant" under Fed. R. Civ. P. 45.

Non-Party LPL further objects to this request on the grounds that it calls for personal, private financial and other information, including [client identifying data], of customers who are not parties to this litigation and who have not been provided with notice of the Subpoena and the opportunity to object to the production of their information.

Non-Party LPL further objects to this request on the grounds that it seeks documents and information related to 139 identified customers, each of whom could potentially hold several accounts with LPL. The number of

13

accounts potentially implicated by this request, and the time it would take Non-Party LPL to identify all potentially responsive customers and accounts, gather responsive documents, review and redact private or [client identifying data] information from those documents, and produce them to Plaintiff, is disproportionate to the parties' needs and would undoubtedly cause undue hardship on Non-Party LPL in violation of Fed. R. Civ. P. 45.

***

Request No. 3: All LPL account and/or customer reports generated or requested by Anthony Martinez from October 1, 2024, to April 10, 2025.

LPL's Objections to Request No. 3: See Objection to Request No. 2, above, which is fully incorporated by references herein, as it relates to Anthony Martinez.

***

Request No. 4: Audit trails concerning or associated with LPL account and/or customer reports generated or requested by John Janios from October 1, 2024 to April 10, 2025.

LPL's Objections to Request No. 4: In addition to the General Objections set forth above, all of which are incorporated by reference as if fully set forth in this individual response, Non-Party LPL objects to this request on the following additional grounds:

Non-Party LPL objects to this request on the grounds that it is vague and ambiguous. Non-Party LPL is unsure of what Plaintiff is referring to as an "audit trail." As drafted, this could mean just about anything and seemingly seeks to discover Non-Party LPL's ESI or internal investigation and review documents. This request could also, potentially, call for documents and information that are (a) protected by the attorney-client privilege, the work product doctrine, and/or other applicable privilege or doctrine, (b) Non-Party LPL's trade secrets, proprietary, technical and business information, extremely confidential or commercially sensitive information, or other information, the disclosure of which would result in substantial injury to Non-Party LPL, (c) private financial, employment or other information of customers, non-customers, employees and affiliated persons or entities, or (d) documents that do not constitute business records that are proper for production pursuant to the Subpoena, among other things. To the extent this request seeks "customer reports," Non-Party LPL further objects to this request on the grounds that it is duplicative of prior requests for documents in the Subpoena.

Non-Party LPL further objects to this request on the grounds that it is overly broad, unduly burdensome, harassing, designed merely to annoy and oppress, not reasonably limited in scope or time, and seeks documents and information that are unrelated to the present litigation and are not reasonably calculated to lead to the discovery of admissible evidence and hence are not "relevant" under Fed. R. Civ. P. 45. Non-

14

Party LPL further objects to this request to the extent it would require Non-Party LPL to engage third-party vendors or experts, including forensic analysts, to comply with this request.

Non-Party LPL further objects to this request on the grounds that it calls for personal, private financial and other information, including [client identifying data], of customers who are not parties to this litigation and who have not been provided with notice of the Subpoena and the opportunity to object to the production of their information.

Non-Party LPL further objects to this request on the grounds that it potentially seeks documents and information related to 139 identified customers, each of whom could potentially hold several accounts with LPL. The number of accounts potentially implicated by this request, and the time it would take Non-Party LPL to identify all potentially responsive customers and accounts, gather responsive documents, review and redact private or [client identifying data] information from those documents, and produce them to Plaintiff, is disproportionate to the parties' needs and would undoubtedly cause undue hardship on Non-Party LPL in violation of Fed. R. Civ. P. 45.

***

<u>Request No. 5</u>: Audit trails concerning or associated with LPL account and/or customer reports generated or requested by Anthony Martinez from October 1, 2024, to April 10, 2025.

<u>LPL's Objections to Request No. 5</u>: See Objection to Request No. 4, above, which is fully incorporated by references herein, as it relates to Anthony Martinez.

(Chinn-Liu Decl., Exs. 2, 4.)

As their plain terms make clear, Requests Nos. 2, 3, 4, and 5 seek reports and audit trails reflecting the Individual Defendants' access to customer accounts maintained in LPL's systems in the period immediately preceding their departure from Logix to join Osaic. These materials are highly probative of Logix's claims, as they would show: (a) which Logix members (i.e., corresponding LPL accounts) were targeted; (b) when those accounts were accessed; (c) the frequency and scope of that access; (d) the extent to which the Individual Defendants coordinated in targeting those customers; (e) the specific customer information they accessed and retained; (f) whether their access patterns deviated from ordinary business activities; (g) how that access aligns with the more than 100 accounts ultimately diverted and the Individual Defendants' printing and downloading activity; and (h) the adequacy of the documents produced by Defendants in

15

response to Logix's discovery requests, and in particular, the spreadsheet of customer data the Individual Defendants appear to have *created* shortly before their first production in this case using information they admit to taking from LPL.

