REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

SEYFARTH SHAW LLP
Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:   (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07788-RGK-MAR<br><br>**PLAINTIFF LOGIX FEDERAL CREDIT UNION'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:       July 6, 2026<br>Time:       9:00 a.m.<br>Judge:      Hon. R. Gary Klausner<br>Courtroom:  850<br><br>Date Action Filed:  August 19, 2025 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ..................................................................................................1

II. RELEVANT BACKGROUND .............................................................................3

    A. The Parties ...................................................................................................3

    B. Logix's Confidential Information And Trade Secrets ..................................4

    C. Logix's Efforts To Protect Its Relationships And Information ....................4

    D. The Individual Defendants' Abrupt Departures To Osaic ..........................6

    E. Defendants Refuse To Return The Materials, Requiring Logix To File Suit .........................................................................................................7

    F. Subsequent Proceedings ..............................................................................9

III. LEGAL STANDARD ..........................................................................................9

IV. ARGUMENT ......................................................................................................10

    A. Triable Issues Preclude Summary Judgment As To Claims Involving Defendants' Misappropriation Of Logix's Customer Information (Counts I, II, IV, V) ....................................................................................10

        1. Defendants *Admit* To Misappropriation ..........................................10

        2. Defendants' Proffered Explanations For Their Conduct Create A Genuine Dispute Of Material Fact, Defeating Summary Judgment ............................................................................................11

        3. The Customer Information At Issue In This Case Is Confidential And Trade Secret ...........................................................11

            a. Defendants Mischaracterize The Information At Issue ..........11

            b. The Information At Issue Is Not Publicly Available ...............13

            c. The Information At Issue Was Subject To Reasonable Efforts To Maintain Its Secrecy ..............................................14

            d. Defendants Were Not Permitted Under The Protocol To Take Logix's Customer Information ........................................15

            e. The Value Of The Information At Issue Is Obvious ..............17

        4. Defendants Used Or Are Using The Information At Issue ...............17

    B. Triable Issues Preclude Summary Judgment On Janios's And Martinez's Breaches Of Their Contractual Obligations (Counts I, II) ........18

i

| | | 1. | Defendants' Challenge To The Enforceability Of The FIS Agreements And Offer Letters Is A Red Herring | 18 |
| | | 2. | Logix's Offering Of Advisory Services And Securities Products Through LPL Does Not Implicate 15 U.S.C. § 78cc | 19 |
| | C. | | Triable Issues Preclude Summary Judgment On Defendants' Violations Of The UCL | 20 |
| | D. | | Triable Issues Preclude Summary Judgment On Defendants' Violations Of California Penal Code Section 502 | 22 |
| V. | CONCLUSION | | | 23 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................9

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ...............................................................10

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ................................................................22

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016)..................................................12

*House v. Bell*,
    547 U.S. 518 (2006)..................................................................................9

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) .............................................................12, 14

*Loop AI Labs Inc. v. Gatti*,
    No. 15-CV-00798-HSG, 2015 WL 5158461 (N.D. Cal. Sept. 2, 2015) .....21

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ..................................................................12

*Montway LLC v. Navi Transp. Servs. LLC*,
    809 F. Supp. 3d 200 (D. Del. 2025)........................................................17

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ..................................................................9

*Oakwood Lab'ys LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021) ..............................................................12, 17

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ....................................................................9

*Salomon & Ludwin, LLC v. Winters*,
    150 F.4th 268 (4th Cir. 2025) ............................................................15, 16

*Scott v. Harris*,
    550 U.S. 372 (2007)................................................................................11

*Sun Distrib. Co., LLC v. Corbett*,
    No. 18-CV-2231-BAS-BGS, 2018 WL 4951966 (S.D. Cal. Oct. 12,
    2018) ...................................................................................................13, 14

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-
    07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019)......................17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**State Cases**

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) ........................................................................................21

*HA & W Cap. Partners, LLC v. Bhandari*,
816 S.E.2d 804 (2018), overruled in part on other grounds by *SRM Grp.,
Inc. v. Travelers Prop. Cas. Co. of Am.*, 841 S.E.2d 729 (2020) ................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...............................................................................................20

*Morlife, Inc. v. Perry*,
66 Cal. Rptr. 2d 731 (Ct. App. 1997) ..........................................................................12

*Oasis W Realty, LLC v. Goldman*,
51 Cal. 4th 811 (2011) .................................................................................................18

*Payne v. United Calif. Bank*,
23 Cal. App. 3d 850 (1972) ..........................................................................................21

*Saunders v. Super. Ct.*,
27 Cal. App. 4th 832 (1994) .........................................................................................20

**Federal Statutes**

15 U.S.C. § 78cc .................................................................................................................19

18 U.S.C. § 1839(3) ...........................................................................................................11

18 U.S.C. § 1839(A) ..........................................................................................................14

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................8, 20

Cal. Bus. & Prof. Code § 17204 .......................................................................................20

Cal. Civ. Code § 3246.1(d) ...............................................................................................11

Cal. Civ. Code § 3246.1(d)(2) ...........................................................................................14

California Uniform Trade Secrets Act ...............................................................................11

Defend Trade Secrets Act ..................................................................................................11

Penal Code § 502 ................................................................................................1, 8, 10, 21

**Rules**

Fed. R. Civ. P. 56 ...........................................................................................................3, 22

Fed. R. Civ. P. 56(a) ............................................................................................................9

iv

**Regulations**

12 C.F.R. § 721.3(f)-(g) ................................................................................................ 19

12 C.F.R. § 721.6 ......................................................................................................... 19

FINRA Rule 2010 .......................................................................................................... 21

FINRA Rule 3160 .......................................................................................................... 19

FINRA Rule 3160(b) ..................................................................................................... 19

NASD Rule 2350 ........................................................................................................... 19

**Other Authorities**

*Chubb Securities Corp.*,
    1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993) ......................................................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The motion for summary judgment, or in the alternative, partial summary judgment ("Motion") filed by Defendants John Janios and Anthony Martinez (the "Individual Defendants") and their new employer Osaic Wealth, Inc. ("Osaic") (Dkt. 89) is legally inaccurate, factually false, and should be denied.

