REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

SEYFARTH SHAW LLP
Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION, | Case No. 2:25-cv-07788-RGK-MAR |
| Plaintiff, | **PLAINTIFF LOGIX FEDERAL CREDIT UNION'S CORRECTED OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive, | |
| Defendants. | Date:   July 6, 2026<br>Time:   9:00 a.m.<br>Judge:   Hon. R. Gary Klausner<br>Courtroom:  850 |
| | Date Action Filed:  August 19, 2025 |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. RELEVANT BACKGROUND.............................................................................2

    A. The Parties ...................................................................................................2

    B. Logix's Confidential Information And Trade Secrets ..................................3

    C. Logix's Efforts To Protect Its Relationships And Information ....................3

    D. The Individual Defendants' Abrupt Departures To Osaic ...........................5

    E. Defendants Refuse To Return The Materials, Requiring Logix To File Suit.................................................................................................................6

    F. Subsequent Proceedings...............................................................................7

III. LEGAL STANDARD ..........................................................................................7

IV. ARGUMENT.........................................................................................................8

    A. Triable Issues Preclude Summary Judgment As To Claims Involving Misappropriation Of Logix's Customer Information (Counts I, II, IV, V)..................................................................................................................8

        1. Defendants Admit To Misappropriation..............................................8

        2. Defendants' Proffered Explanations For Their Conduct Create A Genuine Dispute Of Material Fact, Defeating Summary Judgment ............................................................................................8

        3. The Customer Information At Issue In This Case Is Confidential And Trade Secret .........................................................................................9

            a. Defendants Mischaracterize The Information At Issue............9

            b. The Information At Issue Is Not Publicly Available...............11

            c. The Information At Issue Was Subject To Reasonable Efforts To Maintain Its Secrecy................................................11

            d. Defendants Were Not Permitted Under The Protocol To Take Logix's Customer Information .......................................12

            e. The Value Of The Information At Issue Is Obvious ...............14

        4. Defendants Used Or Are Using The Information At Issue ...............14

    B. Triable Issues Preclude Summary Judgment On Janios's And Martinez's Breaches Of Their Contractual Obligations (Counts I, II) ........15

i

1.    Defendants' Challenge To The Enforceability Of The FIS Agreements And Offer Letters Is A Red Herring............................15

2.    Logix's Offering Of Advisory Services And Securities Products Through LPL Does Not Implicate 15 U.S.C. § 78cc........................16

C.    Triable Issues Preclude Summary Judgment On Defendants' Violations Of The UCL................................................................17

D.    Triable Issues Preclude Summary Judgment On Defendants' Violations Of California Penal Code Section 502 ........................................18

V.    CONCLUSION................................................................................................19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................7

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ...............................................................................8

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) .............................................................................18

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016)................................................................10

*House v. Bell*,
    547 U.S. 518 (2006)................................................................................................8

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ..........................................................................10, 12

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ................................................................................10

*Montway LLC v. Navi Transp. Servs. LLC*,
    809 F. Supp. 3d 200 (D. Del. 2025).....................................................................15

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ...............................................................................8

*Oakwood Lab'ys LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021) ...........................................................................10, 14

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003)..................................................................................8

*Salomon & Ludwin, LLC v. Winters*,
    150 F.4th 268 (4th Cir. 2025) ..............................................................................13

*Scott v. Harris*,
    550 U.S. 372 (2007)................................................................................................9

*Sun Distrib. Co., LLC v. Corbett*,
    No. 18-CV-2231-BAS-BGS, 2018 WL 4951966 (S.D. Cal. Oct. 12,
    2018) .....................................................................................................................11

*WeRide Corp. v. Kun Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-
    07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019).........................................14

iii

**State Cases**

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) .............................................................................. 18

*HA & W Cap. Partners, LLC v. Bhandari*,
816 S.E.2d 804 (2018), overruled in part on other grounds by *SRM Grp.,
Inc. v. Travelers Prop. Cas. Co. of Am.*, 841 S.E.2d 729 (2020) ................................. 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .................................................................................... 17

*Morlife, Inc. v. Perry*,
66 Cal. Rptr. 2d 731 (Ct. App. 1997) ..................................................................... 10

*Oasis W Realty, LLC v. Goldman*,
51 Cal. 4th 811 (2011) ..................................................................................... 15

*Payne v. United Calif. Bank*,
23 Cal. App. 3d 850 (1972) ................................................................................ 18

**Federal Statutes**

15 U.S.C. § 78cc ............................................................................................ 16

18 U.S.C. § 1839(3) ......................................................................................... 9

18 U.S.C. § 1839(A) ........................................................................................ 11

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 7

Cal. Bus. & Prof. Code § 17200 .......................................................................... 17

Cal. Bus. & Prof. Code § 17204 .......................................................................... 17

