SEYFARTH SHAW LLP
Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:   (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07788-RGK-MAR<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR FAILURE TO COMPLY WITH MAY 14, 2026 DISCOVERY ORDER (DKT. 81)**<br><br>Date: July 1, 2026<br>Time: 11:00 a.m.<br>Crtrm: 790 (Hon. Margo A. Rocconi)<br><br>Date Action Filed:  August 19, 2025 |

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDER

## I.    INTRODUCTION

Notwithstanding Defendants' untimely, incomplete, and evasive discovery responses, Logix has been trying to determine the full extent of Defendants' misappropriation since Janios' and Martinez' coordinated departure in April 2025.  In their prelitigation correspondence, Defendants disavowed having taken any photographs of their company computer screens, or to printing hard copies of company documents at and immediately preceding the Individual Defendants' abrupt resignation.  When Logix confronted Defendants with still images of improper conduct from security footage, they changed tack, arguing instead that they did not do anything wrong, and ignored Logix's demands to remediate the photos, hard copies, and any other company documents or information the Individual Defendants retained from their employment with Logix. When Logix filed suit and pursued discovery, Defendants' story changed again. Defendants now maintain that they were using their phones to do *something* in front of a company computer screen, but did not take photos of company information.  Defendants also maintain that they did take *some* customer information, but falsely claim it was only a subset of customer information available to them through the third-party database of a Logix partner, LPL Financial LLC ("LPL").  *See, e.g.*, Dkt. 89-17, Page ID #1537.

Defendants' narrative—in particular regarding their pre-departure activities, and insistence that "there is no so-called 'customer information … that [Defendants] misappropriated from Logix'"—is *demonstrably false*, or at the very least, incomplete based on the evidence.[1]  For example, a simple analysis comparing (a) Janios' and Martinez' pre-departure printing activity, captured on company logs, to (b) their pre-

---

[1] Partial compliance is an appropriate justification for the imposition of sanctions. *See Goldwater Bank, N.A. v. Elizarov*, No. 521CV00616JWHSPX, 2023 WL 4290382, at *1 (C.D. Cal. June 13, 2023) (ordering defendant to pay sanctions for failure to comply with discovery order where supplemental responses provided "fell well short of being complete or adequate in compliance with the court's order and the Federal Rules of Civil Procedure," and where the defendant "offered no legitimate reason for his continued failure to comply in full with the court's [] order").

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDER

departure access activity, also captured on company logs, and (c) the customers Logix identified as moving accounts or business over to Defendants, captured in company records, shows that the documents Janios and Martinez printed include Logix member profiles for dozens of customers, many of which Defendants successfully transferred to themselves. *See* Dkt. 98-10. Additionally, on June 12, 2026, after Logix filed its motion (Dkt. 92) and a motion to compel LPL to produce documents (Dkts. 90-91)—which Defendants curiously opposed despite having no standing to do so—LPL produced company logs showing Janios' and Martinez's activity on *its* system. *See* Dkts. 98-45, 98-46. ***Contrary*** to the false representations Defendants repeatedly made to Logix and this Court, they printed, downloaded, and/or transferred extensive member financial records belonging to Logix, far more than the "customer names, addresses, telephone numbers, and email addresses" listed in Martinez0000001 and JANIOS0000001, and ***none*** of which has been produced in discovery or remediated.

Furthermore, as discussed in the motion (Dkt. 92), other gaps in Defendants' May 18, 2026 productions are evident from review. Even accepting Defendants' implausible explanations for the conduct captured on office security footage,[2] the photos Defendants did produce were not in native format, and could not be downloaded to view their "Properties" and confirm the accuracy of the metadata as described by counsel. Though Defendants did produce some emails, messages, and calendar events evidencing their pre-transition and hiring communications, many text threads contain contextual gaps (e.g., mentioning other communications or meetings for which no corresponding records were produced), and call logs for Martinez could not be located.

Defendants' Opposition (Dkt. 93) fails to address these gaps or respond to the deficiencies in the verification provided, which again, states only that Defendants produced documents they agreed to (not what was *ordered*). Defendants have not

---

[2] Defendants do not cite to the photos they are relying on to assert that "the Individual Defendants have produced all of the photos on their phones that in any way relate to Logix information or Logix's allegations in the Complaint." *See* Dkt. 93, Page ID #1716.

2

complied with the Court's order, continue to perpetuate inaccurate representations regarding their conduct, and should be sanctioned.

## II.    ARGUMENT

"Preclusionary orders ensure that a party will not be able to profit from its own failure to comply."  *U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979)).  Sanctions "must be weighed in light of the full record in the case"; "[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules."  *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068.

