DANIEL H. HANDMAN (SBN 236345)
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, California 90401
Telephone: (310) 255-0705
Facsimile: (310) 255-0986

Steven L. Manchel (*pro hac vice*)
Patrick M. Capodilupo (*pro hac vice*)
smanchel@bowditch.com
pcapodilupo@bowditch.com
Bowditch & Dewey
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: (617) 757-6528
Facsimile: (508) 929-3099

Attorneys for Defendants
OSAIC WEALTH, INC., JOHN JANIOS,
and ANTHONY MARTINEZ

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:25-cv-07788-RGK-MAR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: July 6, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Date Action Filed: August 19, 2025 |

Pursuant to Federal Rule 56, Local Rules 7-10 and 56-3, DEFENDANTS JOHN JANIOS ("Janios") and ANTHONY MARTINEZ ("Martinez") (collectively, the "Individual Defendants") and OSAIC WEALTH, INC. ("Osaic"), hereby submit this Reply in support of their Motion for Summary Judgment or in the alternative, Partial Summary Judgment (the "Motion") and in response to PLAINTIFF LOGIX FEDERAL CREDIT UNION'S ("Logix") Opposition.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. The Court should not consider Logix's so-called "Statement of Additional Material Facts and Evidence."

In Logix's Statement of Disputed Facts ("SDF"), following Logix's responses to each of Defendants' 37 Uncontroverted Facts pursuant to L.R. 56-2, Logix added a chart containing twenty so-called "Additional Material Facts" ("Logix Additional Facts"). However, there is no basis under the Federal or Local Rules for Logix, as the non-moving party, to assert new allegedly undisputed facts. If Logix felt that certain information or evidence disputed Defendants' facts it was required to state them in their *responses* in the right hand column, not create new chart of supposed facts for Defendants to respond to or dispute. *See* L.R. 56-2. Indeed, there is no mechanism in the Local Rules for a moving party to respond to a non-moving party's additional Uncontroverted Facts. *See* L.R. 56-3. Moreover, it is not the Court's or Defendants' job to guess which of Defendants' facts Logix's Additional Facts are meant to dispute. Thus, the Court should not consider any of the twenty Logix Additional Facts. *See, e.g., R.H. v. Cnty. of San Bernardino*, 2019 WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) ("Parties must strictly adhere to the Local Rules of this district, and a district court has the discretion to strike any motion that fails to comply with the Local Rules."); *Hill v. Peopleready, Inc.*, 2023 WL 7927968, at *1 (E.D. Cal. Nov. 16, 2023) ("The court has broad discretion to issue sanctions where a party fails to comply … Local Rules"). To the extent the Court holds otherwise, Defendants respectfully request that the Court instruct them on the appropriate procedures for responding to a non-moving party's alleged additional undisputed facts and allow them time to comply.[1]

_____

[1] While there is a mechanism in California state courts for a party opposing a motion for summary judgment to add additional material fact under California Rules of Court, Rule 3.1350(f)(3), there is no federal equivalent here.

1

**2. Logix cannot retroactively supplement its discovery responses.**

As set forth in Defendants' Memorandum, Logix was directly asked in Defendants' Interrogatory No. 2 to identify its trade secrets and identify and briefly articulate evidence of their alleged misappropriation, in response to which Logix made only Rule 33(d) references to thousands of pages of documents without any further narrative response. Now, in its Opposition and supporting papers, Logix attempts to retroactively expand upon its fatally insufficient interrogatory responses, primarily through the declaration of Ismael Navarro and Opposition arguments. For example, in footnote 3 to its Opposition, Logix argues that "the means by which Logix has stated Defendants misappropriated the information therein, are more than enough for Defendants to ascertain at least the boundaries within which the secret lies"; however, Logix never stated such alleged "means" of alleged misappropriation in response to Defendants' direct request for them to do so in Interrogatory No. 2. Moreover, Logix has submitted at least four exhibits which it never produced to Defendants, including Navarro Decl., Exs. J-K, and Chinn-Liu Decl., Exs. 30-31. *See* Defendants' Response to Logix's SDF ("SUF"), ¶ 3. While Logix's eleventh hour supplementations still do not create a triable issue of fact, they are also plainly prohibited under Rules 26(e) and 37(c). *See, e.g.*, *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323–24 (C.D. Cal. 2004) ("Neither in its original interrogatory answers, nor in any Rule 26(e) supplement, moreover, did plaintiff identify the facts found in the declaration of Jose S. 'Joey' Palma submitted in opposition to the summary judgment motion … and under Rule 37(c), plaintiff cannot rely on it now to raise a triable issue of fact defeating summary judgment.") (citing Ninth Circuit and other cases). Thus, the Court should not consider any alleged evidence of misappropriation of trade secrets beyond Logix's response to Interrogatory No. 2, which fails to identify any trade secrets with particularity or any acts of misappropriation. *See, e.g., Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *11–12 (S.D. Cal.

