DANIEL H. HANDMAN (SBN 236345)
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, California 90401
Telephone: (310) 255-0705
Facsimile: (310) 255-0986

Steven L. Manchel (*pro hac vice*)
Patrick M. Capodilupo (*pro hac vice*)
smanchel@bowditch.com
pcapodilupo@bowditch.com
Bowditch & Dewey
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: (617) 757-6528
Facsimile: (508) 929-3099

Attorneys for Defendants
OSAIC WEALTH, INC., JOHN JANIOS,
and ANTHONY MARTINEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOGIX FEDERAL CREDIT UNION, <br><br> Plaintiff, <br> v. <br><br> OSAIC WEALTH, INC.; JOHN JANIOS; ANTHONY MARTINEZ; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:25-cv-07788-RGK-MAR <br><br> **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> Date Action Filed: August 19, 2025 |

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16-4 of the Rules of the Central District of California, and this Court's pre-trial order, Defendants JOHN JANIOS ("Janios") and ANTHONY MARTINEZ ("Martinez") (collectively, the "Individual Defendants") and OSAIC WEALTH, INC. ("Osaic") (together with the Individual Defendants, "Defendants") hereby submit the following Memorandum of Contentions of Fact and Law.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**I.      SUMMARY**

This case concerns an industry standard and FINRA- and SEC-compliant transition of two financial advisors from one brokerage firm, LPL Financial, LLC ("LPL") to another, Osaic, a regular occurrence in the wealth management industry.

LPL and Osaic are Financial Industry Regulatory Authority ("FINRA") registered firms that provide securities brokerage, wealth management and investment advisory services to customers through affiliated FINRA-registered financial advisors.  The Individual Defendants are two such financial advisors who were formerly affiliated with LPL and are now affiliated with Osaic.  The Individual Defendants have each been financial advisors for more than 10 years, in which capacity they have developed close personal relationships with customers.  Throughout those relationships, the Individual Defendants became the customers' trusted financial advisors by developing an understanding of their customers' financial goals, and implementing those goals by investing the customers' money in various investment products held in LPL securities accounts.

Logix, on the other hand, is a California-based credit union that provides deposit and lending services to customers.  Logix is not licensed to provide securities services to clients, and is, therefore, prohibited as a matter of law from doing so.  Instead, Logix contracts with LPL and its affiliated financial advisors, such as (formerly) the Individual Defendants, to provide securities services out of Logix branch locations.  In exchange for permitting the Individual Defendants to operate their securities business out of Logix branches, Logix received a referral fee in the form of a share of the securities commissions paid by LPL to the Individual Defendants.

Pursuant to the FIS Registered Representative Agreements ("RR Agreements"), LPL appointed each of the Individual Defendants "as a limited agent to service customers of [Logix] by soliciting purchases of (i) securities and

1

investments offered through LPL in its capacity as a broker/dealer; (ii) products and services offered through LPL in its capacity as an investment adviser; and (iii) insurance products offered through LPL and/or its affiliates in its capacity as an insurance agency; to depositors and customers of [Logix] and to the general public." LPL bore complete and total responsibility to "supervise [the Individual Defendants] with respect to all aspects of securities transactions and related securities business." Logix has no personal relationship with customers with respect to their securities accounts. All financial advisory services were performed by the Individual Defendants exclusively in their capacity as independent contractors of LPL, and securities accounts opened by customers were not held by, and did not belong to, Logix.

On April 9, 2025, the Individual Defendants terminated their affiliations with LPL and Logix, and became affiliated with Osaic, operating their securities business through a newly formed d/b/a named Aristo Wealth Management. Upon their termination, the Individual Defendants retained their clients' publicly available names, addresses, phone numbers, and email addresses, which they obtained from LPL's ClientWorks database and/or which remained on their personal cell phones (the "Customer Lists"). The Individual Defendants also retained a third-party professional development course (the "Pareto Systems Course"), which they paid for. The Individual Defendants did not retain, use, disclose or misappropriate any other information.

In the months following their transition to Osaic, the Individual Defendants notified their customers that they had departed LPL and Logix. Some customers contacted the Individual Defendants upon receiving a letter from Logix notifying them that their securities accounts were being assigned to a new LPL financial advisor. Many of the customers chose to continue receiving financial advisory services from the Individual Defendants. In turn, those customers provided Defendants with all necessary documents and information to process the transfer of

2

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

their securities accounts from LPL to Osaic.  Not a single account held by Logix transferred to Osaic.