The requests are narrowly tailored to cover only the months immediately preceding the Individual Defendants' April 2025 resignations, minimizing any burden to LPL while seeking documents from the most relevant timeframe. The requested audit data bears directly on Logix's claims that the Individual Defendants targeted Logix members, misappropriated Logix-owned information, and used that information to solicit customers after joining Osaic. These are highly relevant and vital materials uniquely within LPL's possession. Logix cannot obtain them from any other source.

Against this strong showing, LPL offers perfunctory, unsupported objections, which fail for many of the reasons set forth above. Similar to its responses to Request No. 1, in responding to Request Nos. 2- through 5, LPL asserts "numerous boilerplate objections," including "virtually identical boilerplate objections in response to each of the categories of documents." *Nguyen v. Lotus By Johnny Dung Inc.*, , 2019 WL 4570032, at *4 (C.D. Cal. Apr. 12, 2019) (granting motion to compel compliance with subpoena). Many of LPL's objections are not only conclusory but facially inapplicable.

For example, LPL's assertion that terms such as "account reports," "customer reports," and "audit trails" are vague or ambiguous—and "could mean just about anything"—is meritless. LPL offers no explanation as to why these straightforward terms are unclear. *See NexGen HBM, Inc. v. ListReports,* Inc., 2018 WL 6438572, at *2 (C.D. Cal. Sept. 6, 2018) (rejecting the defendants' objections that numerous terms are "vague or ambiguous" given that they "offer no argument to support the objection"). As courts instruct, responding parties must "use common sense and attribute ordinary definitions to terms in discovery request." *Acevedo v. Viet Vu,* 2020 WL 11272310, at *4 (C.D. Cal. Oct. 7, 2020). LPL has done neither, instead relying on generic objections. And in any event, any purported ambiguity was addressed during the May 26 meet-and-confer,

16

where counsel for Logix specifically advised what it was seeking in terms of the audit trails: logs reflecting the Individual Defendants' accessing, downloading, and/or printing LPL account profiles. (Chinn-Liu Decl. ¶ 10.)

Further, LPL's objections that Requests Nos. 2 to 5 "could also, potentially, call for" privileged documents, trade secrets, "commercially sensitive information," and "private financial" information of third parties—among other speculative possibilities—are entirely unfounded. Rule 45 requires far more. A subpoenaed nonparty asserting privilege must "describe the nature of the withheld documents, communications or tangible things." Fed. R. Civ. P. 45(e)(2). LPL does not identify any specific privileged document or category of information; instead, it relies on hypothetical possibilities untethered to any concrete showing. That is insufficient to sustain a privilege objection. *See HI.Q*, 2022 WL 17345784, at *14 (rejecting privilege claim where subpoenaed entity offered "no specific attorney-client privilege argument").

LPL's similarly conclusory invocation of "trade secrets" fares no better. To properly assert such an objection, the responding party must show that the information sought constitutes "important proprietary information" and "make a strong showing that it has historically sought to maintain the confidentiality of this information." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006); *Nguyen*, 2019 WL 4570032, at *4 (finding assertions that subpoenas "seek private, confidential, and trade secrets information" were "wholly insufficient to meet this standard"). LPL makes no such showing here and offers only generalized, unsupported assertions, which courts routinely reject and protective orders resolve.

As to purported notice to customers, as explained above, CCP 1985.3 and its notice requirements do not apply here. *See Kaur*, 2016 WL 10679575, at *1. Additionally, the audit trails requested—i.e., records tracking data access and modification—are not consumer records, and pdo not inherently reveal substantive client-specific information, undermining any purported privacy concern.

17

Moreover, even assuming some legitimate privacy interest exists, such concerns do not justify withholding discovery altogether. Courts have consistently held that "privacy interests are not absolute and generally yield to discovery needs when mitigated by protective order." *Perrin Bernard Supowitz, LLC v. Morales*, 2022 WL 17224659, at *1 (C.D. Cal. Nov. 1, 2022); see also Deckers, 2012 WL 13006018, at *4 (compelling compliance with subpoena and noting that concerns regarding sensitive information can "be addressed by the protective order that is currently in place"). Here, a Stipulated Protective Order is already in effect and expressly permits nonparties, such as LPL, to designate materials as "Confidential" or "Highly Confidential – Attorneys' Eyes Only." (Dkt. 68, Page ID #: 1032–33.) Logix provided LPL with this order when serving the Subpoena and specifically advised LPL of these protections.

In short, the requested account reports and audit trails are not only relevant, but there is a substantial, case-critical need for them—and they are uniquely within LPL's possession. LPL's objections are unsupported and speculative. Even if any marginal concerns could be substantiated, they would be far outweighed by Logix's demonstrated need for the documents. LPL should, therefore, be compelled to comply with the Subpoena and produce responsive documents without further delay.

**B.     LPL Financial LLC's Position Regarding the Requested Discovery**

[To be completed by LPL.]

18

DATED: June 3, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

19

[PLAINTIFF'S PORTION OF] JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
LPL FINANCIAL LLC'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

326300434v.1