Initially, Defendants move for summary judgment on the unsupportable statement that there are no genuine disputes of material fact and that Plaintiff Logix Federal Credit Union ("Logix") lacks evidence to support its claims. To the contrary, evidence yielded to date *confirms* the sequence of events alleged in Logix's Complaint (Dkt. 1). Defendants' own documents show Defendants conspired months before Janios' and Martinez' coordinated and sudden departure without notice in April 2025, and were working together even earlier than suspected to use sensitive, confidential, and trade secret information Logix maintains regarding its members to siphon away Logix members entrusted to them by Logix, and move their business to Osaic and Defendants' affiliated entity, Aristo Wealth Management, LLC ("Aristo").

Rather than refuting these facts with evidence, Defendants rely on misconstrued interrogatory responses, false assertions about industry practices, and implausible excuses for the Individual Defendants' pre-departure conduct. In response to Logix's breach of contract, misappropriation, and unfair competition claims, Defendants *admit* that Janios and Martinez stole information to use with and for Osaic, but falsely suggest they were "allowed" to commit the theft, ignoring applicable law and clearcut written contracts. In response to Logix's Penal Code section 502 claim, Defendants do not deny they failed to produce or remediate the materials they retained from Logix, but instead falsely assert in self-serving declarations that the Individual Defendants "did not destroy any of Logix's data."

Defendants' arguments fail for several reasons. First, Defendants' indefensible explanations for their brazen recording and printing of Logix's proprietary material just prior

to departure as "industry practice" are false, and rely on the application of the "Broker Protocol" – a voluntary agreement to which Logix is *not* a party, and which was expressly modified in Defendants' written contracts with Logix's broker-dealer, LPL Financial LLC ("LPL") to protect Logix's interest in its customer relationships and information. The objective disputes on these issue defeats summary judgment.

Second, Defendants' narrative is based on two documents (sanitized "Customer Lists" produced on behalf of Janios and Martinez, attached to the declaration of counsel) in which counsel, not Defendants, claims the documents were retained under the—objectively unreasonable—belief that doing so was permissible. As Logix raised in discovery disputes, these documents create more questions than they answer. The documents, produced as excel files, do not match the form of company records the Individual Defendants accessed or printed prior to departure, and metadata for the files reflects a last modified date of March 2, 2026 (days before Defendants' first production, and nearly a year after Janios and Martinez abruptly left Logix in April 2025). Defendants consistently misstated what each took from Logix and misled Plaintiff and this Court for months in that on June 12, 2026, after Defendants filed this Motion, LPL responded to a Logix subpoena producing an audit report showing Janios exfiltrated a report of Logix's members on February 18, 2025, with extensive financial and investment information, for hundreds of Logix members days after Janios and Matinez accepted Osaic employment, which Defendants have not produced.

Moreover, Defendants stole more than a mere client list; they took information regarding members who are willing to invest, how much they invest, investment goals, risk tolerance, confidence in investing through a third party, and more. Again, the belief—that Janios and Martinez, as Logix employees and registered representatives contracted with Logix and LPL, were *permitted* to take Logix's member information and use it to transfer business to Osaic, Aristo, and their broker-dealer(s) under the Protocol—is false. The Protocol is a *voluntary* program that firms can join by agreement, pursuant to which advisors transitioning between firms may retain certain limited categories of information (client names, addresses, phone numbers, email addresses). Defendants were ***not*** free to

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

misappropriate material from Logix, *a non-signatory to the Protocol*, or from LPL, which had modified its participation in the Protocol to provide for the enforcement of separate agreements with financial institutions governing the use of client information. Defendants were expressly advised of LPL's position regarding the Protocol, and waived its protections as to the *Logix* customer relationships they were hired to service.

Third, the foundation for Defendants' Motion is otherwise comprised of misleading assertions about the pleadings and this Court's prior rulings. In particular, Defendants repeatedly point to portions of the Court's ruling on Defendants' motion to dismiss (Dkt. 52) as "dispositive" on factual disputes that could not have been resolved at the pleading stage.

Fourth, Defendants had more than sufficient notice of the claims against them and the trade secrets at issue. They were provided with descriptions, and the trade secret information itself that Defendants stole and used to convert business.

In short, Defendants' Motion does not eliminate factual disputes or issues for trial, but rather, highlights them. Defendants fall far short of their Rule 56 burden, and the Motion must be denied in full.

## II.     RELEVANT BACKGROUND

### A.     The Parties

Logix is a financial institution that provides banking services and wealth management and investment advising offerings to its members (also referred to as customers). (Plaintiff's Separate Statement of Genuine Disputes of Material Fact ("SDF") ¶ 38; SUF ¶ 25).

Osaic is a wealth management company comprised of subsidiary firms. (SDF ¶ 39). Osaic's business is centered on the types of services and products Logix provides through its partner broker-dealers like LPL Financial LLC ("LPL"), and relies on a customer base suited for its offerings. (*Id.*; SUF ¶¶ 28-29).

Defendants Janios and Martinez are former employees of Logix, both holding the title of "Financial Consultant." (SDF ¶ 40; SUF ¶ 2).