Cal. Civ. Code § 3246.1(d) ................................................................................. 9

Cal. Civ. Code § 3246.1(d)(2) ............................................................................. 11

California Uniform Trade Secrets Act ...................................................................... 9

Defend Trade Secrets Act .................................................................................. 9

Penal Code § 502 ......................................................................................... 7, 18

**Rules**

Fed. R. Civ. P. 56 ........................................................................................ 2, 19

Fed. R. Civ. P. 56(a) ....................................................................................... 7

iv

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Regulations**

12 C.F.R. § 721.3(f)-(g) ................................................................................................ 16

12 C.F.R. § 721.6 ........................................................................................................ 16

FINRA Rule 2010 ....................................................................................................... 18

FINRA Rule 3160 ....................................................................................................... 16

FINRA Rule 3160(b) .................................................................................................. 16

NASD Rule 2350 ........................................................................................................ 16

**Other Authorities**

*Chubb Securities Corp.,*
    1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993) ..................................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The motion for summary judgment, or in the alternative, partial summary judgment ("Motion") filed by John Janios and Anthony Martinez (the "Individual Defendants") and Osaic Wealth, Inc. ("Osaic") (Dkt. 89) is legally and factually inaccurate, and should be denied.

Defendants move on the unsupportable statement that there are no genuine disputes of material fact and that Plaintiff Logix Federal Credit Union ("Logix") lacks evidence to support its claims. To the contrary, evidence to date *confirms* the events alleged in Logix's Complaint (Dkt. 1). Defendants' own documents show Defendants conspired months before Janios' and Martinez' coordinated and sudden departure in April 2025, and were working together even earlier than suspected to use sensitive, confidential, and trade secret information Logix maintains regarding its members to move their business to Osaic and Defendants' affiliated entity, Aristo Wealth Management, LLC ("Aristo").

Rather than refuting these facts with evidence, Defendants rely on misconstrued interrogatory responses, false assertions about industry practices, and implausible excuses for the Individual Defendants' pre-departure conduct. Defendants' arguments fail for several reasons.

First, Defendants' indefensible explanations for their brazen exfiltration of Logix's proprietary material just prior to departure as "industry practice" are false, and rely on the application of the "Broker Protocol" – a voluntary agreement to which Logix is *not* a party, and which was expressly modified in Defendants' contracts with Logix's broker-dealer, LPL Financial LLC ("LPL") to protect Logix's customer relationships and information.

Second, Defendants' narrative is based on two "Customer Lists" produced on behalf of Janios and Martinez, attached to a declaration in which counsel, not Defendants, claims the documents were retained under the belief that doing so was permissible. As Logix raised in discovery, these documents create more questions than they answer. The

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

documents do not match the company records the Individual Defendants accessed or printed prior to departure, and have a "last modified" date of March 2, 2026 (days before Defendants' first production, and nearly a year after Janios and Martinez left Logix in April 2025). Additionally, reports produced by LPL in response to a subpoena show that Janios exfiltrated extensive financial and investment information for hundreds of Logix members, days after he accepted Osaic's offer of employment. Defendants cannot discount their actions as merely stealing a list of names and contact information; they took detailed information regarding Logix members, their accounts and histories, and investment profiles.

Moreover, Defendants cannot excuse their retention of this information. The Protocol, which allows advisors transitioning between certain member-firms to retain client names, addresses, phone numbers, email addresses, did not free Defendants to misappropriate material from Logix, *a non-signatory*, or LPL, which had modified its participation to protect Logix's client information.

Third, Defendants had ample notice of the claims against them and the trade secrets at issue, through both descriptions and the trade secret information itself.

Defendants' Motion does not *eliminate* disputes for trial, but highlights them. Defendants fall short of their Rule 56 burden, and the Motion must be denied in full.

## II.     RELEVANT BACKGROUND

### A.     The Parties

Logix is a financial institution that provides banking services and wealth management and investment advising offerings to its members (also referred to as customers). (Plaintiff's Statement of Genuine Disputes of Material Fact ("SDF") ¶ 38; SUF ¶ 25).

Osaic is a wealth management company comprised of subsidiary firms. (SDF ¶ 39). Osaic's business is centered on the types of services and products Logix provides through its partner broker-dealers like LPL Financial LLC ("LPL"), and relies on a customer base suited for its offerings. (*Id.*; SUF ¶¶ 28-29).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Janios and Martinez are former employees of Logix, both holding the title "Financial Consultant." (SDF ¶ 40; SUF ¶ 2).