This is precisely what Defendants have done, or are attempting to do, in the instant action.  Defendants successfully deferred their discovery obligations until just two weeks before the extended discovery cutoff, and only produced documents *after* being ordered to do so by this Court.  *See* Dkt. 81, Page ID #1119 (". . . Defendants have at least implicitly acknowledged that supplemental responses were necessary, promised to provide such responses after the motion was filed, and indeed, do not appear to have provided all such responses to date").

### A.    The May 18 Productions Are Deficient

On their court-ordered deadline, Defendants produced thousands of pages of documents, including long-awaited communications with customers and with each other. The May 18 production revealed that Defendants had been sitting on vital information. For example, Defendants produced, after agreeing to do so months earlier, text messages between the Individual Defendants, which could and should have long since been collected and produced.  These text messages (Martinez0004633) reveal that the Individual Defendants' joint enterprise with Osaic began *much earlier* than their

3

coordinated departure on April 9, 2025.  The text thread produced begins, as Defendants state, on January 28, 2025, and spans through April 9, 2025.  (Dkt. 93, Page ID #1718).  The first conversation, on January 28, 2025, concerns the Individual Defendants' plans to reduce Janios' workload to accommodate his discussions with Osaic, which by that time was already a leader in his search for a new wealth management entity to operate with or under.  Interestingly, Defendants assert in their Opposition that "the recruitment process began on or about January *9*, 2025, and, naturally, consisted of multiple phone and virtual meetings."  (Dkt. 93, Page ID #1718).  It can be inferred that messages and documents about Janios' search, and likely other responsive communications, were not produced, or were omitted from the produced thread.[3]

These emails produced show, among other things, that Janios had received a formal offer from Osaic by February 7, 2025, executed a subsequent offer letter on February 14, 2025, and met with Osaic on a roughly weekly basis.  Shockingly, in the records produced by LPL on June 12—records Defendants belatedly tried to block from Logix—Logix discovered that on February 18, 2025, days after signing an offer with Osaic, Janios exfiltrated massive amounts of data from LPL's database populated with Logix member information, including client names, information regarding their LPL and non-LPL accounts, various metrics of value, more than 10 metrics of investment performance, contact information, and social security numbers and dates of birth.  *See* Dkt. 98-37.  Martinez engaged in similar activity on February 3, 2025.  *See* Dkt. 98-36.

Thus, directly contradictory to Defendants' repeated representations that they "did not misappropriate any information" and only used "two lists of publicly non-confidential contact information maintained by third-party LPL," captured in Martinez0000001 and JANIOS0000001, Defendants exfiltrated and refused to return extensive amounts of

---

[3] Defendants repeatedly demanded in the meet and confer process to shorten the timeframe of communications at issue.  Notably, emails in the May 18 productions show that Janios was exploring opportunities with Osaic in *2024*, a timeframe Defendants specifically argued should be excluded from discovery.

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDER

client data well beyond "names, addresses, telephone numbers, and email addresses" they were not allowed to take in any event. *Compare* Dkt. 93, Page ID #1721 *with* Dkts. 98-36, 98-37.[4]  As noted above, Defendants' representations are further belied by simple comparison of their pre-departure printing and access activity, which correlates their printing with access to Logix member profiles (which include not just names and contact information, but also account details, account history, areas of interest, preferences, investment experience, investment objectives, and risk tolerance).  Unsurprisingly, many of the customers whose information was printed were successfully converted by Defendants.

Defendants' assertions that they have produced their communications with and about customers are similarly called into question by their May 18 productions.  For instance, Defendants confidently assert in their Opposition that "there are no pre-transition communications 'concerning … clients,' because Defendants did not discuss specific clients prior to the Individual Defendants' transition."  (Dkt. 98, Page ID #1718).  But as discussed in the motion, and prior pleadings, documents show otherwise.  Defendants produced calendar reminders regarding recurring and follow up meetings with clients they were referred to at Logix, indicative of (unproduced) communications setting up those meetings prior to the actual date of the alerts.  The earliest of the alerts is dated April 10, 2025.  Moreover, the above-described text thread between Janios and Martinez explicitly mentions at least one Logix member by name in the context of bringing the member over to service at Osaic or Aristo, and broadly discusses multiple

---

[4] *See In re Telescopes Antitrust Litig.*, No. 20CV03642EJDVKD, 2023 WL 3957423, at *3-4 (N.D. Cal. June 12, 2023) (granting in part motion for sanctions where defendants "insist[ed] that their production of [] data ha[d] long been complete" and that their multiple belated productions "were made simply to appease" the requesting party's demands for "unresponsive data and data in different formats," finding there "[was] no justification or excuse for defendants' failure to comply fully with the Court's [] discovery order") (emphasis added).