2

Sept. 30, 2016), *aff'd,* 729 F. App'x 590 (9th Cir. 2018) (granting summary judgment where "[r]ather than a 'reasonably particular' list of trade secrets, Plaintiff's disclosure resemble[d] an effort to categorize every piece of information or know-how that could potentially have value to the company" and "Plaintiff's attempt to revise its trade secret identification at [summary judgment was] simply too little too late."). Likewise, the Court should not consider any alleged evidence of other claims beyond interrogatory responses cited in Defendants' Memorandum.

**3. The Court should not consider Logix's incomplete video footage.**

In its Opposition, Logix submits as Exhibit 6 to the Chinn-Liu Declaration, the video footage contained in LOGIX_000001, LOGIX_000002, LOGIX_000152, LOGIX_000153, LOGIX_000154. Those videos contain only minutes of footage of just one of the several Logix branch locations at which the Individual Defendants routinely met with customers and provided them documents. For example, in the Janios Decl., ¶ 6 (Dkt. 89-17) and Martinez Decl., ¶ 6 (Dkt. 89-18), the Individual Defendants stated:

> As I always did during my affiliation with LPL and Logix, I routinely printed documents to personally deliver to, and review with, customers. My meetings with clients often took place at one of several Logix branch locations in the Southern California area. In advance of those meetings, I would typically print documents and place them in folders to be given to the clients. I have seen video footage produced by Logix in this case and note several examples of me preparing such client folders for in-person customer meetings.

On that basis, the Defendants made numerous requests for Logix to produce the full surveillance footage for the days captured in the video and for all of the locations which the Individual Defendants visited on those days in question, which Defendants have reason to believe will show the Individual Defendants meeting with, and giving documents to, clients. However, Logix

3

has refused to produce the full video.  Thus, while the video footage, does not establish a genuine issue of fact as it merely shows the Individual Defendants printing documents, the Court, in accordance with FRE 106, should not consider Logix's misleading portions of video footage.  *See United States v. Yevakpor*, 419 F. Supp. 2d 242, 252 (N.D.N.Y. 2006) ("the Government cannot make use of video segments that have been 'cherry-picked'").

**4. Logix deliberately misstates the Individual Defendants' responses to Logix's Requests for Admission ("RFAs").**

In a two-sentence argument, Logix claims that the Individual Defendants admitted to misappropriating and retaining information.  As an initial matter, Logix cites the Logix Additional Facts as support of this phantom admission, which as previously noted should be stricken from the record under the Local Rules.

Notwithstanding the foregoing, Logix's claim that the Defendants have admitted to misappropriating and retaining information is deliberately false.  Logix Additional Facts, ¶ 54 falsely claims that "Defendants have admitted to taking information regarding Logix members" and cites to, *inter alia*, RFA Nos. 5, 12, 15, 16, 18, 21, 22, 24, 25, 26, 30, 32, 33.  However, Logix does not even bother to articulate those supposed admissions, because they do not exist.  It is plainly obvious that the Individual Defendants' responses to those RFAs do not admit to taking, retaining, or misappropriating any information.  In fact, none of those RFAs even request such an admission.  RFA Nos. 12 and 15 concern only accessing and printing documents several months before the Individual Defendants were even considering moving to Osaic, which they naturally did in the normal course of their duties as LPL financial advisors; RFA Nos. 16, 18, 22, 24, 25, 26, 30, 32 concern only communicating and servicing customers after their departure, which they did as they were legally permitted to, including pursuant to Cal. Bus. Prof. Code § 16600; and RFA No. 33 concerns the Customer Lists, which as explained in