## II.   CLAIMS AND DEFENSES

### A.   Claims, Elements and Key Evidence in Opposition of Claims (L.R. 16-4.1(a), (b), (c).

On August 19, 2025, Logix filed a thirteen-count Complaint ("Complaint") alleging that Defendants misappropriated Logix's confidential information and trade secrets to solicit customers.  Dkt. 1.  On December 8, 2025, the Court dismissed seven counts.  Dkt. 52.  Logix moved for reconsideration on December 22, 2025, which the Court denied on February 6, 2026.  Dkt. 61.  Thus, the following six counts remain:  Count I – Breach of Contract (against Janios); Count II – Breach of Contract (against Martinez); Count IV – Misappropriation of Trade Secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; Count V – Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code, § 3426.1 *et seq.*; Count VI – Violation of California Penal Code § 502; and Count IX – Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.

### 1.   Misappropriation of Trade Secrets Under DTSA and CUTSA (Counts IV and V).

Logix alleges that the Individual Defendants misappropriated its trade secrets to solicit customers to transfer their LPL securities accounts to Osaic.

**Elements:**

To establish its misappropriation of trade secrets claims, Logix must prove all of the following:

1. Logix owned the information referred to in its response to Defendants' Interrogatory No. 2 (the "Alleged Trade Secrets");

2. The Alleged Trade Secrets were, at the time of misappropriation, (a) secret, (b) had actual or potential independent economic value because

3

they were secret, and (c) subject to Logix's reasonable efforts to maintain their secrecy;

3. Defendants improperly acquired, used, or disclosed the Alleged Trade Secrets to solicit customers to transfer their LPL securities accounts to Osaic;

4. Logix was harmed or Defendants were unjustly enriched; and

5. Defendants' improper acquisition, use or disclosure of the Alleged Trade Secrets was a substantial factor in causing Logix's harm or Defendants' unjust enrichment.

*See* Judicial Council of California, Civil Jury Instructions ("CACI") No. 4401, 2.

**Key Evidence in Opposition to Logix's Breach of Contract Claims:**

The Alleged Trade Secrets are not identified with sufficient particularity, and Logix has failed to establish any evidence that they were misappropriated.

In Defendants' Interrogatory No. 2 to Logix, Logix was specifically asked to, "IDENTIFY each DOCUMENT which YOU allege constitutes a trade secret and/or confidential information that the DEFENDANTS improperly accessed, removed, used, and/or misappropriated[.]"  For reach alleged piece of information, Interrogatory No. 2 further requested, *inter alia*: (a) "a brief description of the type of information contained in the DOCUMENT"; (b) when and how the INDIVIDUAL DEFENDANTS improperly accessed or removed the DOCUMENT"; and (c) "all evidence of the INDIVIDUAL DEFENDANTS' improper use of the DOCUMENT, including but not limited to whether the DOCUMENT is on the print logs or in the video footage alleged in the Complaint."

In its initial response, Plaintiff simply referred Defendants, under Rule 33(d), to bates numbers comprising 67 pages of print logs, which allegedly list each of the more than 1,200 documents printed by the Individual Defendants from November 1, 2024 through April 9, 2025, more than 5,000 pages of information.  Then, on the Friday before the summary judgment deadline, Logix supplemented their

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

4

interrogatory response by further referring, pursuant to Rule 33(d), to: (1) "the contents of the Individual Defendants' hard drives, electronic devices, and other non-public materials containing Logix's valuable confidential information that the Individual Defendants improperly took, retained, and/or failed to return to Logix"; and (2) 3,500 pages of newly produced documents that contain virtually every single one of Individual Defendants' customers' statements *in Logix's possession*, dated as of early 2026, a year after the Individual Defendants' departure. *Id.* Logix's responses are the exact opposite of the specificity required by CUTSA and DTSA.

First, it is impossible for a reasonable fact finder to even assess whether any of the documents listed on the print logs actually satisfy the definition of a trade secret or are confidential, because the print logs do not reveal what information those documents allegedly contain. Moreover, the names of the documents on the print logs are either not fully visible or provide no evidence whatsoever of their possible identity. For instance, many of the documents have unidentifiable names such as: "Document.pdf"; "Policy Detail"; "Document"; "None"; "Statement"; and "...ta/Jack%20Henry%20and%20Associ." The print logs also date back to November 1, 2024, several months before Logix's allegations in the Complaint,[1] and, therefore, necessarily contain information that even Logix does not allege was misappropriated. Notably, the only information that *can* be identified on the logs is indisputably not confidential, as there are two hundred document names which Defendants have identified as section headings of the Pareto Systems Course.[2]

Second, Logix's eleventh hour supplemental production only broadens their reference to documents, and reaffirms that Logix cannot sufficiently identify any misappropriated information. Logix's reference to the unidentified "contents" of

---

[1] Logix's allegations concern only the time-period immediately before the Individual Defendants' departure. *See, e.g.,* Compl., ¶¶ 19; Dkt. 52, Page ID# 631.
[2] Due to the way the course was stored, it could only be printed one section at a time, resulting in roughly 200 separate print jobs on April 9, 2025.