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**B.      Logix's Confidential Information And Trade Secrets**

As Financial Consultants, Janios and Martinez were hired to have access to Logix's member relationships and associated information. (SDF ¶¶ 41-42, SUF ¶ 29). While at Logix, Janios and Martinez did not have to cold-call, prospect, or otherwise originate their own business; they were referred to Logix members who were or might be interested in investment and wealth management services and products, and given access to Logix's databases of information about its members and customers, logging not just their identities, contact information, and familial relationships, but also their internal profiles, banking history, income information, account status(es), area(s) of interest, preferences, investment experience and portfolio size, investment objectives, and risk tolerance. (*Id.*)

This is not simply contact information or information that could be gleaned from public sources, as Defendants falsely assert, but information carefully compiled and maintained by Logix over many years through substantial effort and expense. (*Id.*) The information helps determine the suitability and receptivity of customers to invest or be offered and sold certain products or services, allowing Logix and its partners, including LPL, to effectively match respective investments, products, and services to customers who would be most interested in them, most benefit from them, and/or most likely purchase them. (*Id.*)

**C.      Logix's Efforts To Protect Its Relationships And Information**

Given the value this information would have to *anyone* trying to sell wealth management, investment advising, and other financial services—not just competitor banks or credit unions—Logix implements measures to protect it. (SDF ¶ 43). Access to Logix's customer relationships and information is limited to employees and contractors solely as needed for the performance of their duties for Logix and to provide and/or sell the services and products offered by partners like LPL. (*Id.*) Logix requires its employees and contractors to enter into confidentiality agreements, provides strict instructions and reminders regarding confidentiality, holds regular trainings, and imposes restrictions on access to its systems including password protections and dual-factor authentication. (*Id.*) Logix also requires employees and contractors to return all company property upon termination. (*Id.*)

4

Consistent with these protections, Janios and Martinez each executed offer letters and agreements reiterating their obligations with regard to Logix's relationships and information. (SDF ¶ 44). Janios and Martinez explicitly acknowledged:

> During the term of employment with [Logix], employees may have access to and become acquainted with information of a confidential, proprietary, or secret nature . . . Employees shall not disclose any of the above-mentioned trade secrets, directly or indirectly, or use them in any way, either during the term of their employment or at any time thereafter, except as required in the course of employment with the Credit Union.

> Financial Consultants . . . will not, during their employment at [Logix], divulge, furnish, or make accessible to anyone (other than in the regular course of [Logix] business), any names, addresses, or telephone numbers of those individuals who maintain accounts at [Logix]. In addition, any financial statements, or the contents of customer's portfolios, or any other such information shall be kept confidential during the course of your employment. All records of those customers . . . shall remain the property of [Logix] during and after your employment with [Logix].

(*Id.*) The Individual Defendants acknowledged additional obligations in tri-party agreements with LPL and Logix. (*Id.*; SUF ¶¶ 28-29). As discussed above, to provide wealth management and investment advising offerings to its banking customers and members, Logix partners with qualified and registered broker/dealers, like LPL. (SDF ¶ 39; SUF ¶ 1). The terms of these arrangements can vary, but each entails an exchange whereby (a) Logix is enabled to expand its offerings to its members, and the partner receives limited access to Logix information, (b) Logix employees provide services and products through the partner, and the employees receive limited access to Logix information, and (c) the partner *and* employees acknowledge Logix's interest in its customer relationships and information, and undertake obligations to maintain the confidentiality of Logix's information. (SDF ¶ 45).

Pertinent here, LPL acknowledges in both its agreements with Logix and its agreements with employee Financial Consultants that the customers, relationships, and information about them are *Logix's*, and that the Financial Consultants (referred to as "Registered Representatives") act as "limited agent[s] to service customers of LOGIX FEDERAL CREDIT UNION" by soliciting purchases of products and services "offered

5

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

through LPL." (SDF ¶¶ 44-45; SUF ¶ 28). LPL's FIS Registered Representative Agreement explicitly states:

> The Representative . . . [a]grees that, notwithstanding any agreement to the contrary *including the Protocol for Broker Recruiting* to which LPL is a signatory, FI has a separate and protectable business interest in the Confidential Information and the confidentiality and non-solicitation provisions contained herein are enforceable by FI and LPL against Representative. In addition, Representative acknowledges that these confidentiality and non-solicitation provisions preclude Representative from invoking the privileges afforded by the protocol and ***hereby waives any benefit he or she might otherwise have under the protocol with respect to such customer accounts and information***.
>
> . . .
>
> "[r]epresentative and LPL each acknowledge[] that she/it has ***no proprietary interest in the customer/client accounts*** . . . [and] each agree[] that he/it will not, directly or indirectly, or through any intermediary . . . maintain active files on the accounts except as required by law or regulations or by customer request."

(*Id.*, emphasis added).

### D. The Individual Defendants' Abrupt Departures To Osaic

But when Janios and Martinez left Logix in April 2025—abruptly, with no advance notice, and *together*—they were captured on office surveillance footage taking photographs of information on their onsite Logix computers,[1] shown in logs to have been mass-printing company documents above and beyond their ordinary activity as employees, and observed stuffing documents into cases. (SDF ¶ 47-50). Logix later conducted an analysis to determine the information taken, and compared the timing of Janios' and Martinez' printing to their access to Logix's system where member profiles and confidential information are maintained. (*Id.*) The results of this analysis demonstrate a close temporal relationship between Janios' and Martinez' access and printing activity, revealing the documents printed included Logix member profiles, member application documents, and financial profiles. (*Id.*)

---

[1] To date, Defendants have refused to produce these photographs, or complete metadata for the photographs they did produce. *See* Dkts. 86, 92.