**B.  Logix's Confidential Information And Trade Secrets**

As Financial Consultants, Janios and Martinez were hired to provide advisory services to Logix members. (SDF ¶¶ 41-42, SUF ¶ 29). While at Logix, Janios and Martinez did not have to cold-call, prospect, or otherwise originate business; they were referred to members who were or might be interested in investment and wealth management services and products, and given access to Logix's databases of information about its members and customers, logging not just their identities, contact information, and familial relationships, but also their internal profiles, banking history, income information, account status(es), area(s) of interest, preferences, investment experience and portfolio size, investment objectives, and risk tolerance. (*Id.*)

This is not information that could be gleaned from public sources, but information carefully compiled and maintained by Logix over many years through substantial effort and expense, that helps determine the suitability and receptivity of customers to invest or be offered and sold certain products or services, and allows Logix and its partners, including LPL, to effectively match respective investments, products, and services to customers who would be interested in them, benefit from them, and/or likely purchase them. (*Id.*)

**C.  Logix's Efforts To Protect Its Relationships And Information**

Given the value this information would have to *anyone* trying to sell similar products and services—not just competitor banks or credit unions—Logix implements measures to protect it. (SDF ¶ 43). Access to Logix's customer relationships and information is limited to employees and contractors solely as needed for the performance of their duties for Logix and to provide and/or sell the services and products offered by partners like LPL. (*Id.*) Logix requires its employees and contractors to enter into confidentiality agreements, provides strict instructions and reminders regarding confidentiality, holds regular trainings, and imposes restrictions on access to its systems

3

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

including password protections and dual-factor authentication. (*Id.*) Logix also requires employees and contractors to return all Logix property upon termination. (*Id.*)

Janios and Martinez each executed offer letters and agreements reiterating their obligations with regard to Logix's relationships and information, acknowledging that they would "have access to and become acquainted with information of a confidential, proprietary, or secret nature" and agreeing they would not "disclose . . . or use [it] in any way . . . except as required in the course of employment with [Logix]." They agreed not to "divulge, furnish, or make accessible to anyone (other than in the regular course of [Logix] business), any names, addresses, or telephone numbers of those individuals who maintain accounts at [Logix]," and to keep confidential "financial statements, or the contents of customer's portfolios." (SDF ¶ 44).

The Individual Defendants acknowledged additional obligations in tri-party agreements with LPL and Logix. (*Id.*; SUF ¶¶ 28-29). As discussed above, to provide wealth management and investment offerings to members, Logix partners with qualified and registered broker/dealers, like LPL. (SDF ¶ 39; SUF ¶ 1). The terms of these arrangements vary, but each entails an exchange whereby (a) Logix expands its offerings to members, and the partner receives limited access to Logix information, (b) Logix employees provide services and products through the partner, and the employees receive limited access to Logix information, and (c) the partner *and* employees acknowledge Logix's interest in its customer relationships and information, and undertake obligations to maintain the confidentiality of Logix's information. (SDF ¶ 45).

LPL acknowledges in its agreements with Logix and financial advisors that the customers, relationships, and information about them are *Logix's*: "notwithstanding any agreement to the contrary *including the Protocol for Broker Recruiting* to which LPL is a signatory, [Logix] has a separate and protectable business interest in the Confidential Information," and representatives are "preclude[d] from invoking the privileges afforded by the protocol and . . . ***waive[] any benefit he or she might otherwise have under the***

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*protocol with respect to such customer accounts and information*." (SDF ¶¶ 44-45; SUF ¶ 28).

### D.      The Individual Defendants' Abrupt Departures To Osaic

When Janios and Martinez left Logix in April 2025— *together*, with no advance notice—they were captured on video taking photographs of their onsite Logix computers,[1] shown in logs to have been mass-printing documents above and beyond their ordinary activity as employees, and observed stuffing documents into cases. (SDF ¶ 47-50). Logix conducted an analysis to determine the information taken, and compared the timing of Janios' and Martinez' printing to their access to Logix's system where member profiles and confidential information are maintained. (*Id.*) The results of this analysis demonstrate that the documents printed include Logix member profiles, member application documents, and financials. (*Id.*)

Logix has learned through Defendants' productions that Janios was in talks with Osaic long before departure. (SDF ¶ 48). Beginning in *January 2025*, Janios and Martinez reduced his workload to accommodate "                                        ":

(SDF ¶¶ 48-49). In January and February 2025, while negotiating with Osaic and tapering off Janios' workload, Janios and Martinez accessed client data through LPL's platform— on which Logix-derived customer information is housed—including client names, social security numbers, dates of birth, account history, and metrics of account value and performance. (SDF ¶ 50).

In March and April 2025, Janios and Martinez were finalizing their plans and the "▇▇▇" of business they would steal:

---

[1] To date, Defendants have refused to produce these photographs, or complete metadata for the photographs they did produce. *See* Dkts. 86, 92.

5

(SDF ¶ 51).