5

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR FAILURE TO COMPLY WITH DISCOVERY ORDER

people they considered part of their book of business and intended to bring over to Osaic or Aristo.[5]

The missing communications, and retained documents and information ***must*** be produced. Alternatively, if Defendants are no longer in possession of the hard copy documents and member profiles they printed (which is suspicious at best), or the massive amounts of client data they exfiltrated from LPL, or any responsive communications with one another or any customers, they must explain why they lost, destroyed, deleted, or withheld each item, and appropriate measures must be taken to prevent and remedy the prejudice to Logix. *See* Fed. R. Civ. P. 37(e)(2) ("[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) . . . enter a default judgment").

### B.    The Motion Is Proper

Tellingly, and a red herring, the primary focus of Defendants' motion is not demonstrating their compliance or good faith efforts in discovery, or even providing a reasonable explanation for the gaps in its production and verification. Instead, Defendants dismiss the entirety of Logix's motion as speculation, and attack its *form*.

---

[5] As a point of clarification, it is undisputed that the Individual Defendants were exclusively *referred* to Logix members who, based on the information Logix kept about them, could or would be interested in investment and wealth management services and products. The Individual Defendants did not originate their own business or bring business or customer relationships to Logix.

6

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDER

This is not an ordinary discovery motion, seeking an order to compel further responses.[6] This motion concerns an order that has already been issued by this Court, which Defendants failed to heed.

To the extent the motion falls within the purview of Local Rule 37-2, the motion could not be brought as a joint stipulation. Defendants produced thousands of pages on May 18, 2026. Given the time by which sufficient review had been conducted to recognize that items were missing or incomplete, the process delineated in Local Rule 37-2 could not have been completed by the June 3, 2026 discovery and motion cutoff, and no opportunity remained to request a further continuance. Additionally, it has been established that anything but proceeding with the motion to enforce this Court's order would be an exercise in futility. Defendants have made abundantly clear throughout discovery, most notably in the course of the parties' recent attempts to establish a deposition schedule, that there is no compromise or resolution to be had; they will simply do what *they* decide constitutes "compliance."[7] The recent production by LPL of extensive reports exfiltrated by Defendants—which have not been produced or acknowledged by Defendants—demonstrates a lack of candor, and still Defendants claim their participation in discovery to be without flaw, including with regard to their May 18 productions and declaration of counsel. The foregoing is evidenced by Defendants' refusal to even acknowledge counsel's inquiry regarding supplementation. Accordingly,

---

[6] Though *one* of the requests for relief herein is to compel production, it is requested as a sanction.

[7] Contrary to Defendants' assertions in their Opposition, the motion is *not* the first time Logix has raised deficiencies in Defendants' March and April productions. Logix has repeatedly gone to Defendants and inquired about forthcoming supplementation, necessitating the motion to compel (Dkt. 64) resulting in the order now sought to be enforced (Dkt. 81). Defendants then made inadequate productions in response to an order to essentially make good on their *prior* representations, exacerbating the deficiencies that Logix identified from the start.

7

REPLY IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR
FAILURE TO COMPLY WITH DISCOVERY ORDER

despite good faith efforts to complete discovery and progress the case, Logix has been required to seek relief.

## III.    CONCLUSION

In their Opposition, Defendants assert that they have complied with the Court's order because they produced documents consistent with their narrative, i.e., photos merely demonstrating that they were using their Logix devices for the benefit of Osaic, rather than misappropriation, and sanitized versions of "customer lists" Defendants *created* using Logix's information.  However, as discussed in the motion and above, the gaps in Defendants' productions, the printing of Logix member profiles, and the destruction of or deliberate withholding of reports regarding Logix members exfiltrated from LPL bely Defendants' representations regarding their activities and demonstrate noncompliance.

Logix respectfully reiterates its request for all relief the Court may deem appropriate under Rule 37, including but not limited to, an order for immediate *full* compliance with the May 14 order, a negative inference instruction at trial, a recommendation to stay further proceedings until the order is obeyed, and/or an order requiring that Defendants reimburse Logix for the reasonable fees and costs incurred in connection with bringing this motion.

DATED: June 17, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By:  /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

8

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Plaintiff LOGIX FEDERAL CREDIT UNION, certifies that this brief contains 2,511 words, which complies with the word limit of L.R. 11-6.1.

DATED: June 17, 2026

By: /s/ *Sierra J. Chinn-Liu*
Michael D. Wexler (*pro hac vice*)
Sierra J. Chinn-Liu
Besma Fakhri (*pro hac vice*)

Attorneys for Plaintiff
LOGIX FEDERAL CREDIT UNION

9

326616037v.1