Hirschfeld Kraemer LLP
Attorneys At Law
Santa Monica

4

Defendants' Memorandum contain only publicly available names, addresses, phone numbers and email addresses. *See* SUF, ¶ 6

The only RFAs cited by Logix which even concern information concern only the possession and use (not retention or misappropriation) of information "*relating to* Logix customers." RFA No. 5 requested: "Admit that YOU have information relating to LOGIX customers in YOUR possession"; and RFA No. 21 requested: "Admit that YOU have used to [sic] information relating to LOGIX customers after YOU resigned from LOGIX." Of course the Individual Defendants have information "relating to Logix customers," as many customers who transferred their LPL securities accounts to Osaic maintained their Logix checking accounts. As such, any Osaic security account information generated by Osaic necessarily also relates to so-called Logix customers to the extent those customers still have Logix checking accounts. The Individual Defendants' responses to these requests makes clear that it is nothing more than a reflection of the reality that Osaic and Logix are in two completely separate businesses, Osaic a securities broker-dealer, and Logix a credit union prohibited from holding securities accounts. Logix's failure to word their RFAs to account for this distinction is not a license to deliberately misrepresent the Individual Defendants' responses. Defendants have not admitted to any wrongful conduct.

**5. Logix's Opposition confirms that the allegedly misappropriated information is obsolete and has no value.**

Notwithstanding that Logix did not include any of the following allegations in its interrogatory responses, Logix's Opposition confirms that its customer information has no value with respect to customers to whom the Individual Defendants have provided financial advisory services for years, which are the only customers at-issue. Specifically, Logix described their allegedly misappropriated information as follows:

- "The Logix Customer Records function as a comprehensive roadmap that

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

enables Logix to *match individual customers with tailored financial products and services*, including investment offerings." Navarro Decl., ¶ 24 (emphasis added).

- "This information enables Logix and its partners, including LPL, to *assess customer suitability and receptivity to particular products and services*, allowing them to effectively *match investments and offerings to customers most likely to benefit from and purchase them*." Navarro Decl., ¶ 27 (emphasis added).

- "This information is the information reflected in the documents identified in Logix's response to Defendants' Interrogatory No. 2." SDF, ¶ 2

- "By gaining (or retaining) access to Logix's customer profiles, and taking relationships handed to them by Logix, Defendants *shortcut (or completely bypassed) creating their own customer base, and attendant costs in time and resources.* (SDF ¶¶ 55-56; SUF ¶¶ 22, 31)." Dkt. 100, Page ID# 3076 (emphasis added).

- "If disclosed, this information would allow a competitor to *bypass the time and effort required to identify and cultivate customers*, and specifically the types of customers who are predisposed toward investing, and streamline their efforts toward targeting individuals who have already shown an interest in investing. For that reason, Logix derives substantial value from keeping this information confidential." Navarro Decl., ¶ 28 (emphasis added).

To the extent such information ever had any value, that time passed years before the Individual Defendants left LPL and Logix. The process of "identifying," "matching," and "cultivating" customers and "creating a customer base" happened years ago, when the Individual Defendants first became the customers' financial advisors. Since that time, the Individual Defendants (not Logix) have spent years learning each customer's particular financial goals and investing the customers' money accordingly in various investment products, which are held in the LPL

6

securities accounts that transferred over to Osaic. *See* SUF, ¶ 30. All of the alleged customer information in this case concerns customers with whom the Individual Defendants have worked for years.[2] The Individual Defendants, more than anyone else, understand each customer's "interest in investing," and "suitability and receptivity to particular products and services" which they personally learned from years of working with each customer. *See* SUF, ¶ 30. Logix's description of the customer information is from the perspective of someone trying to determine whether a *prospective* customer would be a good fit for wealth management services, which has no relevance to the Individual Defendants and their long-standing customers. Thus, based on Logix's own assessment, the "substantial value" of the customer information has been obsolete for years. *See Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) (granting summary judgment and holding, in part, "obsolete information cannot form the basis for a trade secret claim because the information has no economic value").