5

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

the Individual Defendants' devices is nothing more than baseless speculation that does not actually identify anything. Likewise, Logix's reference to 3,500 pages of customer account statements, *in Logix's own possession*, and generated *by Logix* a year after the allegations in the Complaint, tells a fact finder nothing. Logix, again, did not articulate what specific information in those thousands of pages is allegedly a trade secret. Moreover, Logix did not, as specifically requested by Defendants' Interrogatory No. 2, state whether any of those specific documents are listed on the print logs or shown in the video footage, which Logix alleges show the Individual Defendants misappropriating information. Nor could it, as it appears that Logix simply went into its own database and generated every single customer statement and report it could find. Thus, Logix has failed to sufficiently identify any trade secrets or confidential information. *See, e.g., Imax Corp. v. Cinema Technologies, Inc.,* 152 F. 3d 1161, 1164-7 (9th Cir. 1998) (a plaintiff must provide sufficient information for a fact finder to assess and to give a defendant a fair opportunity to rebut). Moreover, Logix is prohibited from introducing evidence not identified in its response to Interrogatory No. 2. *See Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *11–12 (S.D. Cal. Sept. 30, 2016), *aff'd,* 729 F. App'x 590 (9th Cir. 2018) (granting summary judgment where "[r]ather than a 'reasonably particular' list of trade secrets, Plaintiff's disclosure resemble[d] an effort to categorize every piece of information or know-how that could potentially have value to the company" and "Plaintiff's attempt to revise its trade secret identification at [summary judgment was] simply too little too late."); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323–24 (C.D. Cal. 2004) ("Neither in its original interrogatory answers, nor in any Rule 26(e) supplement, moreover, did plaintiff identify the facts found in the declaration of Jose S. 'Joey' Palma submitted in opposition to the summary judgment motion … and under Rule 37(c), plaintiff cannot rely on it now to raise a triable issue of fact defeating summary judgment.") (citing Ninth Circuit and other cases).

6

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

Even if Logix had sufficiently identified its trade secrets, it has not shown any evidence of misappropriation, because it cannot prove that the Defendants "actually put the trade secret[s] to some commercial use" or disclosed the trade secret to a third-party. *See, e.g., Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *8-11 (N.D. Cal. Mar. 22, 2023); *Payward, Inc. v. Runyon*, 2020 WL 5642612, at *3 (N.D. Cal. Sept. 22, 2020); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989–90 (S.D. Cal. 2012) ("Alleging mere possession of trade secrets is not enough."; "California does not recognize the 'inevitable disclosure doctrine[.]' "). At best, Logix's evidence shows only that the Individual Defendants routinely printed documents over the course of their affiliation with Logix, and that Logix has customer information in its possession, two seemingly obvious and inconsequential points. Despite being specifically requested to, Logix did not articulate anything about the thousands of pages of information referenced in Interrogatory No. 2, or point to a single piece of evidence suggesting that they were printed, photographed, removed, used, or even accessed by Defendants. Moreover, despite Defendants having produced thousands of emails and text messages with customers, Logix has not pointed to a single communication that suggests Defendants were using any Logix information to solicit them.

To the contrary, the evidence conclusively establishes the documents which Logix alleges the Individual Defendants printed for their own personal benefit, were actually printed in the normal performance of their duties as LPL-registered financial advisors and provided to clients. To start, Defendants have submitted sworn declarations stating that they did not misappropriate any trade secret or confidential information, including any of the information referred to in Logix's interrogatory responses. *See, e.g., Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1178 (C.D. Cal. 1989), *aff'd,* 914 F. 2d 1256 (9th Cir. 1990) (insufficient evidence to rebut the declarations denying misappropriation). Moreover, the evidence shows that the Individual Defendants

7

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

(naturally) routinely printed documents and provided them to clients at in-person meetings at several different Logix branch locations, a practice which continued up until their last days, including opening a brand new LPL death beneficiary account for a customer on the afternoon of the day of their resignation. The complete video footage for the particular days in question raised by Logix will also show the Individual Defendants printing documents and providing them to customers, not retaining them for their own use. Lastly, the evidence shows that the customers provided Defendants, after the Individual Defendants' departure, all information necessary to process the transfer of their accounts.