6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Logix has learned through documents Defendants produced in discovery that Janios was in talks with Osaic long before departure. (SDF ¶ 48). Beginning in *January 2025*, Janios and Martinez reduced his workload to accommodate "███████████ ████":

(SDF ¶¶ 48-49).

████████████████████████████████████████████████████████████████

In January and February 2025, at the same time they were negotiating with Osaic and tapering off Janios' workload, Janios and Martinez accessed client data through LPL's platform—on which Logix-derived customer information is housed—including client names, social security numbers, dates of birth, account history, and various metrics of account value. (SDF ¶ 50).

In March and April 2025, Janios and Martinez were finalizing their plans and the "█████" of business they would steal:

████████████████████████████████████████████████████████████████

(SDF ¶ 51).

### E. Defendants Refuse To Return The Materials, Requiring Logix To File Suit

Following investigation surrounding the Individual Defendants' abrupt departure and efforts to exfiltrate and retain company property, both Logix and LPL sent letters reminding

7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Janios and Martinez of their obligations (and the confidentiality of Logix's customer information), and demanding the remediation of Logix data in their possession. (SDF ¶ 52). LPL reminded Janios and Martinez that " ██████████████████ ██████████████████ ██████████████████ ██████████████████ " and " ██████████████████ ██████████████████ ." (SDF ¶¶ 45, 52).

Rather than realizing their mistake—that they were not "permitted" under the Protocol to take Logix's customer information or LPL profiles populated with Logix's information—or accounting for the materials taken, arranging their return, providing assurances to Logix that the materials would not be used or disclosed, and/or compensating Logix, Defendants rejected all efforts to deescalate, insisting they did nothing wrong, and made no arrangements to return any Logix materials they retained . (SDF ¶ 53).2

Since the Individual Defendants' coordinated resignation on April 9, 2025, they have exfiltrated over ███ accounts, with losses above ███ for Logix. (SDF ¶ 55). Thus, Logix proceeded with the instant action, asserting claims for Janios' and Martinez' breaches of their confidentiality agreements and duties of loyalty to Logix (Counts I, II, III), Defendants' misappropriation of material claimed and treated by Logix as confidential (Count XI) or trade secret (Counts IV, V), Janios' and Martinez' unauthorized access to Logix's systems (Count VI), Defendants' efforts to interfere with Logix's business (Counts VII, VIII), Defendants' efforts to compete unfairly against Logix and in the industry by using improperly retained and stolen materials to shortcut business development costs (Count IX), and Defendants' conspiracy to engage in the foregoing, undercut Logix as a competitor, and convert its business (Counts X, XII, XIII).

---

[2] Notably, Defendants did not dispute in their prelitigation letters or prior pleadings (i.e., any time before filing the Motion) the fact that Janios and Martinez engaged in these activities, only the characterization of the acts as unlawful. *See generally* Dkt. 34.

8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**F.     Subsequent Proceedings**

On October 15, 2025, Defendants moved to dismiss the Complaint (Dkt. 34). On December 8, 2025, the Court granted in part and denied in part the motion (Dkt. 52), leaving intact central allegations regarding Defendants' misconduct, and Logix's claims for breach of contract (Counts I, II), misappropriation of trade secrets (Counts IV, V), violation of California Penal Code section 502 (Count VI), and violation of California Business and Professions Code sections 17200 *et seq.* (Count IX). The parties thereafter exchanged initial disclosures and Logix began pursuing discovery. However, despite its timely and extensive efforts to obtain information regarding the nature and extent of Defendants' activities, Logix was unable to secure Defendants' cooperation in discovery, and had to seek judicial intervention. *See* Dkts. 64, 69, 74, 86, 92. Though Defendants successfully evaded consequence for delays created by their selective participation in discovery and unilateral schedule for responses and productions, they *were* ordered to make good on their representations of forthcoming supplementation by May 18, 2026. (Dkt. 81). Defendants then produced thousands of pages of documents, review of which indicates that Defendants failed to completely comply with the Magistrate's order. *See* Dkts. 86, 92. Accordingly, Logix's access to discovery was, and remains, limited.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To prevail, the movant must "establish beyond controversy every essential element" of its claim or affirmative defense, or "show that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

210 F.3d 1099, 1102 (9th Cir. 2000). Upon such a showing, the burden then shifts to the nonmovant to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. In considering the evidence, the court "simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Importantly, the court "must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in [its] favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

## IV.   ARGUMENT

Defendants' Motion falls far short of their burden. Defendants have not *shown* that Logix "does not have enough evidence to carry its ultimate burden of persuasion at trial"; rather, Defendants misstate the Protocol, dismiss the information Defendants actually took and used, and conclude they are entitled to judgment, hoping the Court will do the rest.

Even had Defendants managed to shift the burden, Logix's claims for breach of contract, misappropriation of trade secrets, violation of Penal Code section 502, and unfair competition are well-founded, and supported by the evidentiary record in this case, including Defendants' own communications. Viewed in the light most favorable to Logix, the record *establishes* Logix's claims. At the very least, it reveals genuine issues of material fact, requiring the denial of Defendants' Motion.