### E. Defendants Refuse To Return The Materials, Requiring Logix To File Suit

Following investigation surrounding the Individual Defendants' abrupt departure and efforts to exfiltrate and retain company property, both Logix and LPL sent letters reminding Janios and Martinez of their confidentiality obligations, and demanding the remediation of Logix data in their possession. (SDF ¶ 52). LPL's letter reiterated that "███████████████████████████████████████████ ███████████████████████████" and referred Defendants to the provisions in which they agreed that they would not be protected under the Protocol. (SDF ¶¶ 45, 52). Rather than realizing their mistake—that they were not "permitted" to take Logix's customer information or LPL profiles populated with Logix's information—or accounting for the materials taken, arranging their return, providing assurances to Logix, and/or compensating Logix, Defendants ignored these demands, and returned nothing. (SDF ¶ 53).[2]

Since resigning on April 9, 2025, the Individual Defendants have exfiltrated over ███ accounts, with losses above $███ for Logix. (SDF ¶ 55). Thus, Logix filed suit, asserting claims for breaches of Janios' and Martinez' confidentiality agreements and duties of loyalty (Counts I, II, III), Defendants' misappropriation of material claimed and treated by Logix as confidential (Count XI) or trade secret (Counts IV, V), Janios' and

---

[2] Until the Motion, Defendants did not dispute that Janios and Martinez engaged in these activities. *See, e.g.*, Dkt. 34.

6

Martinez' unauthorized access to Logix's systems (Count VI), Defendants' efforts to interfere with Logix's business (Counts VII, VIII), Defendants' efforts to compete unfairly against Logix and in the industry by using stolen materials to shortcut business development costs (Count IX), and Defendants' conspiracy to engage in the foregoing, undercut Logix, and convert its business (Counts X, XII, XIII).

### F.    Subsequent Proceedings

On October 15, 2025, Defendants moved to dismiss (Dkt. 34). On December 8, 2025, the Court granted in part and denied in part the motion (Dkt. 52), leaving intact the central allegations supporting Logix's claims for breach of contract (Counts I, II), misappropriation of trade secrets (Counts IV, V), violation of Penal Code section 502 (Count VI), and violation of Business and Professions Code sections 17200 *et seq.* (Count IX). The parties thereafter exchanged initial disclosures and discovery. Despite timely and extensive efforts to obtain information regarding the nature and extent of Defendants' activities, Logix was unable to secure Defendants' cooperation, and had to seek judicial intervention. *See* Dkts. 64, 69, 74, 86, 92. Defendants evaded consequences for delays created by their selective participation in discovery and unilateral schedule for responses and productions, but were ordered to fulfill their representations of supplementation by May 18, 2026. (Dkt. 81). Defendants then produced thousands of pages, review of which indicates Defendants have not complied with the order, and continue to limit Logix's access to discovery. *See* Dkts. 86, 92.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

To prevail, the movant must "establish beyond controversy every essential element" of its claim or affirmative defense, or "show that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Upon such a showing, the burden shifts to the nonmovant to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. In considering the evidence, the court "simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Importantly, the court "must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in [its] favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014).

## IV.   ARGUMENT

Defendants have not *shown* that Logix "does not have enough evidence to carry its ultimate burden of persuasion at trial." Rather, Defendants misstate the Protocol, and misstate the information they actually took, hoping the Court will do the rest. However, Logix's claims are overwhelmingly well-founded, and supported by the evidence. Viewed in the light most favorable to Logix, the record *establishes* Logix's claims. At the very least, it reveals genuine disputes for trial.

### A.   Triable Issues Preclude Summary Judgment As To Claims Involving Misappropriation Of Logix's Customer Information (Counts I, II, IV, V)

#### 1.   Defendants *Admit* To Misappropriation

Defendants do not dispute that they retained information about Logix's customers. (SDF ¶ 54; SUF ¶¶ 5, 8). Instead, Defendants misstate what they took and argue—faslely—that they were permitted to do so.

#### 2.   Defendants' Proffered Explanations For Their Conduct Create A Genuine Dispute Of Material Fact, Defeating Summary Judgment

Unable to contradict evidence of Janios' and Martinez' pre-departure activities—video depicting use of a personal phone to record a Logix desktop computer, logs

8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

showing mass-printing of member profiles and account information, and their removal of documents from Logix's offices—Defendants offer vague and misleading declarations attempting to explain it away. *See* Dkts. 89-17, 98-18. Defendants' declarations, objectionable for other reasons (*see generally* SDF), fail to dispose of disputes surrounding their activities. Reconciling Defendants' "explanations" with the evidence of their plans to undermine Logix (unaddressed by Defendants' declarations) and substantial evidence of their retaining and exfiltrating Logix's data is for the factfinder. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [e.g., video] . . . a court should not adopt that version of the facts for purposes of . . . summary judgment").