### 6. Logix's Opposition confirms they have no evidence of use.

Logix's sole "evidence" of Defendants' alleged use and misappropriation of information is that 100 customers transferred their accounts in under a year's time. As an initial matter, Logix never identified that supposed evidence in its interrogatory responses. *See* SUF, ¶ 11; *see, e.g.*, *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323–24 (C.D. Cal. 2004) (disregarding evidence at summary judgment that was not provided in interrogatory responses). Nonetheless, Logix's late attempt to articulate misappropriation falls significantly short of creating a genuine dispute. The notion that it is somehow impossible for two financial advisors to contact just 100 customers with whom they have worked for years and process the transfer of their securities accounts in less than a year is

---

[2] Logix has never made any allegations or identified any evidence concerning customers other than the Individual Defendants' own.

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

absurd.  Common sense dictates a year is considerably more than enough time to do so.

Moreover, Logix does not cite to any evidence for its claim that the conversion of 100 accounts in less than year is impossible without misappropriating information, nor does Logix explain what information would have helped Defendants to do so, or how.  To the contrary, all a financial advisor needs to transfer his long-standing customers' accounts is the ability to contact them.  *See, e.g.,* SUF, ¶ 21 (citing emails in which Janios asked customers to provide him with information necessary to process the transfer of their accounts).  Further accelerating the process, some customers contacted the Individual Defendants upon being informed of their departure by Logix.  *See* SUF, ¶ 22.  By itself, the movement of 100 customers in a year's time is wholly insufficient to create a genuine dispute, and even more so when compared against the Individual Defendants' sworn declarations.  *See* SUF ¶¶, 3, 20.

**7. Logix misstates Defendants' arguments against their breach of contract claims, and cites outdated SEC guidance in defense of the enforceability of the RR Agreements and Offer Letters.**

As an initial matter, Defendants do not, as Logix claims, only challenge the enforceability of the RR Agreements and Offer Letters.  Defendants also challenge that Logix has shown a breach.  Dkt. 89, Page ID# 1378.  Logix does not offer any argument in opposition to a lack of breach and, therefore, concedes the point.  For that reason alone, summary judgment should be granted on Logix's breach of contract claims.

As regards enforceability, the only question of fact that needs to be answered to determine whether Logix was required to register as a broker-dealer with the SEC is whether Logix received securities-related compensation.  As this Court previously recognized, that question has indisputably been answered in the affirmative.  *See* SUF ¶¶ 26, 28 (admitting that "Under Section 1B, LPL paid 'to

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

8

[the Individual Defendants] and [Logix] ... *commissions* in accordance with the agreement between LPL and [Logix] ... (the 'FIS Agreement').' " (emphasis added)); Dkt. 52, Page ID# 630-1 ("Pursuant to [the RR Agreements and Offer Letters] Logix was entitled to receive *commissions* on any such trades made by the Individual Defendants." (emphasis added)).  Thus, the only question that remains is a question of law: Did 15 U.S.C. §78o require Logix to register in order to receive such commissions?  Defendants' Memorandum sets forth the authorities which unequivocally hold that the answer is yes.  *See* Dkt. 89, Page ID# 1376-7.

Logix's citations to outdated guidance from the National Credit Union Administration ("NCUA") and *Chubb Securities Corp.,* 1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993), which was commonly referred to in the securities industry as the "Chubb Letter," are unavailing.  First, the NCUA has admitted that it has no authority over this issue.  *See* Sales of Nondeposit Investments, 2011 WL 13572797, at *1 ("As a preliminary matter, you should note that 10-FCU-03 is guidance recommending best practices for [federal credit unions ("FCUs")] involved in third party brokerage arrangements; it does not carry the force or weight of formal regulation …[and] does not impose regulatory requirements on FCUs.").  Second, even the NCUA has acknowledged that the lone exception to broker-dealer registration under 15 U.S.C.A. § 78c(a)(4) does not apply to credit unions.  *See* National Credit Union Administration, Subj: Sales of Nondeposit Investments, 2010 WL 6661496, at *1 ("Regulation R does not apply to federal credit unions.").  Third, the Chubb Letter is merely guidance that predates 15 U.S.C.A. § 78c(a)(4) by fourteen years and was preempted with its enactment into law.