The evidence also establishes that the alleged trade secrets have no economic value, particularly within the context of the Individual Defendants' transition to Osaic and continued service of their longstanding customers. In their summary judgment opposition papers, Logix described their allegedly misappropriated information as "a comprehensive roadmap that enables Logix to match individual customers with tailored financial products and services" and "assess customer suitability and receptivity to particular products and services," which "would allow a competitor to bypass the time and effort required to identify and cultivate customers, and specifically the types of customers who are predisposed toward investing, and streamline their efforts toward targeting individuals who have already shown an interest in investing." However, to the extent such information ever had any value, that time passed years before the Individual Defendants left LPL and Logix. The process of "identifying," "matching," and "cultivating" customers happened years ago, when the Individual Defendants first became the customers' financial advisors. Since that time, the Individual Defendants (not Logix, because it is not licensed to) have spent years learning each customer's particular financial goals and investing the customers' money accordingly in various investment products held in the LPL securities accounts that transferred over to Osaic. The Individual Defendants, more than anyone else, understand each

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

8

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

customer's "interest in investing," and "suitability and receptivity to particular products and services" which they personally learned from years of working with each customer. Logix's description of the customer information is from the perspective of someone trying to determine whether a *prospective* customer would be a good fit for wealth management services, which has no relevance to the Individual Defendants and their long-standing customers. Thus, based on Logix's own assessment, the alleged value of the customer information has been obsolete for years. *See Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) (granting summary judgment and holding, in part, "obsolete information cannot form the basis for a trade secret claim because the information has no economic value").

Indeed, the evidence further shows that Individual Defendants did not need to use any documents or information for their longtime customers to follow them to Osaic. There is simply no benefit to taking the information Logix has alleged, as the evidence shows that all the Individual Defendants had to do was contact their customers, as permitted by law, and ask them to provide the basic information needed to submit a request for the transfer of their securities accounts from LPL to Osaic. Once those accounts transferred to Osaic, they contained the same allocation of various investment products that the Individual Defendants had implemented over the previous years. When the customers learned that the Individual Defendants had moved, they chose to follow based on their years of experience working together and effectiveness in achieving financial goals, not based on the Individual Defendants' supposed retention of Logix information.

Finally, to the extent Logix attempts to argue that the customers' name, addresses, phone numbers, and email addresses (the "Customer Lists") are protectable trade secrets, its claims for misappropriation of trade secrets still fail. As an initial matter, Logix, despite being informed about the Customer Lists, did not identify the Customer Lists as allegedly misappropriated information in

9

response to Interrogatory No. 2.  Nonetheless, " 'courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories.' " *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 971 (C.D. Cal. 2017) (quoting *Morlife, Inc. v. Perry*, 56 Cal. App.4th 1514, 1521, (1997)) ("mere identities and locations of customers where anyone could easily identify the entities as potential customers" are not protectable).  Moreover, in its Order on Defendants' Motion to Dismiss, this Court held that Defendants had sufficiently alleged that its customer lists were trade secrets because they were alleged to "contain *more than just publicly ascertainable information*" including "the customers' history with the institution, account status, and preferences[.]" Dkt. 52, Page ID# 627 (emphasis added).  However, the Customer Lists are now shown to indisputably contain only contact information of customers which the Individual Defendants personally serviced, available on public databases.  Thus, the Customer Lists cannot satisfy the definition of a trade secret.

Indeed, a bar on the use of the publicly available contact information would effectively, and unlawfully, nullify Cal. Bus. & Prof. Code, § 16600.  *See, e.g.*, *Perrin*, 2023 WL 1415572 at *7-8.  Treating contact information as trade secret "is logically inconsistent with [the] right to solicit business" and would render the right "illusory." *Id.*  Moreover, "the standard and customary practice of the securities industry … demonstrates that [] clients and client information … are not proprietary … nor are they sufficiently 'secret' for trade secret protection." *Morgan Stanley Dean Witter, Inc. v. Frisby*, 163 F. Supp. 2d. 1371, 1377 (N.D. Ga. 2001).  Lastly, the Protocol for Broker Recruiting expressly permits contact information to be retained by financial advisors who move to a new broker-dealer, which, even where the Protocol might not be applicable to a particular case, evidences that no one in the securities industry considers contact information confidential.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### 2.    Breach of Contract (Counts I and II)

Logix alleges that the Individual Defendants breached their RR Agreements and Offer Letters (the "Agreements") by misappropriating Logix's confidential information in order "to solicit Logix's customers and members[.]" *See* Compl., ¶¶ 28, 34.