### A.   Triable Issues Preclude Summary Judgment As To Claims Involving Defendants' Misappropriation Of Logix's Customer Information (Counts I, II, IV, V)

#### 1.   Defendants *Admit* To Misappropriation

The argument underlying the majority of Defendants' Motion, is their contention that they were permitted to retain and use Logix's customer information notwithstanding the truth about what they accessed and retained, or any obligation Defendants had to maintain its confidentiality. Defendants do not dispute, and in fact, have repeatedly stated, that they retained and took information about Logix's customers with them. (SDF ¶ 54; SUF ¶¶ 5, 8).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 2. Defendants' Proffered Explanations For Their Conduct Create A Genuine Dispute Of Material Fact, Defeating Summary Judgment

Unable to contradict the evidence of Janios' and Martinez' pre-departure activities—office surveillance footage depicting use of a personal phone to record information on a Logix desktop computer, their mass-printing of documents including member profiles and account information, and their removal of hard-copy documents from Logix's offices—Defendants offer halfhearted declarations attempting to explain it away. *See* Dkts. 89-17, 98-18. Defendants' declarations, objectionable for other reasons (*see generally* SDF), are insufficient to dispose of factual disputes surrounding their activities. The contrast between Defendants' "explanations" and the evidence of both their plans to undermine Logix (unaddressed by Defendants' declarations) and their efforts to retain and exfiltrate Logix's data should go to the factfinder. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [e.g., video] . . . a court should not adopt that version of the facts for purposes of . . . summary judgment").

### 3. The Customer Information At Issue In This Case Is Confidential And Trade Secret

Under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), a trade secret consists of: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." 18 U.S.C. § 1839(3); Cal. Civ. Code § 3246.1(d); *see* Dkt. 52, Page ID #625-626. The facts and law favor Logix on each prong.

#### a. Defendants Mischaracterize The Information At Issue

Defendants reframe Logix's claims as if they concern only the use of customer identities and contact information. This is ***not*** the case and never has been. (*See* Dkt. 1; SDF ¶¶ 41-42). As discussed in the Court's order on Defendants' motion to dismiss, Logix pled "a broad category of alleged trade secrets—customer information—then specifie[d] what kind of [] information is contained within this category," i.e., "customer information

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

'including but not limited to, their identity and history with the institution, account status, and areas of interest and preferences.'" (Dkt. 52, Page ID #626) ("These allegations, in combination with reasonable inferences that further narrow the documents at issue (e.g., documents that contain account status with *Logix*) are sufficient to put Defendants on notice as to what documents are at issue") (emphasis added). Logix later produced the member profiles themselves,[3] in both the format maintained by Logix and the format populated for use by LPL, evidencing that these profiles include, in addition to the previously described information and sensitive personal information (e.g., social security and account numbers), details regarding customers' investment experience, objectives, portfolio size, and risk tolerance. (SDF ¶¶ 41-42, 50). This is the very information the Individual Defendants accessed and printed leading up to their long-planned exit, and concerns members whose investment business Defendants diverted. (*Id.*)

Such information is well within the realm of protection. *See, e.g.*, *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("customer database" qualified as a trade secret and had "potential economic value" where it "allow[ed] a competitor . . . to direct its sales efforts to those potential customers"); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("[c]ustomer information such as sales history and customer needs and preferences constitute trade secrets"); *see also Morlife, Inc. v. Perry*, 66 Cal. Rptr. 2d 731 (Ct. App. 1997) ("a customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product . . . Its use

---

[3] To the extent Defendants seriously contend Logix has not identified the information claimed as trade secret, Logix has met the requirements for purposes of defeating summary judgment. The profiles themselves, and the means by which Logix has stated Defendants misappropriated the information therein, are more than enough for Defendants to "ascertain at least the boundaries within which the secret lies." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (finding a genuine dispute as to whether plaintiff had identified "at least one trade secret with sufficient particularity" where plaintiff described "uniquely-designed tables, columns, account number structures, and methods of populating table data").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

enables the former employee 'to solicit both more selectively and more effectively'") (citations omitted).

Defendants support their reframing by pointing to documents that artificially narrow the universe of information at issue. Defendants assert that the information Janios and Martinez ***admit they took*** is captured in "Customer Lists" containing sanitized names and contact information for customers the Individual Defendants were referred to and "personally serviced." Defendants suspiciously refused to affirmatively represent that these "Customer Lists" are actual files they took from Logix or LPL, or a contemporaneous record of *everything* they retained.  Other evidence—including observations and video of the Individual Defendants' activities at the time of their departure—indicates they are not. The documents, produced as excel files, do not match the form of the company records the Individual Defendants accessed or printed at and prior to their departure, and metadata for the files reflects a last modified date of March 2, 2026 (days before Defendants' first production in this case). The extensive member reports exfiltrated by Janios on February 18, 2025 from LPL days after accepting employment with Osaic, and extensive Logix profiles printed by Janios and Martinez upon departure bely the artificial "Customer Lists." At worst, the "Customer Lists" were created after the fact to support Defendants' position in this litigation and mislead Logix and the Court. At best, they were created sometime during the Individual Defendants' employment and document a small portion of the information they actually accessed, retained and used. In either scenario, summary judgment is inappropriate.

### b.      The Information At Issue Is Not Publicly Available

The information at issue is not accounted for in Defendants' "Customer Lists," which were, based on their unclear origins, not publicly available documents existing outside of Defendants' devices. Furthermore, that some pieces of the information (names and isolated means of contacting certain customers) may be found in public sources is irrelevant, as the pieces were certainly not found in the form of centralized, searchable compilations, and cannot be used to recreate profiles showing account information, investment experience,

13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

objectives, and risk tolerance.[4] *See, e.g.*, *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) ("although publication names and contact information might be public knowledge, it is clear Plaintiff has put in time and effort to develop other specific information, inter alia, its customer list, preferences, pricing structures, and 'do not deliver' list. Thus, this information is protectable"). In *Sun Distrib. Co., LLC v. Corbett*, the Court rejected the argument that a customer list could not be trade secret, recognizing that "[w]hile it is true that Defendant could surely find a list of all publishers who may be interested in a publication distribution service, this is a far cry from knowing Plaintiff's specific customer list and details about each customer's preferences." *Id.*

### c. The Information At Issue Was Subject To Reasonable Efforts To Maintain Its Secrecy

Logix has supported its allegations and put forth evidence of its efforts to maintain the secrecy of its customer information and the profiles described herein. *See* 18 U.S.C. § 1839(A); Cal. Civ. Code § 3246.1(d)(2); *see also* Dkt. 52, Page ID #626-27. This information is protected as confidential by Logix and its partners, subject to nondisclosure agreements with employees and *contractors*, as well as measures including restricting access on a need-to-know basis, password protections, multi-factor authentication, and trainings. (SDF ¶¶ 43-45).