### 3. The Customer Information At Issue In This Case Is Confidential And Trade Secret

Under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), a trade secret consists of: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." 18 U.S.C. § 1839(3); Cal. Civ. Code § 3246.1(d); *see* Dkt. 52, Page ID #625-626.

### a. Defendants Mischaracterize The Information At Issue

Defendants reframe Logix's claims to concern only the use of customer identities and contact information. This is ***not*** the case and never has been. (*See* Dkt. 1; SDF ¶¶ 41-42). As the Court previously noted, Logix has pled "a broad category of alleged trade secrets—customer information—then specifie[d] what kind of [] information is contained within this category," i.e., "customer information 'including but not limited to, their identity and history with the institution, account status, and areas of interest and preferences.'" (Dkt. 52, Page ID #626) ("These allegations . . . are sufficient to put Defendants on notice as to what documents are at issue"). Logix also produced the member profiles themselves,[3] in the format maintained by Logix and the format

---

[3] To the extent Defendants seriously contend Logix has not identified the information claimed as trade secret, Logix has met the requirements for purposes of defeating summary judgment. The

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

populated for use by LPL, evidencing that these profiles include, in addition to previously described information and sensitive personal information (e.g., social security and account numbers), notes on investment experience, objectives, portfolio size, and risk tolerance. (SDF ¶¶ 41-42, 50). This *is* the information the Individual Defendants accessed and printed leading up to their long-planned exit, and concerns members whose investment business Defendants diverted. (*Id.*)

This is protectible information. *See, e.g.*, *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("customer database" qualified as a trade secret and had "potential economic value" where it "allow[ed] a competitor . . . to direct its sales efforts to those potential customers"); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("sales history and customer needs and preferences constitute trade secrets"); *see also Morlife, Inc. v. Perry*, 66 Cal. Rptr. 2d 731 (Ct. App. 1997) ("a customer list can be found to have economic value because [] disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product . . . enable[ing] former employee[s] 'to solicit both more selectively and more effectively'").

Defendants then artificially narrow the information at issue, asserting that the information Janios and Martinez ***admit they took*** is captured in "Customer Lists" of names and contact information. Defendants suspiciously refused to affirmatively represent that these "Customer Lists" are actual files they took from Logix or LPL. Evidence indicates they are not. (SDF ¶¶ 48-51). The documents do not match company records the Individual Defendants accessed prior to departure, and metadata for the files reflects a last modified date of March 2, *2026*. The "Customer Lists" are further belied by

---

profiles themselves, and the means by which Logix has stated Defendants misappropriated the information therein, are more than enough for Defendants to "ascertain at least the boundaries within which the secret lies." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (finding genuine dispute as to whether plaintiff had identified "at least one trade secret with sufficient particularity" where plaintiff described "uniquely-designed tables, columns, account number structures, and methods of populating table data").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

reports exfiltrated by Janios on February 18, 2025 from LPL, days after accepting employment with Osaic, and Logix profiles Janios and Martinez printed. At best, the "Customer Lists" were created during the Individual Defendants' employment and document a fraction of the information accessed, retained and used. At worst, they were created after-the-fact to mislead Logix and this Court. Either way, summary judgment is inappropriate.

### b.    The Information At Issue Is Not Publicly Available

The information at issue is *not* accounted for in Defendants' "Customer Lists," which were, based on their unclear origins, not publicly available documents existing outside of Defendants' devices. Furthermore, that some pieces of the information (names and isolated means of contact) may be found in public sources is irrelevant, as they were not found in the form of centralized, searchable compilations, and cannot be used to recreate profiles showing account information, investment experience, objectives, and risk tolerance.[4] *See, e.g.*, *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) ("publication names and contact information might be public knowledge, [but] it is clear Plaintiff has put in time and effort to develop . . . its customer list, preferences, pricing structures, and 'do not deliver' list. . . . this information is protectable").

### c.    The Information At Issue Was Subject To Reasonable Efforts To Maintain Its Secrecy

Logix has made reasonable efforts to maintain the secrecy of the customer information at issue. *See* 18 U.S.C. § 1839(A); Cal. Civ. Code § 3246.1(d)(2); *see also* Dkt. 52, Page ID #626-27. The information is protected as confidential by Logix and its partners, subject to nondisclosure agreements with employees and *contractors*, and measures including restricting access on a need-to-know basis, password protections, multi-factor authentication, and trainings. (SDF ¶¶ 43-45). After the Individual Defendants' departure, in further effort to protect its data, Logix investigated their

---

[4] Counsel's declaration does not contradict this. (Dkt. 89-2, Page ID #1399).

11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

activities and sought to prevent them from using or disclosing information retained in violation of their agreements. (SDF ¶ 52).

Courts have observed that the foregoing constitute "reasonable steps to maintain secrecy." *See, e.g.*, *InteliClear, LLC*, 978 F.3d at 660-61 (9th Cir. 2020) (finding a genuine dispute as to trade secret claim where plaintiff had engaged in efforts to encrypt and compile source code and required licensees to agree to confidentiality).