The only authority over this matter is 15 U.S.C. §78o, which clearly provides, and has consistently been interpreted by the courts as providing, that contracts, such as the RR Agreements and Offer Letters, that call for the payment of securities-related compensation to entities, like Logix, not registered with SEC as broker-dealers are void and unenforceable.  *See* Dkt. 89, Page ID# 1376-7 (citing

9

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

*Schatzki v. Weiser Capital Mgmt., LLC,* 2016 WL 6662264, at \*5 (S.D.N.Y. Nov. 9, 2016); 15 U.S.C. § 78o(a)(1) ("Both the [SEC] and [FINRA] have asserted that it is unlawful …to share securities-related commissions with non-registered companies[.]"); *Regional Properties, Inc. v. Financial and Real Estate Consulting Company,* 678 F. 2d 552, 560-61 (5thCir. 1982) (Though voiding a contract may be a "harsh" result, it is "what Congress intended.")).

**8. The Individual Defendants preparations to compete with Logix after their departure were lawful.**

Logix argues that the evidence creates a genuine dispute as the Individual Defendants' breach of their duty of loyalty, which is sufficient to support a claim for unfair competition under Cal. Bus. & Prof. Code § 17204. First, Logix shows no evidence that the Individual Defendants' reduced their workload. To the contrary, Logix acknowledges that the Individual Defendants worked diligently until the moment of their departure, including opening LPL securities accounts on April 9, 2025. *See* SUF ¶ 18. Second, desiring to bring customers to a financial advisor's new broker-dealer after their departure is not unlawful as former employees are allowed to compete and solicit their clients. *See, e.g.,* Cal. Bus. Prof. Code, § 16600. Third, preparations to compete such as obtaining office space and equipment do not violate the duty of loyalty. *See, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1037–38 (C.D. Cal. 2012). Fourth, Logix's vague reference to calendar entries *after the Individual Defendants' departures* is not even supported by the alleged citation. Moreover, that citation is to the Logix Additional Facts, which as previously explained should be stricken. Finally, the Court has already dismissed Logix's claim for breach of the duty of loyalty.

**I. CONCLUSION**

For the foregoing reasons, and the reasons set forth in Defendants' Memorandum and supporting papers, the Court should grant Defendants' Motion for Summary Judgment.

10

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Dated:  June 22, 2026

BOWDITCH & DEWEY LLP


By:  */s/Patrick M. Capodilupo*
Patrick M. Capodilupo (*Pro Hac Vice*)

Attorneys for Defendants
OSAIC WEALTH, INC., JOHN JANIOS, and ANTHONY MARTINEZ

DANIEL H. HANDMAN (SBN 236345)
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, California 90401
Telephone:  (310) 255-0705
Facsimile:   (310) 255-0986

Steven L. Manchel (*Pro Hac Vice*)
Patrick M. Capodilupo (*Pro Hac Vice*)
BOWDITCH & DEWEY LLP
75 Federal Street, Suite 1000
Boston, MA 02110
(617) 757-6500
(508) 929-3099 (fax)
smanchel@bowditch.com
pcapodilupo@bowditch.com
HIRSCHFELD KRAEMER LLP

11

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I caused a copy of the foregoing to be served by email on all counsel of record, including the following:

Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

/s/Patrick M. Capodilupo
Patrick M. Capodilupo

12

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## CERTIFICATION PURSUANT TO LOCAL RULE 11-6.1 AND PARAGRAPH 6 OF THE COURT'S STANDING ORDER

In accordance with Local Rule 11-6.1 and paragraph 6 of the Court's Standing Order, I hereby certify that the foregoing Memorandum of Points and Authorities is under 10 pages in length and under 5,600 words inclusive of headings, footnotes and quotations.

> /s/Patrick M. Capodilupo
> Patrick M. Capodilupo

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

13