**Elements:**

To establish its breach of contract claims, Logix must prove all of the following:

1.  Logix and the Individual Defendants entered into the Agreements;
2.  The Agreements are valid, biding and enforceable;
3.  Logix did all, or substantially all, of the significant things that Agreements required it to do;
4.  The Individual Defendants breached the Agreements by using confidential information, as that term is defined in the Agreements, to solicit customers to transfer their LPL accounts to Osaic;
5.  Logix was harmed; and
6.  The Individual Defendants' breach of the Agreements was a substantial factor in causing Logix's harm.

*See* Judicial Council of California, Civil Jury Instructions ("CACI") No. 303.

**Key Evidence in Opposition to Logix's Breach of Contract Claims:**

For the same reasons that Logix cannot prove misappropriation of trade secrets, or any information, Logix also cannot prove a breach of the Agreements.

In addition, the RR Agreements and Offer Letters are also void and unenforceable pursuant to 15 U.S.C. §78cc(b).  Specifically, in its December 8, 2025 Order on Defendants' Motion to Dismiss, the Court found, and Logix has since admitted, that the RR Agreements and Offer Letters provided for the payment

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

of securities commissions to Logix.  Dkt. 52, Page ID# 630-1.[3]  The Court further held that both FINRA, through FINRA Rule 2040(a)(1), and the SEC, through 15 U.S.C. §78o, prohibit the payment of securities commissions to entities that are required to register as a broker-dealer but fail to do so.  Dkt. 52, Page ID# 630-1.  In turn, the Court held: "If Logix was required to be a registered broker-dealer to accept commissions from the Individual Defendants under the [RR] Agreements, the agreements would be in violation of the SEA and therefore void."  Dkt. 52, Page ID# 630-1 (*citing* 15 U.S.C. § 78cc(b)).  Thus, the only question that remains is a question of law: Did 15 U.S.C. §78o require Logix to register in order to receive such commissions?  The controlling authorities unequivocally hold that the answer is yes.

"Both the [SEC] and [FINRA] have asserted that it is unlawful … to share securities-related commissions with non-registered companies[.]"  *Schatzki v. Weiser Capital Mgmt., LLC*, 2016 WL 6662264, at *5 (S.D.N.Y. Nov. 9, 2016); *see* 15 U.S.C. § 78o(a)(1); *see also Brumberg, Mackey & Wall, P.L.C.*, 2010 WL 1976174, at *1-2 (S.E.C. No - Action Letter May 17, 2010).  As such, the SEC has repeatedly declined to assert that no enforcement action would be taken against parties who share securities compensation with non-broker-dealers.  *See, e.g.*, *Brumberg*, 2010 WL 1976174 at *2 ("receipt of compensation directly tied to successful investments … would require broker-dealer registration."); *Wolff Juall Invs., LLC*, 2005 WL 5394659, at *1 (S.E.C. No - Action Letter May 17, 2005).  These statements of law contain no qualifier that might somehow have allowed Logix to escape its registration obligation.

In fact, there is only one exception that permits an unregistered entity to

---

[3] The Offer Letters and RR Agreements make up one single contract.  *See Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047 (N.D. Cal. 2024) (offer letter and Non-Disclosure and Inventions Assignment Agreement considered one contract (citing Cal. Civ. Code § 1642)).

12

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

receive securities-related commissions, and it conclusively establishes that Logix was required to register. In 2007, the SEC and the Federal Reserve created an exception to the broker registration requirement specifically for *banks* engaged in "third party brokerage arrangements" (like the one between Logix, LPL, and Individual Defendants) by removing such *banks* from the SEC's definition of "broker." *See* SEC Regulation R, 72 FR 56514-01, 2007 WL 2850893, October 3, 2007; 15 U.S.C.A. § 78c(a)(4). However, the SEC has unequivocally stated that such ***"'bank' exceptions do not by their terms apply to credit unions."*** SEC Regulation R, 72 FR 56514-01, 2007 WL 2850893, October 3, 2007, fn. 26 (emphasis added); *see also* 15 U.S.C.A. § 78c(a)(4), (6). Indeed, several credit unions wrote letters urging the SEC to extend the exemption to credit unions (which previous drafts of the law did, but the final draft did not), but the SEC declined. As it is undisputed that Logix is a credit union, not a bank, it is, therefore, undisputed that they were not exempt from registration.