Courts have observed that the foregoing constitute "reasonable steps to maintain secrecy." *See, e.g.*, *InteliClear, LLC*, 978 F.3d at 660-61 (9th Cir. 2020) (finding a genuine dispute as to trade secret claim where plaintiff had engaged in efforts to encrypt and compile source code and required licensees to agree to confidentiality) (citing *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)). And, even after the Individual Defendants' departure, Logix investigated their activities and took action to prevent them from using or disclosing information they retained from Logix in violation of their

---

[4] Counsel's declaration attesting that he "personally" was able to locate in isolation some contact information for customers in the "Customer Lists" produced by Defendants does not contradict this. (Dkt. 89-2, Page ID #1399).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

agreements. (SDF ¶ 52). Though Defendants ignored these communications, they serve as further evidence of Logix's efforts to protect its data.

### d. Defendants Were Not Permitted Under The Protocol To Take Logix's Customer Information

To distract from evidence of Logix's efforts to maintain the secrecy of the customer information at issue, Defendants falsely assert that under the Protocol, Janios and Martinez were free to take customer information to Osaic and Aristo (or any broker-dealer they partner with). Defendants are simply wrong.

First, Defendants do not establish in their Motion that the information they took is limited to information covered by the Protocol, i.e., customer identities and contact information. (SDF ¶¶ 47, 50; Response to SUF ¶ 4). Nor could they, as the evidence shows they exfiltrated hundreds of customer profiles containing assets, financial preferences, risk tolerance, openness to investing, investments held, goals and more, by printing hard copies of member records they accessed in Logix's internal system, and by downloading, transferring, and/or printing client names along with dates of birth, social security numbers, account history information and account value metrics from LPL's database. (*Id.*)

Second, even ignoring the disputes surrounding whether Defendants' activities were, in fact, limited to the sanitized spreadsheets they produced (and did not include the documents reflected in Logix's access and print logs, or the documents Defendants accessed through LPL's database), Defendants cannot rely on the Protocol to excuse their admitted retention of Logix customer information. The Protocol does not apply.

As discussed above, the Protocol is a "***voluntary*** agreement among firms in the financial services industry that allows a departing financial advisor, with written notice, to take ***certain*** client information with them when ***leaving one member-firm to join another member-firm***."[5] *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 271-72 (4th Cir. 2025)

---

[5] To the extent any of the customer information was taken to or used by Aristo, Aristo is not (or was not at the time of Janios' and Martinez' departure) a signatory, and cannot avail itself of the Protocol.  (Chinn-Liu Decl. ¶¶ 10-11, Ex. 28; Navarro Decl. ¶ 69).

15

(emphasis added). The Protocol was established in 2004 by Citigroup (then Smith and Barney), Merrill Lynch, and UBS to outline rules for advisors transitioning firms. Notably, participation in the Protocol does not shield a signatory from liability for *any and all* conduct arising out of an advisor's transition. *See id.* (even under the Protocol, advisors and member-firms are not permitted to "raid" former firms); *HA & W Cap. Partners, LLC v. Bhandari*, 816 S.E.2d 804, 812 (2018), overruled in part on other grounds by *SRM Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 841 S.E.2d 729 (2020) (the protocol recognizes that a firm "would continue to be free to enforce whatever contractual . . . restrictions exist on the solicitation of customers to move their accounts by a departing [representative] before he or she has left the firm"). Participation may also be superseded by obligations in the advisors' agreements with former employers,[6] or modified by signatories to adapt to their arrangements with other parties. For example, signatories may carve out customer information provided by a partnering financial institution. In such cases, the Protocol falls subordinate to the signatory's contract(s) with that institution.

The Protocol affords no shelter to Defendants for any misappropriation of information from Logix *or* LPL. (SDF ¶ 45; Navarro Decl. ¶¶ 66-69; Chinn-Liu Decl. ¶ 10, Exs. 28-29). *Logix is not a signatory to the Protocol, and is not a brokerage firm.* (*Id.*) Though LPL is a signatory to the Protocol, by the time of the Individual Defendants' departure, LPL had specifically modified its participation to provide for the enforcement of agreements with financial institutions governing the use of client information. (*Id.*) Consistently, Defendants' FIS Agreements with LPL and Logix expressly waive the protections of the Protocol with regard to the *Logix* customer relationships they were hired to service. (*Id.*) Defendants were reminded of this after their departure. (SDF ¶ 52).

---

[6] *See id.* at 278 (affirming finding of likelihood of success on the merits under the text of the individual defendants' employment agreements, which by their terms "indicate[d] the Agreements control over the Protocol regardless of [the former employer]'s Protocol-membership status").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### e.    The Value Of The Information At Issue Is Obvious

Defendants' Motion raises no challenge to the value of Logix's customer information, because it is self-evident. A comprehensive database identifying customers suitable for and receptive to investment and wealth management services, risk tolerance, financial goals, the types of services and products they may be interested in and more, would be valuable to anyone interested in selling those services and products.[7] By gaining (or retaining) access to Logix's customer profiles, and taking relationships *handed to them by Logix*, Defendants were able to shortcut (or completely bypass) the process of creating their own customer base and attendant costs in time and resources. (SDF ¶¶ 55-56; SUF ¶¶ 22, 31).