### d. Defendants Were Not Permitted Under The Protocol To Take Logix's Customer Information

To distract from evidence of Logix's efforts, Defendants falsely assert that under the Protocol, Janios and Martinez were free to take customer information to Osaic and Aristo (or any broker-dealer they partner with). Defendants are simply wrong.

First, Defendants do not establish in their Motion that the information they took is limited to customer identities and contact information covered by the Protocol. (SDF ¶¶ 47, 50; Resp. to SUF ¶ 4). Nor could they. Evidence shows they exfiltrated hundreds of customer profiles containing assets, financial preferences and interests, risk tolerance, investments held, goals, and more, by printing hard copies of member records they accessed in Logix's internal system, and by downloading, transferring, and/or printing client names along with dates of birth, social security numbers, account history information, and account value and investment performance metrics from LPL. (*Id.*)

Second, even ignoring disputes of whether Defendants' activities *were* limited to the sanitized spreadsheets they produced, Defendants cannot rely on the Protocol to excuse their admitted retention of Logix customer information. The Protocol does not apply.

As discussed above, the Protocol is a "*voluntary* agreement among firms in the financial services industry that allows a departing financial advisor, with written notice, to take *certain* client information with them when *leaving one member-firm to join*

12

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*another member-firm*."[5] *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 271-72 (4th Cir. 2025) (emphasis added). The Protocol was established in 2004 to outline rules for advisors transitioning firms, but does not protect *any and all* conduct arising out of an advisor's transition. *See id.* (the Protocol does not permit "raid[ing]"); *HA & W Cap. Partners, LLC v. Bhandari*, 816 S.E.2d 804, 812 (2018), overruled in part on other grounds by *SRM Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 841 S.E.2d 729 (2020) (the protocol recognizes that a firm "would continue to be free to enforce whatever contractual . . . restrictions exist on the solicitation of customers to move their accounts by a departing [representative] before he or she has left the firm"). Participation may also be superseded by the advisors' agreements with former employers,[6] or modified by signatories (e.g., with carve outs for customer information provided by a partnering financial institution). In such cases, the Protocol falls subordinate to the signatory's contract(s) with that institution.

The Protocol affords no shelter to Defendants for misappropriating information from Logix *or* LPL. (SDF ¶ 45; Navarro Decl. ¶¶ 66-69; Chinn-Liu Decl. ¶ 10, Exs. 28-29). *Logix is not a signatory to the Protocol, and is not a brokerage firm.* (*Id.*) Though LPL is a signatory, by the time of the Individual Defendants' departure, LPL had modified its participation to provide for the protection of partnering financial institutions' client information. (*Id.*) Consistently, Defendants' FIS Agreements with LPL and Logix expressly waive the protections of the Protocol with regard to the *Logix* customer relationships they were hired to service. (*Id.*) Defendants were reminded of this post-departure. (SDF ¶ 52).

---

[5] To the extent any of the customer information was taken to or used by Aristo, Aristo is not (or was not at the time of Janios' and Martinez' departure) a signatory, and cannot rely on the Protocol. (Chinn-Liu Decl. ¶¶ 10-11, Ex. 28; Navarro Decl. ¶ 69).

[6] *See id.* at 278 (observing that individual defendants' employment agreements may "control over the Protocol regardless of [the former employer]'s Protocol-membership status").

13

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### e.      The Value Of The Information At Issue Is Obvious

Though Defendants raise no challenge to the value of Logix's customer information, it is self-evident. A comprehensive database identifying customers suitable for and receptive to investment and wealth management services, risk tolerance, financial goals, the types of services and products they may be interested in and more, would be valuable to anyone interested in selling those services and products.[7] By gaining (or retaining) access to Logix's customer profiles, and taking relationships *handed to them by Logix*, Defendants shortcut (or completely bypassed) creating their own customer base, and attendant costs in time and resources. (SDF ¶¶ 55-56; SUF ¶¶ 22, 31).

### 4.      Defendants Used Or Are Using The Information At Issue

Defendants assert that Logix has not offered evidence to show "use" of information they misappropriated and improperly retained. But the evidence is entirely consistent with Defendants' use of Logix's information, including member profiles and investment notes. Actual use (and the inference of use) is apparent from the volume of business and number of customers Defendants managed to convert in under a year. The Individual Defendants' "███" at Osaic includes over 100 customers, for which they have generated over $███ in commissions. (SDF ¶¶ 55-56). This renders implausible Defendants' "immaculate conception" theory that *all* of these customers simply showed up or decided to follow Janios and Martinez to Osaic, with no pre-departure priming, prompting, or soliciting, or targeting or contacting using Logix's information. *See Oakwood*, 999 F.3d 892, 911 (3d Cir. 2021) (inferring misappropriation from the implausibility of the defendant's business trajectory in only four years and a fraction of the former employer's resources); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("[t]he implausibly fast development of technology can contribute to

---

[7] Certainly, such a database would be valuable to anyone who understands the difference between developing business from scratch, and selling to customers on a preselected list who are interested in being sold to and can afford the products or services sold.