Logix's citations to outdated guidance from the National Credit Union Administration ("NCUA") and *Chubb Securities Corp.,* 1993 SEC No-Act. LEXIS 1204 (Nov. 24, 1993), commonly referred to as the "Chubb Letter," are unavailing. First, the NCUA has admitted that it has no authority over this issue. *See* Sales of Nondeposit Investments, 2011 WL 13572797, at *1 ("As a preliminary matter, you should note that 10-FCU-03 is guidance recommending best practices for [federal credit unions ("FCUs")] involved in third party brokerage arrangements; it does not carry the force or weight of formal regulation …[and] does not impose regulatory requirements on FCUs."). Second, even the NCUA has acknowledged that the lone exception to broker-dealer registration under 15 U.S.C.A. § 78c(a)(4) does not apply to credit unions. *See* National Credit Union Administration, Subj: Sales of Nondeposit Investments, 2010 WL 6661496, at *1 ("Regulation R does not apply to federal credit unions."). Third, the Chubb Letter is merely guidance that predates 15 U.S.C.A. § 78c(a)(4) by fourteen years and was preempted with its enactment

13

into law.

The only authority over this matter is 15 U.S.C. §78o, which clearly provides, and has consistently been interpreted by the courts as providing, that contracts, such as the RR Agreements and Offer Letters, that call for the payment of securities-related compensation to entities, like Logix, not registered with SEC as broker-dealers are void and unenforceable. *See Schatzki v. Weiser Capital Mgmt., LLC,* 2016 WL 6662264, at *5 (S.D.N.Y. Nov. 9, 2016); 15 U.S.C. § 78o(a)(1) ("Both the [SEC] and [FINRA] have asserted that it is unlawful …to share securities-related commissions with non-registered companies[.]"); *Regional Properties, Inc. v. Financial and Real Estate Consulting Company,* 678 F. 2d 552, 560-61 (5th Cir. 1982) (Though voiding a contract may be a "harsh" result, it is "what Congress intended.")).  Thus, there is no dispute that the RR Agreements and Offer Letters are void.

### 3.    Violation of California Penal Code § 502 (Count VI)

Logix alleges that the Individual Defendants violated California Penal Code § 502 by "delet[ing] files from Logix's computers without authorization[.]"  Dkt. 52, Page ID# 629 (separating allegations relating to misappropriating trade secrets, which were preempted by CUTSA).

**Elements:**

To establish a violation of Section 502, Logix must prove all of the following:

1. Logix is the owner of a computer system, network, program, or data;
2. The Defendants knowingly deleted files from Logix's computers without authorization;
3. Logix was harmed; and
4. Defendants' deletion of files was a substantial factor in causing Logix's harm.

*See* Judicial Council of California, Civil Jury Instructions ("CACI") No. 1812.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**Key Evidence in Opposition to Logix's Section 502 Claim:**

Simply put, Logix has not identified a single piece of information that was allegedly deleted.  In Interrogatory No. 14, Defendants requested that Logix: "STATE THE BASIS for [its] allegation 'that the Individual Defendants knowingly and without permission…destr[oyed] data and supporting documentation from Logix's Computer System,' as alleged in Paragraph 60 of the COMPLAINT, and IDENTIFY such alleged 'data and supporting document.' "  In response, Logix stated only "that it possesses video footage, forensic data, and other evidence indicating that Defendants captured and/or removed Logix materials and documents that Defendants have not produced in this litigation" and on that basis "reasonable believes that such materials have either been destroyed or are being improperly withheld."  In other words, Logix has not pointed to any evidence, only their "belief" that because it presupposes that the Defendants misappropriated information, the fact that no evidence of such information exists, Defendants must have deleted it.  This is not evidence, only pure speculation and circular logic.  Defendants, on the other hand, have submitted declarations that they did not destroy any of Logix's data and that they have searched for and produced all relevant documents in their possession.

### 4.   Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200, et seq. (Count IX)

Logix alleges that the Defendants violated Cal. Bus. & Prof. Code § 17200, et seq., by disclosing and using Logix's confidential non-trade secret information; undermining of Logix's business relationships; and undescribed "further deceptive or misleading conduct to persuade customers and members to leave Logix and/or its partners." *See* Compl., ¶ 82; Dkt. 52, Page ID# 630 (distinguishing such conduct from misappropriation allegations, which are preempted by CUTSA).