### 4.    Defendants Used Or Are Using The Information At Issue

Defendants assert that Logix has not offered evidence to show "use" of the information they misappropriated and improperly retained. Tellingly, Defendants do not offer supporting evidence of their own, only interpretations of the documents and responses Logix has provided in discovery. But the evidence is entirely consistent with Defendants' use of Logix's information, including, member profiles and investment notes. Actual use (and the inference of use) is apparent from the volume of business and number of customers Defendants managed to convert, in little under a year. The Individual Defendants' "███" at Osaic includes over 100 customers, for which they have generated over $███ in commissions. (SDF ¶¶ 55-56). This renders implausible Defendants' "immaculate conception" theory that *all* of these customers simply showed up or decided to follow Janios and Martinez to Osaic, with no pre-departure priming, prompting, or soliciting, or targeting or contacting using Logix's information. *See Oakwood*, 999 F.3d 892, 911 (3d Cir. 2021) (inferring misappropriation from the implausibility of the defendant's business trajectory in only four years and a fraction of the former employer's resources); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-

---

[7] Certainly, such a database would be valuable to anyone who understands the difference between developing business from scratch, and selling to customers on a preselected list who are interested in being sold to and can afford the products or services sold.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("[t]he implausibly fast development of technology can contribute to finding misappropriation") (citing *GTAT Corp. v. Fero*, 2017 WL 7035655, at \*1-3 (D. Mont. May 3, 2017); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21 (2005)); *Montway LLC v. Navi Transp. Servs. LLC*, 809 F. Supp. 3d 200, 212 (D. Del. 2025) (lack of evidence of website traffic suggested defendant "submits unsolicited bids to [plaintiff's] prospective customers—which it could only do if it had somehow obtained [their information] ahead of time").

### B. Triable Issues Preclude Summary Judgment On Janios's And Martinez's Breaches Of Their Contractual Obligations (Counts I, II)

#### 1. Defendants' Challenge To The Enforceability Of The FIS Agreements And Offer Letters Is A Red Herring.

To prevail on a claim for breach of contract, a plaintiff must show (1) the existence of a contractual obligation, (2) plaintiff's performance or excuse, (3) breach, and (4) resulting damages. *Oasis W Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Defendants' only challenge in the Motion specific to Logix's contract claims is on the first element. *See* Dkt. 89, Page ID #1376. Defendants argue that the Individual Defendants' FIS Agreements and Offer Letters (requiring them to maintain the confidentiality of Logix's information and refrain from using or disclosing it for purposes other than their work for Logix or services through LPL) are "void and unenforceable." (*Id.*) The argument is not based on evidence, or even principles of contract law, but a single sentence in the order on Defendants' motion to dismiss (Dkt. 52), which Defendants rely on as dispositive. *See id.* ("the Court *found* that the RR Agreements and Offer Letters provided for the payment of securities commissions to Logix") (emphasis added). The referenced order did not entail any such findings. *See* Dkt. 52, Page ID #625 ("When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party"), Page ID #631 ("Defendants argue that both contracts are unenforceable because they are void and illegal under regulatory law. The Court finds Defendants' argument unconvincing at this juncture of litigation").

18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants also misstate the Court's analysis, which addressed a hypothetical posed by their motion. *See id.*, Page ID # 631 ("***If*** Logix was required to be a registered broker-dealer ***to accept commissions*** . . . However, there are no facts on the face of the pleadings indicating that Logix is required to be registered.") (emphasis added). There was no determination made as to whether Logix was subject to the registration requirement or "accepted" commissions. No such determination *could* have been made, as the FIS Agreements and Offer Letters do not even concern the issue Defendants purport to raise. The FIS Agreements and Offer Letters do not "provid[e] for the payment of securities commissions" to Logix; they set forth the conditions for the *Individual Defendants'* receipt of commissions and other compensation for providing advisory services to the members Logix referred them to. (Navarro Decl., Ex. E, F).[8]

### 2. Logix's Offering Of Advisory Services And Securities Products Through LPL Does Not Implicate 15 U.S.C. § 78cc

Furthermore, Logix is not subject to the registration requirement, whether or not it "accepted" commissions. While federal credit unions are not authorized to sell non-deposit investments (e.g., advisory services and securities products) ***directly*** to their members, it is well established that they may offer such products to their members through a registered third party broker-dealer. *See* NASD Rule 2350 (adopted in 1998), FINRA Rule 3160 (adopted in 2010)[9]; *see also Chubb Securities Corp.*, 1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993). This is commonly accomplished through "networking arrangements," as Logix has with LPL. (*Id.*; SDF ¶ 45). Logix itself does not deal in securities products or brokerage services. (*Id.*)

Additionally, a credit union "may earn income for those activities determined to be incidental to [its] business," which include "[f]inancial counseling services" and "[f]inder

---

[8] Tellingly, Defendants' discussion on this point in the Motion is unaccompanied by any citation to an offending provision in either agreement. *See* Dkt. 89, Page ID #1377.

[9] FINRA Rule 3160(b) specifically includes in its definition of "[f]inancial institution" (entities permitted to enter into networking arrangements) "banks, savings and loan associations, savings banks, ***credit unions***, and [] service corporations . . ."