14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

finding misappropriation") (citing *GTAT Corp. v. Fero*, 2017 WL 7035655, at \*1-3 (D. Mont. May 3, 2017); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21 (2005)); *Montway LLC v. Navi Transp. Servs. LLC*, 809 F. Supp. 3d 200, 212 (D. Del. 2025) (lack of website traffic suggested defendant "submits unsolicited bids to [plaintiff's] prospective customers—which it could only do if it had somehow obtained [their information] ahead of time").

> **B. Triable Issues Preclude Summary Judgment On Janios's And Martinez's Breaches Of Their Contractual Obligations (Counts I, II)**
>
> **1. Defendants' Challenge To The Enforceability Of The FIS Agreements And Offer Letters Is A Red Herring.**

To prevail on a claim for breach of contract, a plaintiff must show (1) the existence of a contractual obligation, (2) performance or excuse, (3) breach, and (4) resulting damages. *Oasis W Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Defendants' only challenge in the Motion specific to Logix's contract claims is on the first element. *See* Dkt. 89, Page ID #1376. Defendants argue that the Individual Defendants' FIS Agreements and Offer Letters (and attendant nondisclosure obligations) are "void and unenforceable." (*Id.*) The argument is not based on evidence, or even principles of contract law, but one sentence in a prior order (Dkt. 52). *See id.* ("the Court *found* that the [agreements] provided for the payment of securities commissions to Logix") (emphasis added). The referenced order did not make dispositive findings. *See* Dkt. 52, Page ID #625 ("When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party"), Page ID #631 ("Defendants argue that both contracts are unenforceable because they are void and illegal under regulatory law. The Court finds Defendants' argument unconvincing at this juncture of litigation").

Defendants also misstate the Court's analysis, which addressed a hypothetical posed by their motion. *See id.*, Page ID # 631 ("*If* Logix was required to be a registered broker-dealer *to accept commissions* . . . However, there are no facts on the face of the pleadings indicating that Logix is required to be registered.") (emphasis added). No

15

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

determination was made as to whether Logix was subject to the registration requirement or "accepted" commissions. No determination *could* have been made, as the FIS Agreements and Offer Letters do not concern the issue Defendants purport to raise. The FIS Agreements and Offer Letters do not "provid[e] for the payment of securities commissions" to Logix; they set forth conditions for the *Individual Defendants'* compensation for providing advisory services to members Logix referred them to. (Navarro Decl., Ex. E, F).[8]

### 2. Logix's Offering Of Advisory Services And Securities Products Through LPL Does Not Implicate 15 U.S.C. § 78cc

Importantly, Logix is not subject to the registration requirement. While federal credit unions are not authorized to sell non-deposit investments (e.g., advisory services and securities products) ***directly*** to their members, they may offer such products to their members through a registered third party broker-dealer. *See* NASD Rule 2350 (adopted in 1998), FINRA Rule 3160 (adopted in 2010)[9]; *see also Chubb Securities Corp.*, 1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993). This is commonly accomplished through "networking arrangements," as Logix has with LPL. (*Id.*; SDF ¶ 45). Logix itself does not deal in securities products or brokerage services. (*Id.*)

Additionally, a credit union "may earn income for those activities determined to be incidental to [its] business," which include "[f]inancial counseling services" and "[f]inder activities" (e.g., connecting members with third parties for purposes of offering the third party's products and services). 12 C.F.R. §§ 721.6, 721.3(f)-(g). The National Credit Union Administration has clarified that under such an arrangement, "[t]he SEC permits credit unions to receive *transaction-related compensation* from the third party broker

---

[8] Tellingly, Defendants' discussion on this point in the Motion is unaccompanied by any citation to an offending provision in either agreement. *See* Dkt. 89, Page ID #1377.

[9] FINRA Rule 3160(b) includes in its definition of "[f]inancial institution" (entities permitted to enter into networking arrangements) "banks, savings and loan associations, savings banks, ***credit unions***, and [] service corporations . . ."

16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

without triggering the broker-dealer registration requirements." OGC Op. 02-0523a (May 24, 2002) (emphasis added).[10]

Mischaracterizations of this Court's orders and the agreements in question are insufficient to eliminate any triable issue, particularly where, as here, *relevant* facts and authorities confirm the validity of Logix's arrangements with LPL and the Individual Defendants. Defendants offered no facts to the contrary, and no other challenge to the Individual Defendants' agreements. Summary judgment must be denied.