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

**Elements:**

To establish a violation of Section 17200, Logix must prove all of the following:

1. Defendants engaged in any unlawful, unfair, or fraudulent business act, as covered by Section 17200;

2. Logix suffered harm;

3. Logix's harm was substantially caused by Defendants' unfair competition; and

4. Logix is entitled to equitable relief.

*See Warren v. PNC Bank Nat'l Ass'n*, 671 F. Supp. 3d 1035, 1051 (N.D. Cal. 2023)

**Key Evidence in Opposition to Logix's Section 17200 Claim:**

As an initial matter, Logix has an adequate legal remedy in the form of its other surviving claims, which precludes it from seeking equitable relief under Section 17200. *See Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1033-5 (C.D. Cal. 2021). Nonetheless, as previously stated, Logix has failed to sufficiently identify its alleged confidential information or point to any specific evidence that Defendants misappropriated it. Moreover, Logix cannot point to any evidence that its business relationships were "undermined," or that the Defendants engaged in "further deceptive or misleading conduct," or articulate what those vague allegations mean. To the extent Logix simply means that the Individual Defendants' longstanding customers transferred their accounts from LPL to Osaic, there is no evidence of impropriety, and furthermore, the Court has already dismissed Logix's claims for tortious interference. Dkt. 52, Page ID# 629. To the extent Logix is referring to some other form of undermining, it has not articulated so or pointed to any evidence.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### B. Affirmative Defenses, Elements and Key Evidence in Support of Defenses (L.R. 16-4.1(d), (e), (f).

#### 1. First Affirmative Defense: Logix's Complaint fails to state a claim upon which relief can be granted.

**Elements:** To establish this affirmative defense, Defendants must show that Logix has failed to meet one or more of the elements required under each of its claims.

**Key Evidence in Support of Defense:** Given that this defense is entirely derivative of and predicated on a finding that Logix has not established one or more of the elements of each of its claims, Defendants incorporate by reference the evidence offered in opposition to all of Logix's claims as described in the previous sections.

#### 2. Second Affirmative Defense: Logix's claims are barred by estoppel, unclean hands, and/or waiver.

**Elements:** To establish this defense, Defendants must show that Logix engages in the same conduct which it alleges Defendants are prohibited from engaging in.

**Key Evidence in Support of Defense:** Evidence will show that Logix routinely encourages its other LPL financial advisors to engage in the same actions for which it bases its claims against Defendants, including but not limited to: accessing and printing customer information in order to provide securities services to customers; soliciting and transferring customer accounts from the financial advisors' prior broker dealer; and treating the identities and contact information of customers as not confidential.

#### 4. Fourth Affirmative Defense: The RR Agreements and Offer Letters are illegal, void and unenforceable pursuant to 15 U.S.C. §78cc(b).

**Elements:** To establish this defense, Defendants must show that Logix received securities related compensation under the Agreements and failed to

17

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

register as a broker-dealer with the SEC.

**Key Evidence in Support of Defense:** For the reasons set forth in the previous sections, Defendants have established this defense.

### 5. Fifth Affirmative Defense: Logix's claims are superseded by CUTSA.

**Elements:** To establish this defense, Defendants must show that Logix's non-misappropriation claims are based on the same allegations in its CUTSA claim.

**Key Evidence in Support of Defense:** For the reasons set forth in the previous sections, Defendants have established that Logix has failed to present any evidence of conduct beyond misappropriation of trade secrets (which they have also failed to evidence).

### 6. Sixth Affirmative Defense: The Complaint violates Cal. Bus. Prof. Code. § 16600.

**Elements:** To establish this defense, Defendants must show that the RR Agreements and Offer Letters prohibit the Individual Defendants from soliciting their customers in violation of Cal. Bus. And Prof. Code. § 16600's prohibition of non-solicitation agreements.

**Key Evidence in Support of Defense:** The evidence shows that Logix's claims are based on the use of its alleged confidential and trade secret information *to solicit customers*. As regards the Customer Lists, a bar on the use of publicly available contact information would effectively, and unlawfully, nullify Cal. Bus. & Prof. Code, § 16600. *See, e.g., Perrin*, 2023 WL 1415572 at *7-8. Indeed, treating contact information as trade secret "is logically inconsistent with [] right to solicit business" and would render the right "illusory." *Id.* As regards other customer information supposedly "identified" by Logix, it is clearly obsolete with respect customers who already have long term financial advisory relationships with the Individual Defendants and, therefore, is merely a pretext to prohibit Defendants from lawfully competing and soliciting customers.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**7.    Seventh Affirmative Defense: Logix has not suffered any damages, including without limitation, because Logix had no securities business, securities customers, or securities information and has not lost any credit union customers as a result of the allegations against Defendants.**

**Elements:**  To establish this defense, Defendants must show that Logix has failed to show any damages.

**Key Evidence in Support of Defense:**  The evidence shows, and Logix has admitted, that it has not lost a single account as a result of Defendants' alleged conduct, because Logix did not hold, and was prohibited as a matter of SEC laws and regulations from holding, securities accounts.  Logix also cannot point to any evidence that it was entitled to receive referral fees, in perpetuity, for allegedly introducing the Individual Defendants to the customers years ago, or that customers were not allowed to continue working with their longstanding financial advisors.