19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

activities" (e.g., connecting members with third parties for purposes of offering the third party's products and services). 12 C.F.R. §§ 721.6, 721.3(f)-(g). The National Credit Union Administration has clarified that under such an arrangement, "[t]he SEC permits credit unions to receive *transaction-related compensation* from the third party broker without triggering the broker-dealer registration requirements." OGC Op. 02-0523a (May 24, 2002) (emphasis added).[10]

Mischaracterizations of this Court's orders and the agreements in question are insufficient to eliminate any triable issue, particularly where, as here, *relevant* facts and authorities confirm the validity of Logix's arrangement with LPL and its agreements with the Individual Defendants. Defendants have offered no facts to the contrary, and no other challenge to the Individual Defendants' agreements. Accordingly, summary judgment on these claims must be denied.

### C.   Triable Issues Preclude Summary Judgment On Defendants' Violations Of The UCL

To prevail on a claim under the Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200, et seq., a plaintiff must show that the defendant engaged in a business act or practice that was "unlawful," "unfair," or "fraudulent," and caused the plaintiff injury or "lost money or property" as a result. Cal. Bus. & Prof. Code § 17204. The UCL covers a wide range of conduct, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143–44 (2003) ("Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. . . . a practice may be deemed unfair even if not specifically proscribed") (internal quotations and citations omitted); *see Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994) (violation of almost any federal, state, or local law may serve as a predicate "unlawful" act or practice).

---

[10] Though not necessary to defeat Defendants' Motion, Logix's arrangement with LPL comports with applicable Rules. (SDF ¶ 45; Navarro Decl. ¶¶ 8, 51-53).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' Motion fails to respond to the claims alleged, focusing on a perceived "lack" of evidence regarding their misappropriation of Logix's customer information. As alleged, Logix's UCL claim is not based on misappropriation, but (1) "the actions of the Individual Defendants while under an obligation to Logix to maintain the confidentiality of its information specifically defined to exclude 'trade secrets' and ***to not undermine its business relationships***," and (2) "the actions of Osaic in knowingly allowing the Individual Defendants to continue their conduct and retaining Logix property even after receiving ample and explicit notice of same." (Compl. ¶ 82) (emphasis added). The foregoing are supported by evidence.

The communications Defendants produced pursuant to the Magistrate's order on May 18 reveal plans to siphon away resources and convert not just customers, but the Individual Defendants' loyalty, from Logix to Osaic and Aristo. Beginning in January 2025, months *before* Janios' and Martinez' coordinated resignation, they conspired to reduce Janios' workload for Logix as they worked to complete negotiations and onboarding with Osaic, create Aristo, and "bring over" Logix customers and their business. (SDF ¶¶ 47-51). Emails between Janios and Osaic show that his last months with Logix were not spent performing his normal duties, but readying his setup for Aristo, locating office space and purchasing furnishings. (*Id.*) The Individual Defendants' communications include hundreds of calendar reminders containing information about customers – many of whom were contacted or already had meetings set within Janios' and Martinez' first week at Osaic. (*Id.*) Taken together, these actions are ample foundation for a UCL claim, and should go to the factfinder.[11] *See, e.g.*, *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013) (allowing UCL claim "based on violation of duty of loyalty" to former employer); *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal.

---

[11] *See Payne v. United Calif. Bank*, 23 Cal. App. 3d 850, 856 (1972) (whether a business act or practice constitutes "unfair" competition is a question of fact).

21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sept. 2, 2015) (declining to dismiss UCL claim based on allegations of defendant's misrepresentations regarding work experience and relationships).[12]

### D.    Triable Issues Preclude Summary Judgment On Defendants' Violations Of California Penal Code Section 502

To prevail on a claim under California Penal Code section 502, a plaintiff must show that it is the owner of a computer, system, network, program, and/or data; the defendant knowingly accessed the computer, system, network, program and/or data without permission; and that such unauthorized access was a substantial factor in causing the plaintiff harm. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016).

Defendants' Motion again fails to respond to the allegations and evidence against them. Defendants do not deny Logix owned the computers, system, network, program, and data housing its member and customer information and sensitive business information. Defendants do not deny they accessed Logix's member and customer information, and refused to remediate materials they retained from Logix, even after they were apprised that any access to Logix's systems and data were without authorization from and after their resignation, or when these materials were requested in discovery. (SDF ¶¶ 43, 52).[13] Saying nothing of their *access* to the information at issue in this case, or the whereabouts of the photographs and hard copy documents they took (which included member profiles, applications, financials, and reports of customer information including LPL account history and value metrics) or the origins of the "Customer Lists" they claim they were permitted to take, Defendants assert only that they "did not destroy any of Logix's data." The facts remain that Defendants took the photographs they took, printed the documents they printed, and accessed the profiles they accessed, but have not produced any records relating to these

_____

[12] FINRA has issued Letters describing taking "nonpublic personal customer information" from one firm to another "without [the prior firm's] or the customers' knowledge or consent" as violating SEC Regulation S-P and FINRA Rule 2010. *See, e.g.*, Patrick J. Knox, FINRA No. 2019062346201, at 1-2 (FINRA Sept. 9, 2020).

[13] Logix filed a motion for sanctions (Dkt. 92) in connection with Defendants' ongoing refusal to provide these materials. It stands to reason that Defendants have not done so because the materials were destroyed, or are being improperly withheld.

22

acts. As a result, Logix incurred, in addition to business losses, expenses to forensically investigate Defendants' conduct. (SDF ¶ 57). Defendants' self-serving protestations are insufficient to overcome facts and evidence to the contrary, or fulfill their Rule 56 burden.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

DATED: June 15, 2026                          Respectfully submitted,

SEYFARTH SHAW LLP


By:  /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Plaintiff LOGIX FEDERAL CREDIT UNION, certifies that this brief contains 6,987 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 15, 2026

By: /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

24

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

326570976v.3