## C. Triable Issues Preclude Summary Judgment On Defendants' Violations Of The UCL

To prevail on a claim under the UCL, a plaintiff must show that the defendant engaged in a business act or practice that was "unlawful," "unfair," or "fraudulent," and caused the plaintiff injury or "lost money or property" as a result. Cal. Bus. & Prof. Code § 17204. The UCL covers a wide range of conduct, embracing "anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143–44 (2003) ("Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. . . . a practice may be deemed unfair even if not specifically proscribed").

Defendants' Motion fails to respond to Logix's claims, focusing on a perceived "lack" of evidence regarding their misappropriation of customer information. As alleged, Logix's UCL claim is not based on misappropriation, but (1) "the actions of the Individual Defendants while under an obligation to Logix to maintain the confidentiality of its information specifically defined to exclude 'trade secrets' and ***to not undermine its business relationships***," and (2) "the actions of Osaic in knowingly allowing the Individual Defendants to continue their conduct and retaining Logix property even after receiving ample and explicit notice of same." (Compl. ¶ 82) (emphasis added).

---

[10] Though not necessary to defeat Defendants' Motion, Logix's arrangement with LPL comports with applicable Rules. (SDF ¶ 45; Navarro Decl. ¶¶ 8, 51-53).

17

The communications Defendants produced pursuant to the Magistrate's order on May 18 reveal plans to siphon away resources and convert not just customers, but the Individual Defendants' loyalty, from Logix to Osaic and Aristo. In January 2025, months *before* Janios' and Martinez' resignation, they conspired to reduce Janios' workload for Logix while negotiating and onboarding with Osaic, creating Aristo, and "bring[ing] over" Logix customers and their business. (SDF ¶¶ 47-51). Emails between Janios and Osaic show that his last months with Logix were not spent performing his normal duties, but readying his setup for Aristo, locating office space and purchasing furnishings. (*Id.*) Janios and Martinez produced hundreds of calendar reminders containing information about customers – many of whom were contacted or already had meetings set within Janios' and Martinez' first week at Osaic. (*Id.*) These actions are ample foundation for a UCL claim, and should go to the factfinder.[11] *See, e.g.*, *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013) (allowing UCL claim "based on violation of duty of loyalty" to former employer).[12]

### D.     Triable Issues Preclude Summary Judgment On Defendants' Violations Of California Penal Code Section 502

To prevail on a Section 502 claim, a plaintiff must show that it is the owner of a computer, system, network, program, and/or data; the defendant knowingly accessed the computer, system, network, program and/or data without permission; and that such unauthorized access was a substantial factor in causing the plaintiff harm. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016).

Defendants' Motion again fails to respond to the allegations and evidence against them. Defendants do not deny Logix owned the system housing its member information

---

[11] *See Payne v. United Calif. Bank*, 23 Cal. App. 3d 850, 856 (1972) (whether a business act or practice constitutes "unfair" competition is a question of fact).

[12] FINRA has issued Letters describing taking "nonpublic personal customer information" from one firm to another "without [the prior firm's] or the customers' knowledge or consent" as violating SEC Regulation S-P and FINRA Rule 2010. *See, e.g.*, Patrick J. Knox, FINRA No. 2019062346201, at 1-2 (FINRA Sept. 9, 2020).

18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

and sensitive business information. Defendants cannot deny they accessed and refused to remediate materials they retained from Logix, even after they were apprised that any access to Logix's systems and data were without authorization from and after their resignation, or when these materials were requested in discovery. (SDF ¶¶ 43, 52).[13] Saying nothing of their *access* to the information at issue, or the whereabouts of the photos and hard copy documents they took (including member profiles, applications, financials, and reports of customer information including LPL account history and value metrics) or the origins of the "Customer Lists" they claim they were permitted to take, Defendants assert only that they "did not destroy any of Logix's data." The facts remain that Defendants took the photos they took, printed the documents they printed, and accessed the profiles they accessed, *but have not produced any records relating to these acts*, insisting there aren't any. As a result, Logix incurred, in addition to business losses, expenses to forensically investigate Defendants' conduct. (SDF ¶ 57). Defendants' declarations are insufficient fulfill their Rule 56 burden.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

DATED: June 17, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

---

[13] Logix filed a motion for sanctions (Dkt. 92) in connection with Defendants' ongoing refusal to provide these materials. It stands to reason that Defendants have not done so because the materials were destroyed, or are being improperly withheld.

19

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff LOGIX FEDERAL CREDIT UNION, certifies that this brief contains **5,582** words and is under 20 pages, which complies with the word and page limits of **Local Rule 11-6.1 and paragraph 6 of the Court's Standing Order**.

DATED: June 17, 2026

By:  /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

326631327v.1