**8.    Eighth Affirmative Defense: At all relevant times, Defendants conduct was in full compliance with all applicable contracts, laws, regulations, and industry standards, including without limitation the Agreements, FINRA Rules, SEC laws, and the Protocol for Broker Recruiting, which compliance bars the claims and/or requests for relief in the Complaint.**

**Elements:**  To establish this affirmative defense, Defendants must show that Logix has failed to meet one or more of the elements required under each of its claims, and/or show that their conduct was in accordance with the laws and regulations of the securities industry.

**Key Evidence in Support of Defense:**  Given that this defense is entirely derivative of and predicated on a finding that Logix has not established one or more of the elements of each of its claims, Defendants incorporate by reference the evidence offered in opposition to all of Logix's claims as described in the previous sections.  Defendants further refer to the SEC and FINRA laws and regulations, previously cited throughout this litigation, which establish that Defendants are permitted to notify their customers upon transferring to a new broker-dealer, and

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Logix and LPL are prohibited from interfering with a customers' desire to remain with their longstanding financial advisor.  *See, e.g.,* FINR Rule 2140.

## III.   BIFURCATION OF ISSUES (L.R. 16-4.3)

Defendants request that the Court bifurcate any evidence or argument about punitive damages until the jury finds convincing evidence that Defendants have been guilty of malice, oppression or fraud.

## IV.   JURY TRIAL (L.R. 16-4.4)

A jury may consider Logix's Counts I, II, IV, V, and VI.  However, to the extent it has not been abandoned, Count IX for alleged Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, is purely equitable in nature and therefore not subject to a jury trial.  To the extent any other of Logix's requests for relief are limited to equitable and injunctive relief, such issues are also appropriately considered only by the Court.

## V.   ATTORNEYS' FEES (L.R. 16-4.5)

Defendants are entitled to attorneys' fees pursuant to Cal. Civ. Code § 3426.4, because Logix's claims of misappropriation were made in bad faith.  In particular, the evidence shows, *inter alia*, that Logix substantially based its allegations on cherry-picked and deliberately misleading video footage, the complete footage of which it improperly withheld because it knew it disproved its allegations.  Furthermore, Logix deliberately served an unlawful subpoena, in violation of the Stored Communications Act, in an attempt to harass and intimidate the Individual Defendants.

## VI.   ABANDONMENT OF ISSUES (L.R. 16-4.6)

Logix has abandoned its claim for equitable relief under Cal. Bus. & Prof. Code § 17200, *et seq*.  *See Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1033 (C.D. Cal. 2021) (availability of legal remedy precludes § 17200 claim).

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Dated:  June 29, 2026

BOWDITCH & DEWEY LLP


By:  */s/Patrick M. Capodilupo*
Patrick M. Capodilupo (*Pro Hac Vice*)

Attorneys for Defendants
OSAIC WEALTH, INC., JOHN JANIOS,
and ANTHONY MARTINEZ

DANIEL H. HANDMAN (SBN 236345)
dhandman@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
1299 Ocean Avenue, Suite 750
Santa Monica, California 90401
Telephone:  (310) 255-0705
Facsimile:   (310) 255-0986

Steven L. Manchel (*Pro Hac Vice*)
Patrick M. Capodilupo (*Pro Hac Vice*)
BOWDITCH & DEWEY LLP
75 Federal Street, Suite 1000
Boston, MA 02110
(617) 757-6500
(508) 929-3099 (fax)
smanchel@bowditch.com
pcapodilupo@bowditch.com
HIRSCHFELD KRAEMER LLP

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2026, I caused a copy of the foregoing to be served by email on all counsel of record, including the following:

Michael D. Wexler (*pro hac vice*)
mwexler@seyfarth.com
Besma Fakhri (*pro hac vice*)
bfakhri@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

*Attorneys for Plaintiff*
LOGIX FEDERAL CREDIT UNION

/s/Patrick M. Capodilupo
Patrick M. Capodilupo

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SANTA MONICA

22

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW